**LEX LUMINA LLP**
Rhett O. Millsaps II (SBN: 348949)
  rhett@lex-lumina.com
700 S. Flower Street, Suite 100
Los Angeles, CA  90017
Telephone: (213) 600-6063
Fax: (646) 906-8657

Christopher J. Sprigman (appearing pro hac vice)
  chris@lex-lumina.com
745 Fifth Avenue, Suite 500
New York, NY  10151
Telephone: (646) 898-2055
Fax: (646) 906-8657

**HARRIS ST. LAURENT LLP**
Jonathan Harris (appearing pro hac vice)
  jon@hs-law.com
Ashley Robinson (appearing pro hac vice)
  arobinson@hs-law.com
40 Wall Street, 53rd Floor
New York, NY  10005
Telephone: (212) 397-3370
Fax: (212) 202-6206

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| TRUE FOOTAGE INC, <br><br> Plaintiff, <br><br> v. <br><br> AUTOMAX AI INC.; AUTOMAX AI (US) INC.; and HUMZA AHMED, <br><br><br> Defendants. | Case No.:  3:26-cv-3418-JCS <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DISMISS OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT** <br><br> Date:        August 12, 2026 <br> Time:        9:30 a.m. <br> Location:   Courtroom D, 15th Floor <br> Judge:       Hon. Joseph C. Spero |

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT AND TO DISMISS OR FOR A MORE
DEFINITE STATEMENT

CASE NO. 3:26-CV-3418-JCS

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on August 12, 2026, at 9:30 a.m. or as soon thereafter as this matter may be heard in Courtroom D of the above-titled Court, 15th Floor at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Automax AI Inc., Automax AI (US) Inc., and Humza Ahmed (collectively, "Automax") will and hereby do move this Court for (1) summary judgment on the Sixth, Seventh, and Eighth Causes of Action (together, "the Copyright Claims") in Plaintiff's Complaint (ECF No. 1) ("Compl.") or, in the alternative, dismissal for failure to state a claim; (2) for dismissal of the First through Fifth Causes of Action (together, "the State Law Claims") for lack of federal jurisdiction; or (3) for a more definite statement of the Copyright Claims. This motion is based upon this notice; the following memorandum of points and authorities; the supporting declarations of Humza Ahmed, Huzaifa Ahmad, Rhett O. Millsaps II, Katelyn A. Berens, and Christopher J. Weiner; Automax's Request for Judicial Notice; the pleadings and papers on file; all other matters of which the Court may take judicial notice; and such oral argument and evidence as the Court may allow or admit at the hearing on the motion.

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DISMISS OR FOR A MORE DEFINITE STATEMENT**

**CASE NO. 3:26-CV-3418-JCS**

## TABLE OF CONTENTS

I.   INTRODUCTION AND RELIEF SOUGHT ...........................................................................1

II.   FACTUAL BACKGROUND .............................................................................................2

III.   ARGUMENT ....................................................................................................................6

   A.   Legal Standards. ........................................................................................................ 6

   B.   The Court Should Grant Automax Summary Judgment on Plaintiffs' Copyright
        Claims or, at Minimum, Dismiss Them Under Rule 12(b)(6). ................................. 7

        1.   The Complaint Does Not Allege that Automax Copied the Back-End Code
             (Registration TXu 2-537-302) or Had Access to It. ........................................... 8

        2.   The Complaint Does Not Allege that Automax Copied the White Paper
             (Registration TX 9-581-457) or Had Access to It. ............................................. 9

        3.   The Complaint Does Not Allege that Automax Copied Any Part of the
             Registered Front-End Code (Registration TX 9-585-370) or That Automax Had
             Access to It. ...................................................................................................... 10

   C.   Plaintiff's Irrelevant Allegations of Copying. ....................................................... 13

        1.   Heatmap "Design and Presentation." .............................................................. 13

        2.   GAM Model Method and Presentation. ........................................................... 16

        3.   Reconciliation Methodology Page and Other Elements. .................................. 18

   D.   The Court Should Grant Summary Judgment to Automax on the Copyright
        Claims If Plaintiff Does Not Adduce Evidence of a Good-Faith Basis for
        Asserting Them. ...................................................................................................... 19

   E.   In the Alternative, Automax Requests a More Definite Statement of the Copyright
        Claims Pursuant to Rule 12(e). ............................................................................... 20

   F.   The Court Should Dismiss the State Law Claims for Lack of Jurisdiction. .......... 20

IV.   CONCLUSION ................................................................................................................22

i

# TABLE OF AUTHORITIES

**Cases**

*ABS Ent., Inc. v. CBS Corp.*,
908 F.3d 405 (9th Cir. 2018) ...............................................................................15

*Apple Computer, Inc. v. Microsoft Corp.*,
35 F.3d 1435 (9th Cir. 1994) ...............................................................................12

*Baker v. Selden*,
101 U.S. 99 (1879) ...............................................................................................17

*Barker v. Norman*,
651 F.2d 1107 (5th Cir. 1981) .............................................................................19

*Beijing Meishe Network Tech. Co., Ltd. v. TikTok Inc.*,
Case No. 23-cv-06012-SI, 2024 WL 1772833 (N.D. Cal. Apr. 23, 2024)..........passim

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................................6

*Berkic v. Crichton*,
761 F.2d 1289 (9th Cir. 1985) .............................................................................17

*Biani v. Showtime Networks, Inc.*,
153 F.4th 957 (9th Cir. 2025) ................................................................................7

*Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,
803 F.3d 1032 (9th Cir. 2015) .............................................................................18

*Cascade Investments, Inc. v. Bank of Am., N.A., S.A.*,
No. CV–N–99–559–ECR(RAM), 2000 WL 1842945 (D. Nev. Sept. 29, 2000)........20

*Experian Info. Sol., Inc. v. Nationwide Mktg. Serv., Inc.*,
893 F.3d 1176 (2018) ...........................................................................................16

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) .............................................................................................14

*First Nat'l Ins. Co. v. F.D.I.C.*,
977 F. Supp 1051 (S.D. Cal. 1997) ......................................................................19

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
586 U.S. 296 (2019) .......................................................................................passim

ii

*Harper & Row, Publishers, Inc. v. Nation Enters.,*
 471 U.S. 539 (1985) ..................................................................................................................14

*Harper House, Inc. v. Thomson Nelson, Inc.,*
 889 F.2d 197 (9th Cir. 1989) .....................................................................................................15

*McIntosh v. N. Cal. Enters. Co.,*
 670 F. Supp. 2d 1069 (E.D. Cal. 2009) .....................................................................................19

*Media.net Adver. FZ-LLC v. Netseer, Inc.,*
 156 F. Supp. 3d 1052 (N.D. Cal. 2016).................................................................................passim

*Phantomalert, Inc. v. Google, Inc.,*
 Case No. 15-cv-03986-JCS, 2015 WL 8648669 (N.D. Cal. Dec. 14, 2015) (Spero,
 C.M.J.) .....................................................................................................................................passim

*Sams v. Yahoo! Inc.,*
 713 F.3d 1175 (9th Cir. 2013) .....................................................................................................7

*Sanford v. MemberWorks, Inc.,*
 625 F.3d 550 (9th Cir. 2010) .....................................................................................................21

*Satava v. Lowry,*
 323 F.3d 805 (9th Cir. 2003) .....................................................................................................14

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.,*
 144 F. Supp. 3d 1088 (N.D. Cal. 2015).....................................................................................21

*Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin,*
 952 F.3d 1051 (9th Cir. 2020) ...............................................................................................passim

*Swierkiewicz v. Sorema,*
 534 U.S. 506 (2002) ..................................................................................................................20

*Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.,*
 212 F. Supp. 3d 816 (N.D. Cal. 2016).......................................................................................21

*Vasquez v. City of San Jose,*
 634 F. Supp. 3d 712 (N.D. Cal. 2022).......................................................................................21

*Woodland v. Hill,*
 136 F.4th 1199 (9th Cir. 2025).................................................................................................7, 8

*Worth v. Selchow & Righter Co.,*
 827 F.2d 569 (9th Cir. 1987) .....................................................................................................15

iii

**Statutes**

17 U.S.C. § 102(a) ...................................................................................................................... 18

17 U.S.C. § 102(b) ......................................................................................................... 13, 17, 18

17 U.S.C. § 411(a) ............................................................................................................. 7, 8, 19

**Other Authorities**

Compendium of Copyright Office Practices 1007.4 (2021) ...................................................... 12, 18

Restatement of Copyright, Section 4, Comment *e* ....................................................................... 15

Restatement of Copyright, Section 4, Comment *f* ....................................................................... 15

Restatement of Copyright, Section 15, Comment *b* ..................................................................... 17

Restatement of Copyright, Section 18 ........................................................................................ 14, 17

**Rules**

Fed. R. Civ. P. 12(d) ......................................................................................................................7

Fed. R. Civ. P. 12(e) ....................................................................................................................20

Fed. R. Civ. P. 56(a) ....................................................................................................................19

iv

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY**
**JUDGMENT AND TO DISMISS OR FOR A MORE**
**DEFINITE STATEMENT**

**CASE NO. 3:26-CV-3418-JCS**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND RELIEF SOUGHT

Plaintiff's Copyright Claims—the only basis for federal jurisdiction in this case—are facially deficient as a matter of law. Specifically, the Complaint identifies three registered copyrighted works: (1) back-end code for Plaintiff's real-estate appraisal software, TrueTracts; (2) front-end code for that same software; and (3) a white paper describing methods used in TrueTracts. Under black-letter copyright law, registration of a copyrighted work with the U.S. Copyright Office is statutorily required as a prerequisite to filing an action for infringement of that work. Moreover, Plaintiff's Copyright Claims can be based only on allegations that Automax copied *registered* material, and those claims are limited to material found in the deposit copies filed with the registrations of those works. Crucially, Plaintiff does not allege that Automax copied *any part* of the three registered works identified in the Complaint. Nor does Plaintiff allege that Automax even had *access* to those registered works, which likewise is a threshold element of Plaintiff's Copyright Claims here. And Plaintiff has not attached the deposit copies to the Complaint, so Automax has no basis to discern whether any of the code it might be alleged to have copied is even protectable in the first place.

Instead, the Complaint points to the three registered works but then immediately pivots to allegations that Automax copied material that Plaintiff *does not allege is registered*. Specifically, Plaintiff does not allege that it has registered the "design and presentation" of a standard heatmap, or the "method and presentation" of Plaintiff's generalized additive model ("GAM") that it uses to help compute real estate valuations, or any of the other visual or workflow elements of TrueTracts that it alleges have been copied. Under black-letter copyright law, Plaintiff cannot base its Copyright Claims on allegations of copying that involve unregistered material. And it is unlikely that Plaintiff could amend to allege registration of these materials, because they are not copyrightable subject matter.

In sum, because Plaintiff fails to allege copying of any material from the registered works identified in the Complaint, the Copyright Claims are facially defective.

Automax repeatedly pointed this out to Plaintiff, but Plaintiff refused to amend to cure the deficiencies and obviate the need for this motion. Instead, Plaintiff's counsel expressly admitted to

1

Automax's counsel that Plaintiff's goal with this action is to destroy its competitor Automax with the litigation process, regardless of the merits of Plaintiff's claims. As the attached Declarations of attorneys Christopher J. Weiner and Katelyn A. Berens describe, Plaintiff's statements show that its intention is to put Automax through ruinously expensive discovery, in a bid to bleed Automax dry and bankrupt the very young start-up company with litigation costs.

The Court should not reward this behavior by merely dismissing the facially defective Copyright Claims with leave to amend. Given the obvious deficiencies on the face of the Complaint and Plaintiff's nefarious admission, Plaintiff should be expected to provide, in its response to this motion, evidence supporting its alleged good-faith belief that Automax copied from any one of the three registered works identified in the Complaint. If Plaintiff does not provide such evidence establishing a good-faith basis for its Copyright Claims, this Court should exercise its discretion under Rule 12(d), convert Automax's motion to dismiss into one for partial summary judgment, and enter judgment in favor of Automax on Plaintiff's Copyright Claims.

Finally, because Plaintiff's Copyright Claims fail as a matter of law, the Court should dismiss Plaintiff's State Law Claims for lack of jurisdiction.

## II.   FACTUAL BACKGROUND

Both Plaintiff and Defendant Automax AI produce web-based software that aids in real estate appraisal. Compl. ¶¶ 2-3, 15-16. Plaintiff sells its TrueTracts software to appraisers. *Id*. ¶ 21. Automax's business model is different; Automax makes money by doing appraisals rather than selling its Copilot software. Declaration of Humza Ahmed dated June 29, 2026 ("Ahmed Decl."), ¶ 2. Automax CEO Humza Ahmed's family has been in the residential real estate appraisal business for three generations. *Id*. ¶ 3. Mr. Ahmed decided to pursue a career related to the family business, but from a different angle: he decided to study and work in the field of AI and to apply his skills in designing AI models to aid in real estate appraisal, a business he knows well. *Id*.; Compl. ¶ 31 n.1.

Automax builds its Copilot native-AI appraisal software for its own appraisers to use, and it also provides that software without charge to independent appraisers in regions where Automax does not have its own appraisers. Ahmed Decl. ¶ 4. Automax gives away its software to these independent

2

appraisers whether they are performing an independent appraisal for a lender through Automax or not—Automax's aim is to improve the appraisal process and help as many appraisers as possible become familiar with Copilot. *Id*.

Plaintiff has raised more than $105 million in venture capital to date. *Id*. ¶ 5. And yet Plaintiff's TrueTracts software has struggled in the market, in large part due to TrueTracts' technological limitations. *Id.* TrueTracts is missing MLS data for a substantial number of markets. *Id*. And TrueTracts is a "plug-in" focused on only one part of the appraisal process, data analysis. *Id*. In contrast, Copilot is an end-to-end solution that assists appraisers in all four steps of property appraisal: (1) inspection; (2) data gathering on comparables; (3) data analysis; and (4) appraisal report generation. *Id.*

Automax's mobile app uses LiDAR (light detection and ranging) remote sensing technology and AI-assisted computer vision to capture property details automatically through the camera on the appraiser's smartphone or tablet—the interior dimensions and features of the property are captured and transformed into a floor map and feature list as the appraiser does a property walkthrough. *Id.* ¶ 6. TrueTracts does not offer any of this technology, which is difficult to build and is a key element to streamlining appraisers' workflow. *Id*. Automax's custom-trained AI agents combine that data with property information pulled from hundreds of local and regional multiple-listing-service (MLS) data feeds as well as public records of sales, and off-market listings and sales (none of which TrueTracts offers). *Id.* ¶ 7. Automax then provides the appraiser with all the analysis and aggregation required to generate a complete appraisal report in minutes. *Id*. The result is a clear, grounded valuation, fully Fannie Mae, Freddie Mac and Uniform Appraisal Dataset 3.6 compliant—a task that normally takes days done in under 20 minutes from start to finish. *Id.* and n.1.

Rather than innovate and update its software to try to compete more effectively with Automax's Copilot, Plaintiff chose instead to sue Automax, alleging facially defective Copyright Claims.[1] Plaintiff identifies three works for which it registered copyright claims prior to

---

[1] The Copyright Claims are the only basis for federal jurisdiction (Compl. ¶ 14), so Automax does not address here the facts alleged in relation to Plaintiff's state court claims, which should be

3

commencement of this action: (1) "the back-end data management and logic of TrueTracts (Registration TXu 2-537-302)" (the "Back-End Code"); (2) "the white paper describing [Plaintiff's] methods used in TrueTracts (Registration TX 9-581-457)" (the "White Paper"); and (3) "the computer code that presents the front-end user interface of TrueTracts (Registration TX 9-585-370)" (the "Front-End Code"). Compl. ¶ 29. But Plaintiff does not allege that Automax copied any part of those three registered works; nowhere in the Complaint is a plain statement of which of those works, or parts of those works, if any, Automax allegedly copied.

Moreover, Plaintiff makes no allegations even suggesting how Automax could have had access to the Back-End Code or White Paper necessary for copying, *see* sections III(A)(1) and (2), below, and Automax in fact did not have access to those items. Ahmed Decl. ¶ 7. Similarly, Plaintiff makes no allegations suggesting that Automax could have had access to server-side Front-End Code, and Automax in fact did not have access to that code. *Id.*; *see* section III(A)(3), below. That leaves only client-side Front-End Code that Automax could have accessed through its interactions with the TrueTracts web program, but Plaintiff does not allege that the registered Front-End Code contains any client-side material, nor does Plaintiff allege that any client-side code that Automax supposedly accessed is part of the registered Front-End Code. *See* section III(A)(3), below. In fact, Automax did not access or copy any TrueTracts code whatsoever. Ahmed Decl. ¶ 8.

The only copying that the Complaint specifically alleges is of material that is both unregistered and otherwise unprotectable. Specifically, Plaintiff alleges copying of the "design and presentation" of a real-estate valuation heatmap (Compl. ¶¶ 54-57); the visual presentation of a GAM model for valuation of particular real estate features (such as extra bedrooms) (*id*. ¶¶ 58-60); and a "description of [TrueTracts'] methodology" and unspecified other "written descriptions" and elements of TrueTracts' "workflow." *Id*. ¶¶ 61-62. But the Complaint does not allege that Plaintiff has registered copyright claims in any of these elements—as Plaintiff is required by black-letter

---

dismissed for lack of jurisdiction when the Copyright Claims are dismissed. *See* section III(E), below.

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DISMISS OR FOR A MORE DEFINITE STATEMENT**     CASE NO. 3:26-CV-3418-JCS

copyright law to do *prior* to filing its Complaint. Nor does Plaintiff allege that those various elements that it alleges have been copied are connected in any way to the three registered works identified in the Complaint. And finally, for reasons explained below, none of those elements are copyrightable in the first place, so amendment would be futile.

Plaintiff and its counsel are aware that Plaintiff's Copyright Claims are meritless and defective on their face because Automax's counsel has repeatedly explained it to them. Declaration of Rhett O. Millsaps II dated June 29, 2026 ("Millsaps Decl."), ¶ 2, Ex. 1 at 1-4. Moreover, in a telephone call on April 8, 2026, Plaintiff's counsel expressly stated to Automax's counsel that Plaintiff's goal is to bankrupt Automax through litigation regardless of the merits. Two lawyers representing Automax have provided declarations testifying under penalty of perjury to Plaintiff's admission of its abusive motives for filing this lawsuit. Declaration of Katelyn A. Berens dated Aug. 23, 2026 ("Berens Decl."); Declaration of Christopher J. Weiner dated Aug. 23, 2026 ("Weiner Decl."). Specifically, Plaintiff's counsel:

- "called out multiple times that his client was aware that Automax AI raised millions of dollars in its initial fundraising, and said that his client has enough money to make Automax AI spend all of its own money on litigation until it goes out of business." Berens Decl. ¶ 4;

- "stated on multiple occasions that Automax AI would not survive litigation; that Automax AI would not have sufficient funds to defend itself in litigation; but that Plaintiff was willing to spend more litigating the case than Automax AI had raised, if Automax AI did not accede to True Footage's demands." Weiner Decl. ¶ 5; and

- admitted that "his client's position was that Automax AI could either submit to a complete redesign of its product, or in the alternative, that it would be forced to stop operating because True Footage would put the company out of business by virtue of its ability to spend more than several million dollars (which Automax AI had raised from investors) on litigation." *Id*. ¶ 5.

5

After Plaintiff filed its Complaint on April 22, 2026, Automax's undersigned counsel explained again to Plaintiff's counsel in writing, repeatedly, why Plaintiff's allegations are insufficient on their face to state the asserted Copyright Claims. Millsaps Decl. ¶ 2, Ex. 1 at 1-4. Plaintiff refused to provide any evidence or clarification of its allegations that would indicate Plaintiff had a good-faith basis for its Copyright Claims or obviate the need for this motion. *Id*.

## III.    ARGUMENT

### A.    Legal Standards.

While a "plaintiff need not plead a prima facie case in order to survive a motion to dismiss pursuant to Rule 12(b)(6)," a "complaint must however 'contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.'" *Phantomalert, Inc. v. Google, Inc.*, Case No. 15-cv-03986-JCS, 2015 WL 8648669, at *6 (N.D. Cal. Dec. 14, 2015) (Spero, C.M.J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007)); *id*. at *12-14 (dismissing copyright claims with leave to amend where plaintiff had not "alleged facts showing that Defendants' conduct falls within the scope of its copyright interest"). *See also Media.net Adver. FZ-LLC v. Netseer, Inc.*, 156 F. Supp. 3d 1052, 1068 (N.D. Cal. 2016) (dismissing copyright infringement claim where plaintiff failed to identify which sections of HTML code the defendant allegedly copied); *Beijing Meishe Network Tech. Co., Ltd. v. TikTok Inc.*, Case No. 23-cv-06012-SI, 2024 WL 1772833, at *4, *6 (N.D. Cal. Apr. 23, 2024) (dismissing third amended complaint because it "fail[ed] to allege sufficient facts that show copying of the unregistered works because it is not clear what source code or software listed in the first paragraph of the complaint was allegedly infringed" and "pled insufficient facts to plausibly allege access to copyrighted works").

In light of Plaintiff's failure to allege any connection between the registered copyrighted works it has identified and the material Plaintiff alleges Automax copied, and given Plaintiff's clear admission of its improper motives in bringing this action, the Court should not merely dismiss the Complaint with leave to amend. Such a course would enable Plaintiff to accomplish what it set out to do: impose frivolous litigation costs to drive Automax out of business. The Court is permitted to

6

consider documents that were not attached to the Complaint where the documents' authenticity is not contested or cannot reasonably be questioned and the Complaint necessarily relies on them. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). If the Court considers such documents, the Court treats the motion as one for summary judgment under Fed. R. Civ. P. 56 and must give all parties a reasonable opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12(d).

In this case, the Complaint necessarily relies on the registration documents filed with the U.S. Copyright Office, including the deposit copies, that are the basis of its Copyright Claims. 17 U.S.C. § 411(a). Plaintiff is on notice of the deficiencies in its Complaint and now has a reasonable opportunity to present in its response to this motion evidence that it has registered copyright claims in protectable materials that it alleges Automax copied. To do that, Plaintiff should attach to its response the full, unredacted contents of the registration deposit copies and specify which of those works, or parts of those works, it alleges Automax copied. If Plaintiff fails to provide such evidence, the Court should grant summary judgment to Automax.

**B.      The Court Should Grant Automax Summary Judgment on Plaintiffs' Copyright Claims or, at Minimum, Dismiss Them Under Rule 12(b)(6).**

To state a claim for copyright infringement, a plaintiff must plausibly allege that "she owns a valid copyright, and the defendant copied protected aspects of her work." *Biani v. Showtime Networks, Inc.*, 153 F.4th 957, 962 (9th Cir. 2025) (citation omitted); *Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). The second prong contains two components: copying (*i.e.*, "factual copying") and unlawful appropriation (*i.e.*, "illicit copying"). *Biani*, 153 F.4th at 962.

"Because the actual act of copying is rarely witnessed, copying is ordinarily established indirectly." *Skidmore*, 952 F.3d at 1068; *Woodland v. Hill*, 136 F.4th 1199, 1207 (9th Cir. 2025) (noting that direct evidence of copying is "rarely available"). To establish infringement by indirect proof of copying, a plaintiff, as here, must show "both access to its copyrighted material on the part of the alleged infringer and substantial similarity between the copyrighted work and the alleged

7

infringing work." *Id*. Allegations of access cannot be based on "mere speculation or conjecture." *Id*.

Registration of a copyrighted work with the U.S. Copyright Office is required as a prerequisite to filing an action for infringement of that work. 17 U.S.C. § 411(a). Further, registration of a work must be completed *before* a plaintiff files suit alleging infringement of it. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 299 (2019) ("We hold…that registration occurs, and a copyright claimant may commence an infringement suit, when the Copyright Office registers a copyright."). And, crucially, the "scope of the copyright is limited by the deposit copy." *Skidmore*, 952 F.3d at 1063.

The only registered works that the Complaint identifies are the (i) Back-End Code, (ii) White Paper, and (iii) Front-End Code. Compl. ¶ 29. Plaintiff's Copyright Claims are thus limited to the material contained in the deposit copies of those three registered works. *Fourth Estate*, 586 U.S. at 299; *Skidmore*, 952 F.3d at 1063. Plaintiff does not allege that Automax copied any part of those works; nowhere in the Complaint is a plain statement alleging that Automax copied any of the identified registered works, in whole or in any part, or that it even had *access* to any of the material in the registered works. And Plaintiff has not attached the deposit copies of any of those three registrations to its Complaint.

### 1. The Complaint Does Not Allege that Automax Copied the Back-End Code (Registration TXu 2-537-302) or Had Access to It.

Plaintiff alleges that the registered Back-End Code is comprised of "the back-end data management and logic of TrueTracts." Compl. ¶ 29. The Complaint makes no mention of the Back-End Code aside from paragraph 29. And the Complaint does not allege that Automax copied any of the Back-End Code. Indeed, the Complaint fails even to suggest how Automax could have had access to any of the Back-End Code—which Automax did not. Ahmed Decl. ¶ 8.

The Complaint admits that TrueTracts is a web-based platform—that is, a service that operates through web browsers and does not require any desktop software installation. Compl. ¶ 51 ("TrueTracts operates as a browser-based application."). Plaintiff's website confirms this. *See* https://www.truefootage.tech/tools/truetracts/faq (Q: "How do I sign up for TrueTracts?" A: "You

8

can create a new account at https://truetracts.truefootage.tech/signup. Already have an account? Log in at https://truetracts.truefootage.tech/login") (visited June 27, 2026). It is not subject to reasonable dispute—and Plaintiff does not allege otherwise—that in the context of a web-based platform like TrueTracts, back-end code, such as is claimed in Registration TXu 2-537-302, is invisible to users. That is, in the context of a web-based application like Plaintiff's TrueTracts, back-end code is "server-side" code to which users do not have access through their web browser. Declaration of Huzaifa Ahmad dated June 27, 2026 ("Huzaifa Decl."), ¶ 7.

Given the absence of allegations in the Complaint either that Automax copied any part of the Back-End Code, or that Automax could even have had access to the Back-End Code, the Complaint fails to plead sufficient factual allegations to allow the Court to draw the reasonable inference that Automax copied any part of the Back-End Code, let alone any protectable part, and thus could be liable for infringement. Accordingly, the Copyright Claims should be dismissed under Rule 12(b)(6) insofar as they are based on the Back-End Code. *See Phantomalert*, 2015 WL 8648669 at *12-14; *Media.net Adver.*, 156 F. Supp. 3d at 1068; *TikTok*, 2024 WL 1772833, at *4.

### 2. The Complaint Does Not Allege that Automax Copied the White Paper (Registration TX 9-581-457) or Had Access to It.

The same is true of the White Paper, which Plaintiff characterizes as "describing True Footage's methods used in TrueTracts." Compl. ¶ 29. The Complaint makes no mention of the White Paper aside from paragraph 29. There is no allegation that Automax copied any portion of the White Paper, let alone anything protectable, or that Automax even had access to it. Plaintiff does not allege that the White Paper is publicly available, and Automax has never seen it. Ahmed Decl. ¶ 8.

The Complaint therefore fails to plead a required element of Plaintiff's Copyright Claims: *i.e.*, that Automax copied any part of the White Paper, let alone any protectable part, and thus could be liable for infringement. Accordingly, the Copyright Claims should be dismissed under Rule 12(b)(6) insofar as they are based on the White Paper. *See Phantomalert*, 2015 WL 8648669 at *12-14*; Media.net Adver.*, 156 F. Supp. 3d at 1068; *TikTok*, 2024 WL 1772833, at *4.

### 3. The Complaint Does Not Allege that Automax Copied Any Part of the Registered Front-End Code (Registration TX 9-585-370) or That Automax Had Access to It.

The Complaint alleges that the registered Front-End Code is comprised of "the computer code that presents the front-end user interface of TrueTracts." Compl. ¶ 29. But nowhere does the Complaint allege that Automax copied any part of the registered Front-End Code. Nor does the Complaint even allege that the Front-End Code Plaintiff allegedly registered includes *client-side* code that would be accessible to Automax in a browser-based application like TrueTracts, as opposed to *server-side* code, which is not.[2] Indeed, as Mr. Ahmad explains, "code that is properly described as 'front-end' is not necessarily visible or accessible to a user who accesses the application through a browser" because "[m]odern web development heavily relies on…server-side code," which is not available through the user's web browser. Huzaifa Decl. ¶ 8.

Specifically, the Complaint alleges:

> On information and belief, Ahmed entered components from TrueTracts into one or more generative AI tools to prompt the generation of code, text, and visual assets for Copilot. TrueTracts operates as a browser-based application. When a registered user logs into a TrueTracts account, the web browser automatically downloads JavaScript, cascading-style-sheet (CSS) files, and other front-end resources needed to display the application. Those files and embedded scripts are visible and can be saved or inspected through common browser tools. On information and belief, Defendants accessed and examined these front-end components while logged into TrueTracts, captured or exported portions of TrueTracts's code and associated design elements, and used them to guide generative AI tools to reproduce them as part of the Automax Copilot interface. This process allowed Defendants to analyze and manipulate TrueTracts's code and the displays embodied in that code, ultimately recreating those as "Copilot."

Compl. ¶ 51.

Nowhere in that paragraph or anywhere else does the Complaint allege that Automax copied any code—let alone protectable code—that is part of the Front-End Code in Registration TX 9-585-

---

[2] "Front-end" refers to the visual interface and user experience (what a user sees and interacts with). "Client-side" means that the code executes on the user's local device or browser, whereas "server-side" means that the code executes on a remote web server and thus is not accessible to the user. Huzaifa Decl. ¶¶ 5-6, 8.

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DISMISS OR FOR A MORE DEFINITE STATEMENT**                    **CASE NO. 3:26-CV-3418-JCS**

370. But Plaintiff *must* allege that Automax copied protectable code to plead infringement based on copying of the registered Front-End Code. *See Fourth Estate*, 586 U.S. at 299; *Media.net Adver.*, 156 F. Supp. 3d at 1068; *TikTok*, 2024 WL 1772833, at *4.

Instead, the Complaint serves up a word salad of irrelevancies and abstractions. Plaintiff speculates that Automax entered unspecified TrueTracts "components" into one or more unspecified generative AI tools. Compl. ¶ 51. But Plaintiff does not allege what those "components" include; nor, crucially, does Plaintiff allege that any of those "components" are part of the Front-End Code included in Registration TX 9-585-370.

Along similar lines, in the same paragraph the Complaint alleges that a browser logged into TrueTracts "automatically downloads JavaScript, cascading-style-sheet (CSS) files, and other front-end resources needed to display the application." *Id*. But again, Plaintiff does not allege that those client-side elements have anything to do with the Front-End Code included in Registration TX 9-585-370.

Plaintiff's sophisticated counsel surely was aware (even before Automax's counsel explained it) that Plaintiff must plead copying of one or more of the specified registered works, and there is every reason to believe that Plaintiff's failure to allege that Automax copied code that is registered is no accident or oversight. Given Plaintiff's stated intentions to bleed Automax dry via the litigation process, Plaintiff's coyness likely is by design. That is, Plaintiff has not connected to the Front-End Code registration its vague allegations that Automax copied "components" either because (a) the registration for Plaintiff's Front-End Code does not include material to which Automax plausibly could have had access, or (b) the "components" that Plaintiff alleges Automax copied are not copyrightable.

As an example of the first scenario—that the registration for Plaintiff's Front-End Code does not include material to which Automax plausibly could have had access—Automax requests that the Court take judicial notice of the certified deposit copy submitted with the registration for Front-End Code, TX 9-585-370. Request for Judicial Notice in Support of Automax's Motion to Dismiss

11

("RJN"), Ex. A ("Deposit Copy"). There are 50 pages of Front-End Code, but much of the content is blacked out; the redactions are code in which Plaintiff claims trade secret. *Id*.

Nowhere in the Deposit Copy is any indication whether any of the content shown is client-side code that would be accessible in a user's browser. *Id*. Presumably the code that is redacted is server-side code—if it were client-side code that could be freely viewed in a user's web browser, then any trade secret in that code would be vitiated. Plaintiff has not alleged that any of the content in the Deposit Copy is client-side code, that Automax had access to any of the code, or that any code to which Automax could have had access is protectable. Given the lack of even the most basic information about what *registered material* Automax is alleged to have copied, it is simply impossible for Automax to defend itself, or even to understand the most basic element of the Copyright Claims—which, if any, of the three registered copyrighted works Plaintiff has identified that Automax is accused of infringing.

As an example of the second scenario—that the "components" that Plaintiff alleges Automax copied are not copyrightable—Plaintiff speculates that Automax "captured or exported" cascading-style-sheet (CSS) files. Compl. ¶ 51. But the U.S. Copyright Office is clear that CSS is not itself copyrightable subject matter, and the Copyright Office therefore will not register copyright claims in such material: "Style sheet languages, such as Cascading Style Sheets, are merely methods of formatting and laying out the organization of documents written in a markup language, such as HTML. Because procedures, processes, and methods of operation are not copyrightable, the Office generally will refuse to register claims based solely on CSS." Compendium of Copyright Office Practices 1007.4 (2021).

The same is true of the other elements of the "look and feel" of TrueTracts that Automax is accused of copying. *See* section III(C), below. None of those elements are copyrightable works, and in any event Automax does not allege that any of them are registered. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1439 (9th Cir. 1994) (look and feel not copyrightable).

Given the absence of allegations in the Complaint either that Automax copied any part of the registered Front-End Code, or that Automax even had access to materials that are part of the

12

registered and protectable Front-End Code, the Complaint fails to plead a required element of Plaintiff's Copyright Claims: that Automax copied any part of the Front-End Code, let alone any protectable part, and thus could be liable for infringement. Accordingly, the Copyright Claims should be dismissed under Rule 12(b)(6) insofar as they are based on the Front-End Code. *See Phantomalert*, 2015 WL 8648669 at \*12-14; *Media.net Adver.*, 156 F. Supp. 3d at 1068, *TikTok*, 2024 WL 1772833, at \*4.

### C. Plaintiff's Irrelevant Allegations of Copying.

While the Complaint fails to allege copying of (or even access to) any part of Plaintiff's three registered works, as discussed in section (III)B above, Plaintiff attempts some sleight of hand by alleging instances of copying that are irrelevant both because the material that Plaintiff alleges Automax copied is not alleged in the Complaint to have been registered prior to the commencement of litigation, as the law requires, and because the material is not copyrightable subject matter.

### 1. Heatmap "Design and Presentation."

Plaintiff alleges that Automax copied the "design and presentation" of a heatmap showing nearby comparable properties and color-coded price adjustments for neighborhood value based on appraiser inputs "like gross living area (GLA), lot size, or the number of bedrooms…." Compl. ¶¶ 54-57. Those allegations cannot be the basis for Plaintiff's Copyright Claims. Plaintiff does not allege either that its heatmap has anything to do with any of the three registered works specified in the Complaint, or that it has registered a separate copyright claim in its heatmap design as a graphical work. *See Fourth Estate*, 586 U.S. at 299; *Skidmore*, 952 F.3d at 1063. These failures mean that Plaintiff cannot base its Copyright Claims on allegations that Automax copied its heatmap.

Moreover, amendment would be futile, because neither the heatmap itself nor Plaintiff's particular "design and presentation" of the heatmap is copyrightable. Plaintiff cannot claim that it owns a copyright in the *concept* of a heatmap that shows adjusted real estate values. *See* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, *concept*, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.") (emphasis

13

added). Heatmaps are widely used in the real estate business, and Plaintiff did not invent them. Zillow started using them in 2006 to show differences in property valuations by neighborhood. Ahmed Decl. ¶ 9.

Nor can Plaintiff claim that Automax infringed its copyright in the heatmap's "design and presentation" by having a similar input menu and display for Automax's version of a real estate heatmap. Plaintiff cannot claim copyright ownership of the facts about real estate that comprise the heatmap inputs, including "gross living area (GLA), lot size, or the number of bedrooms" (Compl. ¶ 54). *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 344-45 (1991) ("The most fundamental axiom of copyright law is that no author may copyright his ideas or the facts he narrates.") *(*quoting *Harper & Row, Publishers, Inc. v. Nation Enters.,* 471 U.S. 539, 556 (1985)).

And Plaintiff cannot lay claim under copyright law to its particular heatmap input interface or display. Under copyright's *scènes à faire* doctrine, copyright protection "does not extend to any element of expression in that work that … is standard, stock, customary, stereotypical, or common in the treatment of a particular subject or given topic…." Restatement of Copyright, Section 18; *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) ("expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law"). The images in the Complaint show that the elements of the heatmap input menu that Plaintiff claims to own—*e.g.*, the "GLA" (gross living area), lot size, and number of bedrooms (Compl. ¶ 55)—are all in fact bog-standard for *any* real estate valuation effort and thus unprotectable by copyright. *Id*. ¶¶ 56-57. Every real estate valuation tool is going to have some sort of input for GLA. Every tool also will necessarily require an input for lot size and number of bedrooms. Likewise, the colors used in Plaintiff's heatmap are standard for heatmaps of any kind—*e.g.*, blue is stock for "cool"; red is stock for "hot"; green is stock for "good"—and these stock color meanings translate directly into uses on real estate valuation heatmaps (where blue represents "cool" neighborhoods where prices are lower, red "hot" neighborhoods where prices are higher, and green "just right" neighborhoods that make for good valuation comparators). Ahmed Decl. ¶ 10.

14

Nor is a so-called "selection and arrangement" of these input menu elements protectable. A particular selection and arrangement of otherwise unprotected elements can be protected as a compilation—but only if the selection and arrangement is itself creative. Restatement of Copyright, Section 4, Comment *e* ("To prepare a copyrighted compilation, "the compilation author's selection, coordination, and/or arrangement of the preexisting material must be original.""); *Skidmore*, 952 F.3d at 1074 ("[W]hat a selection and arrangement copyright protects is the particular way in which the artistic elements form a coherent pattern, synthesis, or design."). But as a matter of common sense, *all* the elements that are present on both the TrueTracts and Automax input screens are necessary to any accurate real estate valuation. *See* Compl. ¶¶ 54-55. There is no "selection" of some subset of these elements that would contain the requisite creative choice to qualify for copyright protection. Nor is there creativity in Plaintiff's arrangement of these elements. The inputs appear to be ordered in terms of the magnitude of their likely effect on valuation. That is a functional decision that is outside the scope of copyright protection, not a decision involving expressive creativity that could support a copyright in the arrangement. *ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405, 418 (9th Cir. 2018) ("[F]unctionally driven decision-making does not demonstrate the kind of originality with which copyright is exclusively concerned.").

In any event, even if Plaintiff's choice of how to select and arrange the data input elements in TrueTracts were protectable by copyright (it is not), the copyright in that compilation would be very thin—it would protect only that particular selection and arrangement. *See* Restatement of Copyright, Section 4, Comment *f* ("Copyright protection for a compilation extends only to the compilation author's original selection, coordination, and/or arrangement…."). To establish infringement of a protected compilation, Plaintiff must show wholesale appropriation or something very close to it. *Harper House, Inc. v. Thomson Nelson, Inc.*, 889 F.2d 197, 205 (9th Cir. 1989) ("[C]opyright infringement of compilations consisting largely of uncopyrightable elements should not be found in the absence of 'bodily appropriation of expression.'") (quoting *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 573 (9th Cir. 1987)).

15

But just looking at the images in the Complaint, there is no way, as a matter of law, that Plaintiff could show the nearly verbatim copying that is required for a finding of infringement. There are *many* differences in the particular arrangement of the data input elements on the face of the images. Not least, they are ordered differently. Plaintiff's order (from left to right, top to bottom) is GLA, Basement Exists, Basement Finished Sqft, Lot Size, Bedrooms, and Bathrooms. Automax's order (from left to right, top to bottom) is GLA, Lot Size, Bedrooms, Bathrooms, Year Built. These differences preclude a finding of liability as a matter of law. *Experian Info. Sol., Inc. v. Nationwide Mktg. Serv., Inc.*, 893 F.3d 1176, 1186 (2018) (Affirming district court's grant of summary judgment where defendant had not been shown to have copied plaintiff's database verbatim: "In the context of factual compilations, we have held that infringement should not be found in the absence of bodily appropriation of expression, or unauthorized use of substantially the entire item.") (internal citations and quotations omitted).

### 2. GAM Model Method and Presentation.

Plaintiff also alleges that Automax copied the "method and presentation" of Plaintiff's GAM that it uses to help establish real estate valuations. Compl. ¶¶ 58-60. But again, these allegations cannot support a copyright claim by Plaintiff as a matter of law. First, Plaintiff does not allege that it has registered a copyright claim in any aspect of its GAM model, and thus it cannot provide a basis for Plaintiff's Copyright Claims here. *See Fourth Estate*, 586 U.S. at 299; *Skidmore*, 952 F.3d at 1063.

Nor could Plaintiff make such a claim. Plaintiff did not invent GAM models; this family of statistical models was invented in 1986 by statisticians Trevor Hastie and Robert Tibshirani. Ahmed Decl. ¶ 11. Plaintiff has no claim to ownership of GAM models. Plaintiff did not even originate the use of GAM models in the real estate field; the use of these models in real-estate valuation was described in academic papers at least as far back as 1998. *Id*.

Automax built its own GAM model from scratch, and it was perfectly free to do so. *Id*. To the extent that Plaintiff alleges that Automax infringed by copying the GAM "method" (Compl. ¶ 60), that claim runs headlong into the limitations of the Copyright Act, which expressly states that

16

copyright protection does not extend to methods (those are the province of patent law). 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, *procedure, process, system*, *method of operation*, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.") (emphasis added). *See also* Restatement of Copyright, Section 15, Comment *b* ("The category of methods … includes four of the elements identified by the statute's text: 'procedure,' 'process,' 'system,' and 'method of operation.' These four elements are alike in that they are excluded from copyright protection to ensure that copyright protection does not create a type of 'back-door' utility patent. *Baker v. Selden*, 101 U.S. 99 (1879).").

To the extent that Plaintiff suggests that Automax infringed by copying Plaintiff's "presentation" of its GAM-driven price adjustment tool (Compl. ¶ 60), that claim likewise is legally defective on its face. First, Plaintiff does not allege that it has registered a copyright claim in its "presentation" of the GAM tool, so it cannot be a basis for Plaintiffs' Copyright Claims here. *See Fourth Estate*, 586 U.S. at 299; *Skidmore*, 952 F.3d at 1063.

Even if Plaintiff alleged such a registration, an infringement claim based on it would fail as a matter of law. The "presentation" elements to which Plaintiff points—like expressing the value that a feature, such as an extra bathroom, would add to a property as a distribution (*i.e.*, a curve) around that value—are all unprotectable *scènes à faire* because they flow naturally from use of the unprotectable GAM method. *See* Restatement of Copyright, Section 18 ("The scope of copyright protection for a work of authorship does not extend to any element of expression in that work that … flows naturally from unprotectable elements in the work."); *Berkic v. Crichton*, 761 F.2d 1289 (9th Cir. 1985) (among the "forms of literary expression" that "are not protected against copying" are "all situations and incidents which flow naturally from a basic plot premise, so called scenes a faire."). That is, use of the GAM method to produce adjustments to real estate valuations for particular features of a property *necessarily* produces both an estimated value for that feature and an uncertainty interval that is expressed as a curve. Ahmed Decl. ¶ 12. Those particular elements of display are the natural consequence of applying a GAM model in the context of real-estate valuation.

17

### 3.  Reconciliation Methodology Page and Other Elements.

Finally, Plaintiff alleges that Automax copied the "description of its methodology" on TrueTracts' "reconciliation methodology" page as well as other unspecified elements, including "each step of TrueTracts's workflow and the selection and arrangement of information and visual elements within each step," "additional written descriptions from TrueTracts," and "the entire appraisal development sequence from TrueTracts." Compl. ¶¶ 61-66. Those allegations cannot be the basis for Plaintiffs' Copyright Infringement claims for the same basic reason discussed above: Plaintiff does not allege that it has registered a copyright claim in any of those elements. *See Fourth Estate*, 586 U.S. at 299; *Skidmore*, 952 F.3d at 1063.

Additionally, those elements are not copyrightable subject matter. Many of those elements—for example, the "selection and arrangement of information and visual elements," are part of the layout, format, or "look and feel" of Plaintiff's TrueTracts website. But the U.S Copyright Office has made clear that the layout, format, or "look and feel" of a website is not copyrightable subject matter: "The copyright law does not protect the appearance or overall look and feel of a website. It only protects the specific copyrightable expression found on a website on given date." Compendium of Copyright Office Practices 1007.4 (2021). The Complaint does not allege that any of these unspecified pieces of "information" and "visual elements" of the website are separately registrable, or have been separately registered, as literary, pictorial, graphic, or audiovisual works—or indeed as any type of work within the scope of copyright's subject matter. *See* 17 U.S.C. § 102(a) (listing categories of protectable works).

Copyright protection also is unavailable for elements, such as the website's "methodology," "appraisal development sequence," and "each step of the workflow," that are functional methods, procedures, processes, or systems. 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, *procedure, process, system*, *method of operation*, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.") (emphasis added); *see Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC,* 803 F.3d 1032 (9th Cir. 2015) (book containing depictions of a sequence of

18

yoga poses and breathing exercises not copyrightable because it was an idea or process under the Copyright Act). The Complaint does not allege that any of those elements are registered; nor would those elements be registrable, and so leave to amend would be futile.

**D.    The Court Should Grant Summary Judgment to Automax on the Copyright Claims If Plaintiff Does Not Adduce Evidence of a Good-Faith Basis for Asserting Them.**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as matter of law." Fed. R. Civ. P. 56(a). "Under Rule 56(d)(1), a summary judgment/adjudication motion, interlocutory in character, may be rendered on the issue of liability alone. 'In cases that involve multiple causes of action summary judgment may be proper as to some causes of action but not as to others or as to some issues but not as to others or as to some parties but not as to others.'" *McIntosh v. N. Cal. Enters. Co.*, 670 F. Supp. 2d 1069, 1086 (E.D. Cal. 2009) (quoting *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981)). "A court may grant summary adjudication as to specific issues if it will narrow the issues for trial." *McIntosh*, 670 F. Supp. 2d at 1086 (quoting *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F. Supp 1051, 1055 (S.D. Cal. 1997)).

In light of Plaintiff's failure to allege any connection between the registered copyrighted works it has identified and the material Plaintiff alleges Automax copied, and given Plaintiff's clear admission of its improper motives in bringing this action, the Court should consider Plaintiff to be on notice of the deficiencies of its Complaint and the Court should expect that Plaintiff will avail itself of the reasonable opportunity it now has to present in its response to this motion evidence that it has registered copyright claims in protectable materials that it alleges Automax has copied. Plaintiff's Complaint necessarily relies on proof that the copyrighted works that are the basis of its Copyright Claims have been registered with the U.S. Copyright Office. 17 U.S.C. § 411(a). To establish the good-faith basis that Plaintiff must have had before it filed its Copyright Claims, Plaintiff should attach to its response the full, unredacted contents of the works it has registered and specify which of those works, or parts of those works, it alleges Automax copied. If Plaintiff fails to provide such evidence, the Court should grant summary judgment to Automax. *See*, *e.g.*,

19

*Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) (explaining that "claims lacking merit may be dealt with through summary judgment under Rule 56").

### E.     In the Alternative, Automax Requests a More Definite Statement of the Copyright Claims Pursuant to Rule 12(e).

"If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz*, 534 U.S. at 514.

If the Court does not dismiss Plaintiff's Copyright Claims on summary judgment or under Rule 12(b)(6), then Automax respectfully requests that Plaintiff be required to provide a more definite statement of the factual basis for its Copyright Claims—specifically, that Plaintiff be required to identify (i) what portions of its registered works it alleges that Automax copied and (ii) how Automax had access to those works. Fed. R. Civ. P. 12(e); *see, e.g.*, *Cascade Investments, Inc. v. Bank of Am., N.A., S.A.*, No. CV–N–99–559–ECR(RAM), 2000 WL 1842945, at *3 (D. Nev. Sept. 29, 2000) (requiring plaintiffs to provide more definite statement of its claim for intentional interference with prospective contractual relationship because the complaint "failed to identify the prospective contractual relations the defendant allegedly interfered with and how the defendant interfered with these relationships"). Without such clarification here, the Complaint's "allegations are insufficient to give [Automax] sufficient notice so that it may respond." *Cascade Investments*, 2000 WL 1842945 at *3.

### F.     The Court Should Dismiss the State Law Claims for Lack of Jurisdiction.

The Complaint asserts only federal question jurisdiction over the Copyright Claims, and supplemental jurisdiction over the remaining State Law Claims. Compl. ¶¶ 14-18. Plaintiff has not asserted that diversity jurisdiction exists, nor does it allege in the Complaint that it has been damaged by at least $75,000. Accordingly, Plaintiff's failure to allege cognizable copyright claims strips this Court of its original jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), and thus the Court can and should decline to exercise supplemental jurisdiction over the State Law Claims under 28 U.S.C. § 1367(c). *Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*, 212 F. Supp. 3d 816, 829 (N.D. Cal. 2016) ("When all of the federal claims are dismissed early in a case, the district court may, under

20

section 1367(c), decline to exercise its supplemental jurisdiction[,] and ordinarily should dismiss the state law claims.") (cleaned up).

As is the case here should the Court dismiss the Copyright Claims, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quotation and citation omitted). This is true here because "this case has yet to proceed beyond the pleadings, and there has been no discovery conducted to date," and "[f]ew judicial resources are wasted by dismissing the case at this stage, and dismissal promotes comity by allowing the California courts to interpret state law in the first instance." *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1097 (N.D. Cal. 2015) (granting motion to dismiss federal claims and declining to exercise supplemental jurisdiction over remaining state-law claims) (citation omitted).

Indeed, courts in the Ninth Circuit regularly decline to exercise supplemental jurisdiction in these circumstances. *See*, *e.g., Sanford*, 625 F.3d at 561 (finding no abuse of discretion in dismissing state-law claims where the district court properly dismissed all federal-law claims, and the balance of factors did not weigh in favor of retaining the state-law claims); *Vasquez v. City of San Jose*, 634 F. Supp. 3d 712, 732 (N.D. Cal. 2022); *Theta Chi Fraternity*, 212 F. Supp. 3d at 829 (where all federal claims for trademark infringement and dilution were dismissed, court declined to exercise supplemental jurisdiction over remaining state law claims); *Phantomalert*, 2015 WL 8648669 at *14 ("Because jurisdiction in this case is based on the existence of a federal question under 28 U.S.C. § 1331 and Plaintiff has not stated a federal claim, the Court does not reach Defendants' challenges to Plaintiff's state law claims."). The Court here likewise should exercise its discretion, decline to exercise supplemental jurisdiction over the State Law Claims, and dismiss those claims in favor of adjudication in state court.

21

**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DISMISS OR FOR A MORE DEFINITE STATEMENT**

**CASE NO. 3:26-CV-3418-JCS**

## IV.  CONCLUSION

For the foregoing reasons, Automax respectfully requests that the Court (a) grant summary judgment on the Copyright Claims, or, in the alternative, dismiss them for failure to state a claim; (b) dismiss the State Law Claims for lack of federal jurisdiction; or (c) in the alternative, order a more definite statement of the Copyright Claims.

Dated: June 29, 2026

Respectfully submitted,

LEX LUMINA LLP

By: /s/ *Rhett O. Millsaps II*
    Rhett O. Millsaps II (SBN: 348949)
    rhett@lex-lumina.com
    700 S. Flower Street, Suite 100
    Los Angeles, California 90017
    Telephone: (213) 600-6063
    Fax: (646) 906-8657

    Christopher J. Sprigman (appearing pro hac vice)
    chris@lex-lumina.com
    745 Fifth Avenue, Suite 500
    New York, New York 10151
    Telephone: (646) 898-2055
    Fax: (646) 906-8657

    HARRIS ST. LAURENT LLP

    Jonathan Harris (appearing pro hac vice)
    jon@hs-law.com
    Ashley N. Robinson (appearing pro hac vice)
    arobinson@hs-law.com
    40 Wall Street, 53rd Floor
    New York, New York 10005
    Telephone: (212) 397-3370
    Fax: (212) 202-6206

    *Attorneys for Defendants*

22