TODD R. GREGORIAN (CSB No. 236096)
*tgregorian@fenwick.com*
GARNER KROPP (CSB No. 312585)
*gkropp@fenwick.com*
GREGORY ADAMS (CSB No. 292391)
*gadams@fenwick.com*
SAMANTHA COX-PARRA (CSB No. 351914)
*scox-parra@fenwick.com*
FENWICK & WEST LLP
One Front Street, 33rd Floor
San Francisco, CA  94111
Telephone:     415.875.2300
Facsimile:     415.281.1350

*Counsel for Plaintiff*
TRUE FOOTAGE INC.

FENWICK & WEST LLP

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUE FOOTAGE INC. | Case No. 3:26-cv-03418-AGT |
| Plaintiff, | **JOINT CASE MANAGEMENT CONFERENCE STATEMENT** |
| v. | |
| AUTOMAX AI INC.; AUTOMAX AI (US) INC.; and HUMZA AHMED, | |
| Defendants. | |

Pursuant to Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, and the Standing Order for All Judges of the Northern District of California entitled "Contents of Joint Case Management Statement," Plaintiff True Footage Inc. and Defendants Automax AI Inc., Automax AI (US) Inc., and Humza Ahmed (collectively, "Defendants" or "Automax") (together with True Footage, the "Parties"), submit the following Joint Case Management Conference Statement.

## I.   JURISDICTION AND SERVICE

True Footage alleges federal question jurisdiction (*see* 28 U.S.C. §§ 1331, 1338) over this action based on its assertion of claims under the Copyright Act.  True Footage alleges that this Court has supplemental jurisdiction (*see* 28 U.S.C. § 1367) over True Footage's state law breach of contract and tort claims because the copyright, contract, and tort claims all arise from unlawful use of True Footage accounts to copy the TrueTracts real estate appraisal tool.  Service is complete on all Defendants.

## II.   RELEVANT FACTS

*Plaintiff's Statement:*

True Footage is the market-leader in data-driven real estate appraisal software.  Its primary offering is the TrueTracts appraisal tool.  Defendant Humza Ahmed recently left school to start Automax AI Inc. and Automax AI (US) Inc.  His "Copilot"[1] software began as a data entry and form filling tool for real estate appraisers.  But after Ahmed applied and was accepted to Y Combinator, a well-known startup accelerator, he faced increasing pressure to expand this offering to make it attractive to investors.  Soon after, Ahmed misrepresented that he was a real estate appraiser and an active MLS member to defraud True Footage into allowing him access to its TrueTracts product.  With the help of an overseas software developer and others, Ahmed then used the account and AI coding tools to copy elements of the TrueTracts software into Copilot and present them as his original work.  Indeed, comparing the products side by side shows screen after screen where Copilot is nothing but a rote copy of TrueTracts' registered front-end code, including its incorporated visual design elements and original text descriptions.

The full extent of Ahmed's copying and abuse of his True Footage account is still unknown.  The complaint is based on Ahmed's public infringing displays during promotional webinars for Copilot, which are necessarily limited to what Ahmed chose to show his audience.  "Copilot" itself is not in general release to the public and thus True Footage has not had the opportunity to examine

---

[1] To True Footage's knowledge, this product has no connection to Microsoft or its "Copilot" AI software released in 2023, nor do Defendants have Microsoft's authorization to use its registered mark "COPILOT."

FENWICK & WEST LLP

its full features and user interfaces to identify all the infringements at issue in this action. True Footage also has had no access to Copilot source code or the AI tools that Ahmed and his co-conspirators used to copy TrueTracts. Fact discovery is thus necessary to determine the full extent of the copying at issue in this case, and to identify each separate act of infringement of a statutory exclusive right of the copyright holder (e.g., each reproduction, distribution, display, etc.).

After True Footage learned about Ahmed and Automax's copying, True Footage sent Defendants a letter on March 27, 2026, demanding that Defendants cease and desist offering their knock-off to avoid litigation, and to preserve documents and information relevant to this dispute. True Footage demanded no payment, and acknowledged Defendants would be free to create Copilot features that specifically compete with True Footage, so long as Defendants developed those features independently without benefiting from their fraudulent access to TrueTracts or their AI-enabled copying of its software elements. Rather than comply, Ahmed responded to the letter asking True Footage not to act while he assembled his defenses, but then presented Copilot and displayed the same infringing features to the public at a webinar *the very next day*. When Defendants responded, they did not agree to remove Copilot's offending features, so True Footage filed this action soon after.

### *Defendants' Statement:*

As explained in Defendants' Motion for Partial Summary Judgment and to Dismiss or, in the Alternative, for More Definite Statement (Dkt. 22), Plaintiff has failed to identify what, if any, registered and copyright-protectible code from TrueTracts Defendants allegedly copied. In a sleight-of-hand move, the Complaint points to three registered works (front-end code, back-end code, and a white paper) but then immediately pivots to allegations that Automax copied material that Plaintiff *does not allege is registered*. Specifically, Plaintiff does not allege that it has registered the "design and presentation" of a standard heatmap, or the "method and presentation" of Plaintiff's generalized additive model ("GAM") that it uses to help compute real estate valuations, or any of the other visual or workflow elements of TrueTracts that it alleges have been copied. Under black-letter copyright law, Plaintiff cannot base its copyright claims on allegations of copying that involve unregistered material. And it is unlikely that Plaintiff could amend to allege registration of these

materials, as they are not copyrightable subject matter because they are functional and/or unprotectable *scènes à faire*.

Moreover, the Complaint does not allege that Automax had—or even could have had—the access to TrueTracts' front-end or back-end code necessary to copy it, considering that TrueTracts is a web-based platform run by server-side code to which the user does not have access. Automax in fact never had access to any of the TrueTracts code. Dkt. 26 ¶ 8. Anyone with sufficient coding ability could create a standard heatmap or GAM model that looks similar—because all real estate heatmaps and GAM models are likely to share many similarities—to those in TrueTracts without seeing or copying any TrueTracts code. Automax repeatedly pointed this out to Plaintiff, but Plaintiff refused to amend to cure the deficiencies.

Instead, Plaintiff's counsel expressly admitted to Automax's counsel that Plaintiff's goal with this action is to destroy its competitor Automax with the litigation process, regardless of the merits of Plaintiff's claims. Dkt. 24-25. This is because Plaintiff has raised more than $105 million in venture capital to date but has struggled in the market, in large part due to TrueTracts' technological limitations. Dkt. 26 ¶ 5. TrueTracts is a "plug-in" focused on only one part of the appraisal process, data analysis. In contrast, Automax's Copilot is an end-to-end solution that assists appraisers in all four steps of property appraisal: (1) inspection; (2) data gathering on comparables; (3) data analysis; and (4) appraisal report generation. *Id*. Automax's founder and CEO, Humza Ahmed, comes from a family that has been in the residential real-estate business for three generations. *Id*. ¶ 3. Automax builds its Copilot native-AI appraisal software for its own appraisers to use, and it also provides that software without charge to independent appraisers in regions where Automax does not have its own appraisers. *Id*. ¶ 4. Automax gives away its software to these independent appraisers whether they are performing an independent appraisal for a lender through Automax or not—Automax's aim is to improve the appraisal process and help as many appraisers as possible become familiar with Copilot. *Id*. ¶ 4.

FENWICK & WEST LLP

## III.   LEGAL ISSUES

### *Plaintiff's Statement:*

The legal issues to be resolved in this case are: (1) whether Defendant Ahmed made fraudulent or negligent misrepresentations to True Footage to create a True Footage account and access True Footage products; (2) whether Defendant Ahmed breached his agreements with True Footage; (3) whether Defendants intentionally interfered with any users' or third-party appraisers' contractual relations with True Footage or induced them to breach their contracts with True Footage; (4) whether Defendants directly infringed any of True Footage's exclusive statutory rights associated with the asserted copyright(s); (5) whether Automax is liable for contributory infringement by knowingly contributing to Defendants' direct copyright infringement by operating Copilot despite knowing of the unauthorized infringements and having the ability to stop distribution and use; and (6) whether Automax is vicariously liable for Copilot users' infringement given Automax's financial benefit from appraisals completed with Copilot, and Automax's right and ability to control infringements through Copilot use.

### *Defendants' Statement:*

The threshold legal issue is whether Plaintiff can identify any registered, copyright-protectible material that Automax allegedly copied and, if so, whether Plaintiff can show how Automax had access to those works. If Plaintiff cannot, then the Court must dismiss the copyright claims and should decline to exercise supplemental jurisdiction over the state-law claims.

## IV.   MOTIONS

On June 29, 2026, Automax moved to dismiss True Footage's copyright claims under Rule 12(b)(6) and to decline supplemental jurisdiction of the remaining claims in the case and thus dismiss the complaint in its entirety. *See* Dkt. 22.  Automax further asks that the Court require True Footage to respond to the motion with evidence, and, if no evidence is submitted, to invoke its discretion under Rule 12(d) to convert the motion into a motion for partial summary judgment. *Id.* at 4.  In the alternative, Automax requests that True Footage be required to provide a more definite statement of the factual basis for its copyright claims.  True Footage's opposition to the motion is

FENWICK & WEST LLP

due on July 29, 2026, and Automax's reply is due on August 11, 2026. The hearing is set for September 4, 2026.

## V.    AMENDMENT OF PLEADINGS

At this time, the Parties do not anticipate further amendments to the pleadings.

## VI.    EVIDENCE PRESERVATION

### *Plaintiff's Statement:*

True Footage has taken measures to ensure relevant evidence has been and will be preserved. It has also expressed serious concerns to Defendants about their document preservation, who have not answered basic questions about document preservation for nearly four months. Defendant Ahmed is young and inexperienced, and to True Footage's knowledge, he has no prior experience with the obligations of federal litigation in the United States. True Footage has asked Defendants basic questions about document preservation at least eight times, through letter, email, and conferences, and Defendants have never answered, other than to state that they will comply with the Federal Rules. Because Defendants repeatedly refused to provide specific responses about document preservation, and indeed because Defendants' original counsel promised such responses but then were replaced with the current counsel of record days later, True Footage has serious concerns that Defendants have not maintained all potentially relevant information. In the Parties' Rule 26(f) conference, True Footage asked Defendants about what steps they took to preserve relevant evidence, like: (1) have Defendants forensically imaged any device?; (2) have Defendants preserved prompts and outputs of AI tools used to develop Copilot?; (3) have Defendants ensured that any overseas workers have preserved data?; (4) has Ahmed, any Automax employee, or any Automax contractor used ephemeral messaging applications, and if so, have Defendants preserved those?; and (5) have Defendants deleted or failed to preserve any relevant document since March 27, 2026? Defendants refused to respond and argued that, even though fact discovery had not opened, Rule 26 requires discussion of evidence preservation only for "specific discovery issues that have arisen at this point."

FENWICK & WEST LLP

*Defendants' Statement:*

Defendants have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and Defendants have taken measures to ensure relevant evidence has been and will be preserved. At the Parties' Rule 26(f) meet and confer, rather than engaging in a dialogue to negotiate parameters and protocols for preservation of ESI as contemplated by the rules, Plaintiff's counsel improperly attempted to interrogate Defendants' counsel with a prepared list of questions about what specifically Defendants and their counsel have done to date to preserve evidence, such as whether Defendants' hard drives have been forensically imaged. Defendants' counsel has repeatedly stated to Plaintiff's counsel that Defendants are complying with their preservation obligations and will endeavor to address any good faith, specific concerns about preservation founded in fact. Plaintiff has been unable to articulate any substantive basis for a concern about Defendants' preservation efforts. Rather, Defendants appear to be attempting to manufacture an issue out of thin air to raise with the Court to drive up the burden and cost of this litigation for Defendants—a strategy that fits with the statement of Plaintiff's counsel vowing to put Automax out of business by imposing litigation costs, without regard to the merits of Plaintiff's claims.

Defendants' counsel explained to Plaintiff's counsel the proper purpose of the Rule 26(f) meet and confer process, as articulated in the Guidelines for the Discovery of Electronically Stored Information and the Court's Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information. Defendants' counsel further explained that they are available to meet and confer in good faith about an ESI protocol in accordance with the Court's rules. Plaintiff's counsel stated that they would send a proposed ESI protocol for Defendants' consideration, and Defendants will meet and confer in good faith with Plaintiff regarding such proposed ESI protocol.

## VII.  DISCLOSURES

The Parties will serve initial disclosures by July 22, 2026.  *See* Dkt. 7.

## VIII.  DISCOVERY

On July 16, 2026, the Parties conferred pursuant to Rule of Civil Procedure 26(f).  The Parties discussed a stipulated protective order and stipulated e-discovery order for discovery of

FENWICK & WEST LLP

both Parties' computer code and other ESI at issue. The Parties disagree on the amount of written discovery and depositions that should be permitted.

***Plaintiff's Statement:***

With discovery now open, True Footage will serve discovery concerning all of its claims, Defendants' defenses, and the evidence Defendants attached to their pleadings motion. For its copyright claims, True Footage will conduct discovery primarily into (1) how Defendants copied True Footage's TrueTracts work, including how Defendants used generative AI tools to copy TrueTracts, (2) how Defendants developed their Copilot product, (3) how Defendants benefited from copying True Footage's work, (4) Defendants' marketing, including how Defendants made infringing displays of True Footage's work, induced others to infringe on True Footage's copyrights, and admissions they made in statements to advisors and investors, and (5) the evidence that Defendants submitted with their motion for partial summary judgment. For its contract and tort claims, True Footage will conduct discovery on (1) Ahmed's creation of his True Footage account, (2) how Defendants used that account and breached the terms governing that account, (3) how Defendants induced users to breach their agreements with True Footage, and (4) how other True Footage users assisted Defendants in developing Copilot. True Footage also anticipates discovery into how Defendants preserved relevant information after being on notice of these claims.

True Footage opposes Defendants' proposed phased discovery. True Footage stated a claim for copyright infringement by identifying its registered work, identifying how Defendants copied it, and showing Defendants' resulting copies side-by-side with the original. Those allegations are based on Defendants' public promotional webinars for Copilot, and True Footage has no access to Copilot or Defendants' documents and communications to determine everything that Defendants copied such that True Footage can identify all Defendants' infringements that will be at issue in this case. In requesting discovery on only the topics Defendants choose, in only the formats they choose, and asking to re-brief summary judgment immediately after, Defendants are attempting to prevent discovery into their copying (and potential spoliation of evidence). This gets discovery procedure backwards. The normal course of litigation allows the plaintiff to seek discovery on its claim, assemble evidence, and then attempt to prove its case. Nothing about this case demands an

FENWICK & WEST LLP

extraordinary procedure staying the Plaintiff's discovery while allowing the Defendants'. Finally, Defendants' request for one-sided discovery followed immediately by new summary judgment briefs shows that Defendants' already-filed motion for partial summary judgment is meritless and should be denied.

True Footage proposes that the standard written discovery limits of 25 interrogatories and 25 requests for admission (other than requests for authentication) apply per side as opposed to per party. The "per side" limitation is properly imposed when the parties on one side—like Ahmed and his two closely held entities—are "only nominally separate" and their interests are aligned. *See Gaby's Bags, LLC v. Mercari, Inc.*, No. 20CV00734WHATSH, 2021 WL 857695, at *1-2 (N.D. Cal. Mar. 8, 2021) (collecting cases). If the Court intends to apply limits "per party" rather than "per side," such that True Footage faces the burden to respond to up to 75 interrogatories and 75 requests for admission from Defendants, True Footage respectfully asks that the Court permit it up to 50 interrogatories and 50 requests for admission.

True Footage also proposes that each side be allowed 10 depositions of party-affiliated witnesses, but that depositions of third-party witnesses do not count toward that limitation. As it alleged in the complaint, True Footage has already uncovered multiple third-party appraisers who Defendants induced to breach their contracts with True Footage, and there are potentially others who remain unknown to True Footage at this time. True Footage will need discovery from Defendants' third-party collaborators. If the Court desires instead to set a single initial deposition limitation that includes all fact and expert witnesses, True Footage proposes a limit of 15 witnesses per side.

**Defendants' Statement:**

Defendants respectfully request that the Court limit initial discovery to the issues of (i) what portions, if any, of Plaintiff's works registered with the U.S. Copyright Office Plaintiff alleges Defendants copied and (ii) whether and how Defendants had access to those materials. These are threshold issues of Plaintiff's standing to bring claims under the Copyright Act, and Plaintiff has no right to use this Court and the discovery process to waste Defendants' resources and to gain

FENWICK & WEST LLP

FENWICK & WEST LLP

access to Defendants' proprietary, trade-secret computer code and other materials if Plaintiff has no proper basis for its copyright claims.

Defendants oppose Plaintiff's request that written discovery limitations, such as Fed. R. Civ. P. Rule 33's limitation that "a party may serve on any other party no more than 25 written interrogatories" (absent stipulation or court order), apply per side as opposed to per party. As the case law collected in *Mercari* says, courts sometimes limit written discovery when the parties are only nominally separate—as when one is the alter ego of another. 2021 WL 857695, at *1-2. Mr. Ahmed is not an alter ego of either of the Automax companies. Defendants thus oppose Plaintiff's request to group Mr. Ahmed with the Automax companies for purposes of written discovery limitations under the Rules. Mr. Ahmed might have defenses and/or counterclaims separate from the Automax companies and is entitled to full discovery on his claims and defenses.

Defendants also oppose Plaintiff's request to expand the deposition limit beyond that set by Fed. R. Civ. P. 30. Rule 30 expressly states that "A party must obtain leave of court" to take a deposition "if the parties have not stipulated to the deposition and: the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants…" If Plaintiff reaches its 10-deposition limit under Rule 30 and wishes to take more than that, then Plaintiff should meet and confer with Defendants regarding a stipulation or, if the Parties cannot reach agreement, try to obtain leave of court to take any such additional depositions. The Court should not expand the limits of Rule 30 ab initio, particularly given Plaintiff's expressed intention to use the litigation process to inflict maximum damage on Defendants regardless of the merits of Plaintiff's claims. Dkts. 24-25.

## IX.    CLASS ACTIONS

This is not a putative class action.

## X.    RELATED CASES

The Parties are not aware of any related cases.

## XI.   RELIEF SOUGHT

*Plaintiff's Statement:*

True Footage requests injunctive relief, damages, and True Footage's costs and attorneys' fees for this action.  For injunctive relief, True Footage requests that the Court enter an injunction prohibiting Defendants from (1) infringing the True Footage copyrights; (2) retaining, using, distributing, displaying, reproducing, marketing, advertising, or performing the TrueTracts Code or any materials derived from the TrueTracts Code, including infringing Copilot features, or participating or assisting in any of those activities; and (3) engaging in any other acts that violate the Copyright Act.  True Footage also asks for a mandatory injunction requiring Defendants to, after review and verification by True Footage, destroy all copies of Copilot and TrueTracts in their possession, and that any future version of Copilot must be developed according to industry standard "clean room" procedures that prevent use of code or other materials obtained from Defendants' unlawful access to True Footage products.  For damages, True Footage seeks its actual damages and disgorgement of Automax's profits, or in the alternative, statutory damages for willful copyright infringement, and True Footage may choose which at any time before judgment.  *See* 17 U.S.C. § 504.  In either instance, True Footage also requests reasonable attorneys' fees and costs and prejudgment and post-judgment interest.

*Defendants' Statement:*

Defendants will seek their attorneys' fees and costs under the U.S. Copyright Act if and when they prevail on Plaintiff's copyright claims. Defendants might seek additional relief under counterclaims if Plaintiff's complaint is not dismissed and this case proceeds.

## XII.   SETTLEMENT AND ADR

The Parties engaged in settlement discussions prior to the filing of this lawsuit.  Those discussions did not lead to a resolution of the dispute.  The Parties agree that ADR would not be productive at this time.  The Parties have no scheduled plans to engage in further ADR before resolution of Defendants' pending motion.

## XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The Parties have consented to a magistrate judge for all purposes.  *See* Dkts. 9 and 21.

FENWICK & WEST LLP

### XIV. OTHER REFERENCES

None at this time.

### XV. NARROWING OF ISSUES

*Plaintiff's Statement:*

True Footage is currently unaware of any issues at this time which can be narrowed by agreement or by motion outside of engagement in discovery and True Footage does not request to bifurcate issues, claims or defenses.

*Defendants' Statement:*

Defendants respectfully request that the Court bifurcate and expedite discovery on the basis for Plaintiff's copyright claims, namely the issues of (i) what portions, if any, of Plaintiff's works registered with the U.S. Copyright Office Plaintiff alleges Defendants copied and (ii) whether and how Defendants had access to those materials. As Plaintiff's copyright claims are the only basis for federal jurisdiction, these are threshold and potentially dispositive issues. Given Plaintiff's failure so far to plead these essential elements of a copyright claim, and given Plaintiff's expressed intention to use this litigation process to harm Defendants regardless of the merits of Plaintiff's claims, bifurcation and expedited discovery on these threshold issues is particularly appropriate in this case.

### XVI. EXPEDITED TRIAL PROCEDURE

The Parties do not believe that this case will be appropriate for handling under the Expedited Trial Procedure of General Order No. 64.

### XVII. SCHEDULING

*Plaintiff's Proposal:*

| Event | True Footage's Proposed Date |
| --- | --- |
| Designation of experts | August 21, 2026 |
| Expert and fact discovery cutoff | August 6, 2027 |
| Dispositive motions due | September 2, 2027 |
| Oppositions to dispositive motions due | October 18, 2027 |
| Replies in support of dispositive motions due | November 9, 2027 |

FENWICK & WEST LLP

| Event | True Footage's Proposed Date |
|---|---|
| Hearing of dispositive motions | November 19, 2027 |
| Pre-trial conference | 90 days after resolution of dispositive motions. |
| Trial | TBD |

***Defendants' Proposal:***

For the reasons set out in sections VIII(B) and XV(B), above, and in Defendants' Motion for Partial Summary Judgment and to Dismiss or, in the Alternative, for More Definite Statement (Dkt. 22) ("Defendants' Motion"), Defendants request that the Court set an initial expedited, 60-day discovery period in which the Parties exchange written discovery (which may include a declaration by video recording from each side) limited to the issues of (i) what portions, if any, of Plaintiff's works registered with the U.S. Copyright Office Plaintiff alleges Defendants copied; (ii) whether and how Defendants had access to those materials; and (iii) the similarities and differences between Plaintiff's TrueTracts software and Defendants' Copilot software from the user's perspective. At the end of that initial expedited discovery period, if the Court determines that it does not already have enough information at that point to convert Defendants' motion to dismiss Plaintiff's copyright claims to a motion for summary judgment as requested in Defendants' Motion, then Defendants request that the Court allow each Party to submit a short, supplemental brief with supporting evidence adduced in that initial discovery period before the Court decides Defendants' Motion. Defendants expect that such a plan will dispose of this case in its entirety.

If the Court denies Defendants' request and allows full discovery to proceed, then Defendants oppose Plaintiff's proposal to mix fact and expert discovery and request that the Court order the Parties to submit a proposed discovery schedule in the normal course—i.e., with fact discovery proceeding first, followed by expert discovery. There is no good reason to mix fact and expert discovery in this case, let alone to require the Parties to designate experts in less than a month. Plaintiff's proposed schedule is in line with Plaintiff's expressed intent to inflict maximum financial damage on Defendants and is meant to overwhelm Defendants with costly and unnecessarily burdensome discovery before the Court has even determined whether Plaintiff is properly before the Court with a colorable copyright claim.

11

FENWICK & WEST LLP

## XVIII. TRIAL

*Plaintiff's Statement:*

True Footage demanded a jury trial and expects it to last approximately 8 days.

*Defendants' Statement:*

Given the issues to be tried in this case, the small size of Automax, and the limited overlap in the parties' respective software offerings, four days should be adequate for trial of this case if the Court does not dismiss it.

## XIX.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

On April 22, 2026, True Footage filed its disclosure statement which disclosed: (1) that True Footage Inc. is a Delaware corporation with its principal place of business in Texas; (2) no publicly held corporation owns more than 10% of True Footage Inc.'s stock; and (3) pursuant to Civil L.R. 3-15, there is no conflict or interest (other than the named parties) to report, and there is no individual or entity whose citizenship is attributed to the party submitting that certification. *See* Dkt. 2.

On June 13, 2026, Defendants filed their disclosure statement which disclosed on behalf of Defendants Automax AI Inc. and Automax AI (US) Inc.: (1) that Automax AI (US) Inc. is a wholly owned subsidiary of Automax AI Inc.; (2) that Automax AI Inc. has no parent company; (3) no publicly held corporation owns more than 10% of the stock in either company; and (4) pursuant to Civil L.R. 3-15, there is no conflict or interest (other than the named parties) to report. *See* Dkt. 16.

## XX.    PROFESSIONAL CONDUCT

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XXI.    SUCH OTHER MATTERS AS MAY FACILITATE JUST, SPEEDY AND INEXPENSIVE RESOLUTION

The Parties do not have additional issues to raise at this time.

Respectfully submitted,

Dated:  July 22, 2026          FENWICK & WEST LLP


By:  */s/ Todd R. Gregorian*
Todd R. Gregorian
Garner Kropp
Gregory Adams
Samantha Cox-Parra

*Attorneys for Plaintiff*
*True Footage Inc.*


Dated:  July 22, 2026          LEX LUMINA LLP


By:  */s/ Rhett O. Millsaps II*
Rhett O. Millsaps II
Christopher J. Sprigman

HARRIS ST. LAURENT LLP
Jonathan Harris
Ashley Robinson

*Attorneys for Defendants*
*AUTOMAX AI INC.; AUTOMAX AI (US)*
*INC.; and HUMZA AHMED*


## ATTORNEY ATTESTATION

By the electronic signature below, counsel for Plaintiff attests that he is the CM/ECF user whose identification and password are being used to file the instant document, and that pursuant to Civil Local Rule 5-1(i)(3), counsel provided their authority to file this document.


*/s/ Todd R. Gregorian*
Todd R. Gregorian