TODD R. GREGORIAN (CSB No. 236096)
*tgregorian@fenwick.com*
GARNER KROPP (CSB No. 312585)
*gkropp@fenwick.com*
GREGORY ADAMS (CSB No. 292391)
*gadams@fenwick.com*
SAMANTHA COX-PARRA (CSB No. 351914)
*scox-parra@fenwick.com*
FENWICK & WEST LLP
One Front Street, 33rd Floor
San Francisco, CA  94111
Telephone:    415.875.2300
Facsimile:    415.281.1350

*Attorneys for Plaintiff*

TRUE FOOTAGE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TRUE FOOTAGE INC.<br><br>Plaintiff,<br><br>v.<br><br>AUTOMAX AI INC.; AUTOMAX AI (US) INC.; and HUMZA AHMED,<br><br>Defendants. | Case No. 3:26-cv-03418-AGT<br><br>**PLAINTIFF TRUE FOOTAGE INC.'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DISMISS**<br><br>Date:    September 4, 2026<br>Time:    10:00 a.m.<br>Dept:    Courtroom A, 15th Floor<br>Judge:   Hon. Alex G. Tse |

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT                                          CASE NO. 3:26-cv-03418-AGT

**TABLE OF CONTENTS**

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................... 1

FACTUAL BACKGROUND .......................................................................................... 4

    I.    True Footage discovers and attempts to stop defendants' misconduct. .................. 4

    II.    The complaint states valid claims for copyright infringement .............................. 5

ARGUMENT ............................................................................................................. 9

    I.    The Court should deny the motion to dismiss because True Footage properly pleaded its claims of copyright infringement. ...................................................... 9

        A.    The complaint states plausible claims of infringement of the TrueTracts front-end code and user interfaces. ........................................ 10

        B.    Defendants' arguments about the sufficiency of the complaint are meritless. ............................................................................................ 15

            1.    There is no defect in the complaint's allegations showing defendants' access to the registered work. ................................... 15

            2.    There is no defect in the complaint's allegations showing defendants' copying protectable elements of TrueTracts. ............ 16

    II.    The Court should decline to convert defendants' motion to dismiss into a motion for summary judgment. ............................................................................... 19

        A.    The Court should decline to convert the motion because it cannot grant summary judgment before fact discovery. ....................................... 19

        B.    The Court should also deny the motion because defendants have raised improper grounds for conversion under Rule 12(d). ...................... 20

    III.    The Court should deny summary judgment even if it considers defendants' evidence ............................................................................................................ 21

        A.    The Court should deny the motion because it rests on expert opinion testimony from unqualified and biased lay witnesses. .............................. 21

        B.    The Court should deny the motion regardless because defendants have not carried their burden of production. ........................................... 23

    IV.    The Court should deny defendants' request for a more definite statement ........... 25

CONCLUSION .......................................................................................................... 25

FENWICK & WEST LLP

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT           i           CASE NO. 3:26-cv-03418-AGT

# TABLE OF AUTHORITIES

**CASES**

*ABS Ent., Inc. v. CBS Corp.*,
908 F.3d 405 (9th Cir. 2018)...................................................................................... 18

*Adickes v. S.H. Kress & Co.*,
398 U.S. 144 (1970) .................................................................................................... 21

*Adobe Sys. Inc. v. A & S Elecs., Inc.*,
153 F. Supp. 3d 1136 (N.D. Cal. 2015) .................................................................. 3, 25

*Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*,
672 F. Supp. 3d 1035 (S.D. Cal. 2023) ....................................................................... 14

*Ambrosetti v. Or. Catholic Press*,
151 F.4th 1211 (9th Cir. 2025)..................................................................................... 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................... 9

*Best Carpet Values, Inc. v. Google, LLC*,
90 F.4th 962 (9th Cir. 2024)..................................................................................... 5, 12

*Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co. Ltd.*,
149 F. Supp. 3d 1167 (N.D. Cal. 2015) ................................................................. 11, 13

*Broderbund Software, Inc. v. Unison World, Inc.*,
648 F. Supp. 1127 (N.D. Cal. 1986) ........................................................................... 12

*CDN Inc. v. Kapes*,
197 F.3d 1256 (9th Cir. 1999)....................................................................................... 9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...................................................................................................... 21

*Craigslist, Inc. v. Naturemarket, Inc.*,
694 F. Supp. 2d 1039 (N.D. Cal. 2010) ...................................................................... 11

*Data E. USA, Inc. v. Epyx, Inc.*,
862 F.2d 204 (9th Cir. 1988)........................................................................................ 14

*Digital Dream Labs, Inc. v. Living Tech. (Shenzhen) Co.*,
No. 2:22-cv-603, 2023 WL 121750 (W.D. Pa. Jan. 6, 2023) ..................................... 14

*Dream Games of Arizona, Inc. v. PC Onsite*,
561 F.3d 983 (9th Cir. 2009)................................................................................... 11, 12

*Ets-Hokin v. Skyy Spirits, Inc.*,
225 F.3d 1068 (9th Cir. 2000)...................................................................................... 18

FENWICK & WEST LLP

*Experian Info. Sol., Inc. v. Nationwide Mktg. Servs., Inc.*,
   893 F.3d 1176 (9th Cir. 2018)................................................................................. 18

*Farr v. United States*,
   990 F.2d 451 (9th Cir. 1993) .................................................................................. 15

*Fed. Sav. & Loan Ins. Corp. v. Musacchio*,
   695 F. Supp. 1053 (N.D. Cal. 1988) ....................................................................... 25

*Feist Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc.*,
   499 U.S. 340 (1991) ...................................................................................... 12, 17, 18

*First Nat'l Ins. Co. v. F.D.I.C.*,
   977 F. Supp. 1051 (S.D. Cal. 1997) ........................................................................ 20

*Fleener v. Trinity Broad. Network*,
   203 F. Supp. 2d 1142 (C.D. Cal. 2001).................................................................. 24

*Gately v. City of Port Hueneme*,
   No. 16-cv-4096, 2017 WL 8236269 (C.D. Cal. Oct. 2, 2017).............................. 22

*Gay v. Facebook, Inc.*,
   No. 16-cv-3013-NC, 2016 WL 10650825 (N.D. Cal. Oct. 19, 2016).................... 14

*GMES, LLC v. Line of Sight Communications, Inc.*,
   No. 2:16-cv-4085, 2016 WL 3566254 (W.D. Mo. June 27, 2016)........................ 13

*Gregorini v. Apple Inc.*,
   No. 20-55664, 2022 WL 522307 (9th Cir. Feb. 22, 2022) ................................... 18

*Hanagami v. Epic Games, Inc.*,
   85 F.4th 931 (9th Cir. 2023)................................................................................... 11

*Harper House, Inc. v. Thomas Nelson, Inc.*,
   889 F.2d 197 (9th Cir. 1989)................................................................................... 18

*Ilyon Dynamics Ltd. v. Kings Fortune Pte. Ltd.*,
   No. 24-cv-04581-NC, 2025 WL 604966 (N.D. Cal. Feb. 25, 2025) ..................... 11

*Jackson v. Southern Cal. Gas Co.*,
   881 F.2d 638 (9th Cir. 1989)................................................................................... 20

*Jacobellis v. State Farm Fire & Cas. Co.*,
   120 F.3d 171 (9th Cir. 1997)...................................................................................... 5

*Jacobson v. DHS*,
   882 F.3d 878 (9th Cir. 2018)................................................................................... 19

*Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*,
   886 F.2d 1173 (9th Cir. 1989)............................................................................. 5, 12

*Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*,
   391 F. Supp. 3d 959 (N.D. Cal. 2019) ...................................................................... 9

FENWICK & WEST LLP

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT                                      iii                      CASE NO. 3:26-cv-03418-AGT

*Khoja v. Orexigen Thera., Inc.*,
   899 F.3d 988 (9th Cir. 2018)......................................................................................... 15

*Laatz v. Zazzle, Inc.*,
   682 F. Supp. 3d 791 (N.D. Cal. 2023) ......................................................................... 14

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
   922 F.3d 946 (9th Cir. 2019)..................................................................................... 9, 10

*McIntosh v. N. Cal. Universal Enters. Co.*,
   670 F. Supp. 2d 1069 (E.D. Cal. 2009).......................................................................... 20

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
   629 F.3d 928 (9th Cir. 2010)............................................................................................ 11

*Micro Star v. Formgen Inc.*,
   154 F.3d 1107 (9th Cir. 1998)........................................................................................ 11

*Nintendo of Am., Inc. v. Brown*,
   94 F.3d 652, 1996 WL 468590 (9th Cir. 1996) .......................................................... 14

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
   210 F.3d 1099 (9th Cir. 2000)................................................................................... 21, 23

*North Star Int'l v. Ariz. Corp. Com'n*,
   720 F.2d 578 (9th Cir. 1983)..................................................................................... 20, 21

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. 11-cv-7098, 2014 WL 10894452 (C.D. Cal. Oct. 31, 2014)............................................ 22

*R.C. v. Walgreen Co.*,
   733 F. Supp. 3d 876 (C.D. Cal. 2024)............................................................................ 14

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018)................................................................................... 11, 19

*Royal Canin U. S. A., Inc. v. Wullschleger*,
   604 U.S. 22 (2025)......................................................................................................... 19

*SA Music LLC v. Apple, Inc.*,
   592 F. Supp. 3d 869 (N.D. Cal. 2022) ........................................................................... 22

*Satava v. Lowry*,
   323 F.3d 805 (9th Cir. 2003)........................................................................................... 18

*SEC v. Cornerstone Acquisition & Mgmt. Co.*,
   No. 22-cv-765, 2025 WL 276318 (S.D. Cal. Jan. 23, 2025)............................................... 22

*Skidmore as Trustee for Randy Craig Wolfe Trust v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020)................................................................................... 12, 16

*Soo Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017)........................................................................................... 14

FENWICK & WEST LLP

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT                                iv                    CASE NO. 3:26-cv-03418-AGT

*Spry Fox LLC v. LOLApps Inc.*,
No. 2:12-cv-147, 2012 WL 5290158 (W.D. Wash. Sept. 18, 2012) ............................... 11, 13

*Starz Entertainment, LLC v. MGM Domestic Television Dist., LLC*,
39 F.4th 1236 (9th Cir. 2022) ........................................................................................ 9

*Swedberg v. Marotzke*,
339 F.3d 1139 (9th Cir. 2003) ...................................................................................... 20

*Swierkiewicz v. Sorema*,
534 U.S. 506 (2002) ...................................................................................................... 20

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
307 F.3d 775 (9th Cir. 2002) ........................................................................................ 16

*Tangle, Inc. v. Aritzia, Inc.*,
125 F.4th 991 (9th Cir. 2025) ....................................................................................... 12

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
52 F.4th 1054 (9th Cir. 2022) ....................................................................................... 11

*United States v. Diebold, Inc.*,
369 U.S. 654 (1962) ...................................................................................................... 23

*United States v. Perry*,
431 F.2d 1020 (9th Cir. 1970) ...................................................................................... 23

*VISA Int'l Svc. Ass'n v. Bankcard Holders of Am.*,
784 F.2d 1472 (9th Cir. 1986) ...................................................................................... 19

*Williams v. Gaye*,
895 F.3d 1106 (9th Cir. 2018) ...................................................................................... 13

*Worth v. Selchow & Righter Co.*,
827 F.2d 569 (9th Cir. 1987) ........................................................................................ 18

**STATUTES**

17 U.S.C. § 106 .................................................................................................................. 13

17 U.S.C. § 408(c)(1) .......................................................................................................... 16

17 U.S.C. §§ 412 ................................................................................................................. 9

17 U.S.C. § 501(a) .............................................................................................................. 9

**RULES**

Fed. R. Civ. P. 12(d) .................................................................................................... 3, 19, 20

Fed. R. Civ. P. 12(e) ........................................................................................................ 3, 25

Fed. R. Civ. P. 56(a) ............................................................................................................ 21

FENWICK & WEST LLP

Fed. R. Civ. P. 56(d) ............................................................................................................. 19

Fed. R. Evid. 408 .................................................................................................................... 4

Fed. R. Evid. 602 .................................................................................................................. 22

Fed. R. Evid. 701 .................................................................................................................. 22

Fed. R. Evid. 702 .................................................................................................................. 21

**OTHER AUTHORITIES**

37 C.F.R. § 202.3(b)(4) ..................................................................................................... 6, 10

37 C.F.R. § 202.20(c)(2) ....................................................................................................... 16

37 C.F.R. § 202.21 ................................................................................................................ 16

*Compendium of U.S. Copyright Office Practices* § 1509.1(F)(6) (3d ed. 2021) ......................... 11

*Front-end*, Merriam-Webster, https://www.merriam-webster.com/dictionary/front-end (last visited July 20, 2026) .................................................................................................. 15

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §§ 13D.31, 13D.35 n.19 (2026) ................................................................................................................................. 17

William Hicks, *Home appraisal company sues Y Combinator startup, alleging founder stole its tech*, San Francisco Business Times (Apr. 24, 2026) ...................................................... 1

FENWICK & WEST LLP

**INTRODUCTION AND SUMMARY OF ARGUMENT**

True Footage brought this case after it discovered that one of its registered users was not a professional real estate appraiser, but rather a college student who misrepresented his identity to access the TrueTracts product and copy it into his own software. By taking years of True Footage development and design work, defendant Humza Ahmed turned "Copilot," his preexisting data entry software, into an attractive Silicon Valley investment in a matter of weeks, ultimately securing several million dollars in seed funding through the Y Combinator program.

True Footage gave defendants multiple opportunities to resolve this dispute simply by excising its materials from "Copilot." Defendants would pay nothing, and they would be free to develop their own features to compete with TrueTracts, provided only that they did the work themselves without benefiting from their unlawful conduct. Defendants would face no other consequence for multiple acts of fraud, breach of contract, tortious interference, and copyright infringement. But that minimal accountability was too much. Defendants continued to market "Copilot" as-is, and when True Footage filed, sought to use the lawsuit as a PR opportunity, making the false claim—echoed here in declarations from one of the three separate law firms they have hired—that True Footage is trying to "sue their way out of having to actually innovate or compete."[1]

Defendants now respond to the complaint with a novel motion asserting their own bespoke principles of copyright law and interpretations of the Federal Rules that no court has ever accepted.

**The motion to dismiss is meritless and should be denied**. The *only* question for the Court at the pleading stage is whether the allegations, all taken as true and interpreted in True Footage's favor and against defendants, make *plausible* the conclusion that defendants infringed an asserted copyright. They do. True Footage alleges that it owns a registered copyright in its front-end code for TrueTracts. It then alleges facts showing defendants' infringement of that work: it explains how defendant Ahmed gained access to it by providing false information to create a TrueTracts

---

[1] Gregorian Decl. ¶ 15 & Ex. C; William Hicks, *Home appraisal company sues Y Combinator startup, alleging founder stole its tech*, San Francisco Business Times, Apr. 24, 2026, at https://www.bizjournals.com/sanfrancisco/news/2026/04/24/home-appraisal-startup-y-combinator.html.

FENWICK & WEST LLP

account; it details the activities that he and others performed in TrueTracts that indicate copying rather than legitimate use; and it compares TrueTracts side-by-side with publicly available information about Copilot, with even that limited information showing screen after screen where Copilot is nothing but a rote copy of TrueTracts.

Defendants' arguments to the contrary are largely refuted within the four corners of their own brief. As to the literal computer code, they contend that they cannot discern which portions True Footage alleges they had access to: was it the code that rendered on their client-side devices when they were using TrueTracts, or was it the code that remained server-side and was never delivered to them? That question answers itself, even before reviewing *the testimony from defendants' own witness that admits front-end code is accessible*. Again, the question is only whether the complaint makes it *plausible* that defendants accessed and copied portions of TrueTracts that they concede were delivered to their computers. True Footage is not required to catalog its code line-by-line in the complaint, nor does it have to show omniscience about the copying that occurred *on defendants' systems* and that without discovery only the defendants know.

Defendants' other arguments are equally meritless. As to the user interfaces that they are alleged to have copied, defendants assert without authority that the front-end code registration alleged in the complaint does not cover the visual design elements and original text descriptions of the user interface. But according to both the complaint's allegations and the *Copyright Office itself*, in guidance *that defendants cite in their brief*, the truth is the opposite. The asserted registration covers *both* the code *and* the user interfaces embodied in the code that display when it runs, and registering the interfaces separately *is not permitted*. With that argument resolved, defendants are left with the naked assertion that there is no creative expression anywhere in TrueTracts' interfaces that meets the minimal standard for copyright protection. But many of the interfaces are reproduced wholesale in the complaint, showing that they are not just bare data outputs, but rather, as the complaint also directly alleges, the result of scores of creative decisions about their constituent visual elements and text descriptions during a years' long development process.

FENWICK & WEST LLP

**The motions seeking to forestall discovery into defendants' misconduct are similarly meritless and should also be denied.**  The remainder of defendants' motions are premature, substantively meritless, and seek to rewrite the rules of civil procedure.

- To begin, defendants ask for "summary adjudication" under Rule 56 but based on the same purported pleading failures as the motion to dismiss.  In other words, they invoke Rule 56 as mere cover to submit improper extrinsic evidence on a 12(b)(6) motion and bias the Court's reading of the complaint.

- Defendants then ask the Court to "convert" the motion to dismiss to one for summary adjudication under Rule 12(d).  Again, they invent their own rules—arguing for conversion based on made-up criteria like whether the plaintiff "admitted" an "improper motive" or "attach[es] to its response the full, unredacted contents of the works it has registered."

- Finally, defendants move for a more definite statement under Rule 12(e).  Such motions are "disfavored" and "rarely granted" even when *properly* filed, *Adobe Sys. Inc. v. A & S Elecs., Inc.*, 153 F. Supp. 3d 1136, 1147 (N.D. Cal. 2015), but here, defendants invoke the rule *improperly* to demand that True Footage allege every single act of defendants' copying.

These defective motions all share a theme—desperation to forestall discovery into defendants' unlawful conduct.  The Court may deny them based either on their procedural defects, or because defendants' evidence—principally Ahmed himself attempting to testify as an expert—is inadmissible and fails to carry defendants' burden to show the absence of material fact disputes.[2]

True Footage has properly alleged extensive copying amounting to scores of infringements.  Moreover, the full extent of defendants' copying and abuse of Ahmed's True Footage account is still unknown, and True Footage has raised serious and to date unanswered concerns about defendants' potential spoliation of evidence.  Having properly alleged its claims in the complaint, True Footage should be allowed discovery on these subjects just as any other plaintiff.

---

[2] Indeed, even before this opposition was filed, defendants filed a case management statement arguing that *they alone* should be allowed to conduct fact discovery, and that afterwards the Court should let them have a do-over of this motion before allowing plaintiff to proceed. Dkt. 40 at 11.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT                           3                    CASE NO. 3:26-cv-03418-AGT

FENWICK & WEST LLP

**FACTUAL BACKGROUND**

**I.      True Footage discovers and attempts to stop defendants' misconduct.**

True Footage is the market leader in data-driven real estate appraisal software. Compl. ¶ 2. One of True Footage's products is TrueTracts, an innovative tool that collects the most important data for accurate appraisals, allows users to analyze it using statistical models not used previously in the industry, and presents the results in an easily digestible visual format for appraisers. *Id.*

Defendant Humza Ahmed is a 21-year-old former student of the University of Waterloo in Ontario, Canada. While in school, he began work on "Automax AI," an appraisal software startup that in its early days appears to have focused on training commercially available Large Language Model (LLM) software to look up data and populate the forms necessary to complete a residential real estate appraisal. Compl. ¶ 3. But after moving to San Francisco and getting accepted to the Y Combinator startup accelerator, Ahmed faced intense pressure to show that Automax had sufficient promise to draw investment from established venture capital firms. *Id.* ¶¶ 4-5, 33.

Ahmed provided false information to True Footage to gain access to TrueTracts, misrepresenting himself as a licensed appraiser and member of the Multiple Listing Service (MLS). Compl. ¶ 5. He then shared his account credentials with other Automax employees, including a software developer in Norway, who quickly began copying every aspect of TrueTracts they could access into an Automax product dubbed "Copilot." *Id.* When they hit barriers to access certain features, Ahmed and Automax induced several legitimate True Footage customers to misuse their True Footage accounts to help copy those features, too. *Id.* What resulted was a rote copy of TrueTracts that Ahmed mislabeled "Copilot" and misrepresented as his own work to secure several million dollars in investment at the end of the program. *Id.*

True Footage found Ahmed's fraudulent account, contacted defendants, and tried to resolve this dispute without litigation. Compl. ¶ 73.[3] True Footage demanded that defendants stop their

---

[3] In a sideshow not relevant to the motion, defendants submit declarations from their former counsel who report (inaccurately) on the parties' confidential settlement discussions. These are irrelevant and violate Fed. R. Evid. 408, but to the extent the Court considers them, True Footage submits testimony correcting the record. *See* Gregorian Decl. ¶¶ 2-16.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT                                    4                    CASE NO. 3:26-cv-03418-AGT

FENWICK & WEST LLP

copying and turn over all related material. *Id.* But it also made clear that defendants would then be free to compete in the real estate appraisal market, so long as they did so fairly, using appropriate protocols to avoid misappropriating True Footage's work. *See id.*; Gregorian Decl. ¶ 5 & Ex. A. Rather than comply, Ahmed responded that he assumed True Footage would hold all action in abeyance while he assembled his defense. Compl. ¶ 74; Gregorian Decl. ¶ 6 & Ex. B. But the next day Ahmed presented Copilot to a crowd of appraisers at another sales webinar. Compl. ¶ 74. And defendants' later responses indicate that they may have tampered with or destroyed evidence. *Id.* ¶ 75; Gregorian Decl. ¶¶ 17-28 & Exs. D-G. True Footage filed suit only after it became clear that defendants did not want to engage meaningfully in settlement discussions. Compl. ¶ 74.

**II.    The complaint states valid claims for copyright infringement.**

True Footage filed the complaint on April 22, 2026, asserting claims including fraud, breach of contract, tortious interference, and copyright infringement. Compl. ¶¶ 76-142. True Footage alleges that it holds three copyrights in TrueTracts: the computer code that presents the front-end user interface of TrueTracts; the computer code that operates the back-end data management and logic of TrueTracts; and the white paper describing the methods used in TrueTracts. *Id*. ¶ 29.

***The work.*** The complaint currently asserts infringement of the front-end code. *See, e.g.*, *id.* ¶¶ 114-122, 128, 136.[4] As the defendants concede, the term "front-end" is a common term referring to material that users of a piece of software can access. Huzaifa Decl. ¶ 8. Thus, the complaint alleges that when users log into their TrueTracts accounts, their web browsers receive code and visual assets from the TrueTracts front-end code needed to display the application. Compl. ¶¶ 51, 114. In copyright parlance, the written lines of computer code are its literal elements, and the visual assets (like a user interface that renders on the display) in that code are its nonliteral elements. *See Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 971 (9th Cir. 2024); *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175-76 (9th Cir. 1989), *overruled on*

---

[4] For this reason, the Court must reject defendants' request that it "dismiss" the other two registrations from the case. *See* Br. at 8-10. A court cannot dismiss claims or theories that the plaintiff has not pleaded because on a motion to dismiss, a court can only review the contents of the complaint. *See Jacobellis v. State Farm Fire & Cas. Co.*, 120 F.3d 171, 172 (9th Cir. 1997).

FENWICK & WEST LLP

*other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006).

***The registration.*** The copyright registration for the TrueTracts front-end code covers both the literal and nonliteral elements of that work. That fact is alleged expressly in the complaint:

> 114. True Footage created the computer code that presents the front-end user interface of TrueTracts (the "TrueTracts Code"), ***including the expressive elements in the screen displays generated by the execution of that code***. The TrueTracts Code is an original work fixed in a tangible medium of expression.
>
> 115. True Footage owns the valid and enforceable Copyright Registration TX 9-585-370 of the TrueTracts Code, registered with the U.S. Copyright Office before instituting this action. True Footage therefore holds the exclusive rights to reproduce, display publicly, perform publicly, and create derivative works of the TrueTracts Code.

Compl. ¶¶ 114-15 (emphasis added). It is also required by the Copyright Office's "single registration rule." 37 C.F.R. § 202.3(b)(4). Under that rule, an author applying for registration of software with screen displays must submit only one application, covering the software and all the visual elements embodied in it. *See* U.S. Copyright Office, Circular 61, "Copyright Registration of Computer Programs" 4-5. The Copyright Office explains, "A computer program and the screen displays it generates are generally considered the same work, because most screen displays are created by the program code. If the same party owns the copyright in the program code and the screen displays, the program and any related screen displays can be registered with the same application." *See id.*

***Defendants' access to the work.*** The complaint alleges defendants' access to the copyrighted work. It alleges that Ahmed created a True Footage account on October 29, 2025 in his own name and signed up the next day for TrueTracts and another True Footage product called "Spark." Compl. ¶ 35. Ahmed procured these accounts by misrepresenting facts about himself and his compliance with the governing terms of service. *Id.* ¶¶ 36-39. This allowed him to access TrueTracts. *Id.* ¶¶ 40, 123. The complaint then sets forth detailed facts about defendants' access. Ahmed shared his True Footage account with others at Automax including Sindri Mørch Tomasson, and together they used it to start 18 different property estimate "sessions" in TrueTracts, including for property addresses that True Footage had used in its demonstrations and addresses that Ahmed

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT                                    6                    CASE NO. 3:26-cv-03418-AGT

later used to demonstrate his copies in Copilot. *Id.* ¶¶ 41-43, 72. They also induced third parties to help them access additional features. *Id.* ¶ 45-49. Cooperating users created sessions for subject properties and uploaded MLS data for nearby properties, unlocking the adjustment and reconciliation pages in TrueTracts. *Id.* ¶ 47. They then provided their session link, which allowed defendants to view and edit the session, including its adjustment graphs, statistical commentary, and reconciliation dashboards—all of which previously had been locked for defendants. *Id.* ¶ 48. Again, as the complaint *directly alleges*, these activities caused defendants' web browsers to receive the associated code and visual assets from the TrueTracts front-end code. *Id.* ¶¶ 51, 114.

***Defendants' copying of protected elements of the work.*** The complaint then alleges defendants' copying of protected elements of TrueTracts. Compl. ¶¶ 23-29, 53-64, 114-15. It directly alleges infringement of both the literal TrueTracts code and the nonliteral elements like its visual assets. Compl. ¶¶ 50-51, 116-122. These infringements include, *inter alia*, defendants' use of artificial intelligence tools (via "vibe-coding") to copy the TrueTracts front-end software and reproduce its visual features and computer code, their creation of Copilot as a derivative work, their copying that occurs as part of accessing and running Copilot in the course of their business, and their public display of infringements during their sales and marketing presentations. *See id.*

The complaint sets forth detailed facts that show expressive elements that are copyright protectable and make the infringement allegations plausible. It explains how defendants copied the TrueTracts interface, duplicating specific features, visual design choices, and expressive text descriptions. Compl. ¶¶ 53-66. And it provides representative examples of defendants' copying, including images showing it side-by-side with True Footage's original work. *See id.* The TrueTracts heatmap page is one such example, shown on the next page. *Id.* ¶¶ 25, 56. It shows a geographic map with roads and water rendered in dark gray against light gray land, creating a clean backdrop for the property data. Each sold property appears as a black dot, while color-coded rectangles indicate how closely each neighborhood's properties compare to the subject property: dark green for highly similar locations (within 3% of expected value), light green for moderately similar areas (3% to 6% difference), blue for inferior locations (more than 6% lower value), and

FENWICK & WEST LLP

red for superior locations (more than 6% higher value). *Id.* ¶ 56. A bright yellow border highlights the subject neighborhood. These choices—the specific color palette, the arrangement of information, and the visual hierarchy—are all True Footage's creative expression:



Copilot copied the design of the TrueTracts heatmap, using the same organization, categories, and colors in the heatmap. *Id.* ¶¶ 56-57. The "legend" for the Copilot heatmap also copies TrueTracts, using the exact four colors to represent the exact same chosen divisions of data, and placing them in the same vertical orientation. *Id.* ¶ 56. TrueTracts' heatmap also has an input filters page that shows the distribution of nearby properties' characteristics like lot size, construction year, and number of bathrooms in gray and dark blue bar charts organized in a particular order, and with a red "X" showing the subject property's value of each characteristic. *Id.* ¶ 54. Copilot copied that display for its own input filters page. *Id.* ¶ 55. Copilot also copied the adjustment filters page, not only selecting the same data visualizations, but placing them in the same order and orientation and using the same colors. *Id.* ¶¶ 58-59. Copilot also copied TrueTracts' description of its reconciliation methodology, including roughly one full page of copyrighted text. *Id.* ¶¶ 61-63.

Notably, the complaint is based on Ahmed's public infringing displays during promotional

FENWICK & WEST LLP

webinars for Copilot, which are necessarily limited to what Ahmed showed the audience. Cox-Parra Decl. ¶ 7. "Copilot" itself is not in general release to the public, so True Footage has not had the opportunity to examine its full features and user interfaces to identify all the infringements at issue in this action. *Id.*; *see also* Ahmed Decl. ¶ 4. True Footage also has had no access to Copilot source code or the AI tools that Ahmed and his co-conspirators used to copy TrueTracts. Cox-Parra Decl. ¶ 7. Fact discovery is thus necessary to determine the full extent of defendants' copying and to identify each act of infringement. *Id.* ¶ 8. True Footage has served written discovery and has otherwise been diligent in prosecuting the case. *Id.* ¶¶ 9, 14 & Ex. A.

## ARGUMENT

**I.     The Court should deny the motion to dismiss because True Footage properly pleaded its claims of copyright infringement.**

To state a claim for copyright infringement, the plaintiff must allege ownership of a valid copyright, and that the defendant copied protectable elements of the copyrighted work. *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 951 (9th Cir. 2019); *see also CDN Inc. v. Kapes*, 197 F.3d 1256, 1258 (9th Cir. 1999); 17 U.S.C. §§ 412, 501(a).

To survive a motion to dismiss, the complaint need only state a claim that is plausible on its face, accepting the facts alleged as true and drawing all reasonable inferences for the plaintiff. *Starz Entm't, LLC v. MGM Domestic Television Dist., LLC*, 39 F.4th 1236, 1239 (9th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Kevin Barry Fine Art Assocs. v. Ken Gangbar Studio, Inc.*, 391 F. Supp. 3d 959, 964 (N.D. Cal. 2019). The allegations do not need to be detailed and need show only a right to relief that rises above mere speculation. *Malibu Textiles*, 922 F.3d at 951. The plaintiff does not have to make an evidentiary showing in the complaint, as defendants ask here. The district court *cannot*, for example, require the plaintiff to supply a complete deposit of the work or other registration materials from the Copyright Office as a threshold requirement to proceed. *Id.* at 952. Here, as discussed below, True Footage more than satisfied the plausibility standard to state a claim, and defendants' contrary arguments are at best willfully blind to the complaint's allegations.

FENWICK & WEST LLP

**A.    The complaint states plausible claims of infringement of the TrueTracts front-end code and user interfaces.**

True Footage followed a decades' old practice for alleging copyright infringement of software. It registered its front-end code for TrueTracts as a single work consisting of both the literal computer code and the nonliteral visual elements that code generates. Compl. ¶¶ 29, 114-15. It alleged defendants' access to that work through their fraudulently obtained True Footage account and the months they spent running TrueTracts on their systems and probing features to copy. *Id.* ¶¶ 41-49, 51, 72, 114, 123. True Footage then alleged that defendants infringed the protectable elements of the work, including *both* the TrueTracts computer code *and* its visual elements, by "vibe-coding" a duplicate of the software using AI tools. *Id.* ¶¶ 50-51, 116-22. Over multiple pages of the complaint, True Footage both directly alleged and depicted with images how "Copilot" is in many respects just a rote copy of TrueTracts. *See* Compl. ¶¶ 54-66.

This is standard pleading practice—there is nothing unusual or unclear about any of it, let alone warranting defendants' overblown rhetoric accusing True Footage of "sleight of hand" (Br. at 13) and "coyness…by design" (*id.* at 11), describing the complaint as a "word salad of irrelevancies and abstractions" (*id.*) and sarcastically mocking the "sophisticat[ion]" of opposing counsel (*id.*). True Footage properly alleged each required element of a copyright claim:

**Ownership of a valid copyright.** To allege ownership, plaintiff need only allege that it holds a valid copyright registration for the work. *Malibu Textiles*, 922 F.3d at 951. The plaintiff may plead the registration by stating the registration number. *Id.* at 951. A viable claim of copyright ownership requires nothing more. Here, True Footage *expressly alleges* that it registered the literal code of the TrueTracts front-end software and the nonliteral user interfaces of that software as a single work in the same registration. *See* Compl. ¶ 114. As discussed above, the Copyright Office not only allows as much, but requires it where the software is a single work. 37 C.F.R. § 202.3(b)(4); *see also* U.S. Copyright Office, Circular 61, "Copyright Registration of Computer Programs" 4-5 ("the program and any related screen displays can be registered with the same application."). Moreover, the author does not need to include the screen displays in the

FENWICK & WEST LLP

deposit copy. *Compendium of U.S. Copyright Office Practices* §1509.1(F)(6) (3d ed. 2021).

The Ninth Circuit applies the same single registration rule. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1067-68, 1068 n.3 (9th Cir. 2022). For example, in *Dream Games of Arizona, Inc. v. PC Onsite, L.L.C.*, the court found that a registration of video game software included registration of the game's visual elements. No. 03-cv-0433, 2003 WL 27376891 at *4-5 (D. Ariz. Apr. 18, 2003). There, an author developed a bingo video game and paid a developer to build graphic enhancements for the game. *Id.* at *1. Contract negotiations broke down over who owned the enhanced game, and later, the contractor developed a competing bingo video game that recreated the screens of the original work but not the underlying code. *Id.* at *3. In granting a preliminary injunction for the developer, the court found that the copyright registration of the game's software covered its screen displays, too. *Id.* at *4-5. Under this rule, True Footage has identified ownership of a copyrighted work that includes both asserted aspects of TrueTracts.[5]

**Access to the work.** A plaintiff must allege that the defendant had access to the work. *Hanagami v. Epic Games, Inc.*, 85 F.4th 931, 941 (9th Cir. 2023). A plaintiff satisfies this requirement by alleging facts that raise a reasonable possibility that defendants viewed or accessed the work. *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117-18 (9th Cir. 2018). Here, True Footage did so. It alleged an entire trail of its electronic records that show defendants' access to TrueTracts front-end software, including the creation of a fraudulent True Footage account and their use of TrueTracts to make at least 18 different property estimates including multiple sessions for the same property. *See* Compl. ¶¶ 36-43, 123. Each time defendants logged into TrueTracts, they executed the front-end code in their web browsers and interacted with the interface that the code presented. *Id.* ¶ 51. This is sufficient to allege access. *See Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1055 (N.D. Cal. 2010) (alleging access to website to copy protected elements on it,

---

[5] The single registration rule is so basic to copyright practice that it is usually unworthy of comment—courts routinely hear claims of copyright infringement of nonliteral visual elements based on a registration for the software. *See Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1110–12 (9th Cir. 1998); *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 952-54 (9th Cir. 2010); *Dream Games of Ariz., Inc.*, 561 F.3d at 989; *Ilyon Dynamics Ltd. v. Kings Fortune Pte. Ltd.*, No. 24-cv-04581-NC, 2025 WL 604966 at *3-5 (N.D. Cal. Feb. 25, 2025); *Spry Fox LLC*, 2012 WL 5290158, at *5.

FENWICK & WEST LLP

including creating cached copies to develop and test software).

**Creative expression protected by copyright.** The code and interface in the TrueTracts front-end software are protectable expression and True Footage has sufficiently alleged those facts. Courts impose a "famously low bar" to find original expression in a copyrighted work. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1069 (9th Cir. 2020). A work clears that bar with only some degree of creativity, and "even a slight amount will suffice." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). Thus, while data itself is not protectable, the presentation of that data is protectable so long as the author reflects some minimal creativity in that presentation. *Id*. at 347. The Supreme Court has instructed that factfinders should find creativity "quite easily." *Id*. at 345.

The TrueTracts code and interface contain more than enough creative expression to clear the low bar for protectability. The computer code is itself presumptively creative. *Johnson Controls,* 886 F.2d at 1175 (literal code is "consistently held protected by a copyright on the program."). The creative visual elements of user-facing software, including the selection and arrangement of the user interface, are protectable non-literal elements of the work. *Id.*; *Best Carpet Values,* 90 F.4th at 971; *see also Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 997 (9th Cir. 2025); *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009); *Broderbund Software, Inc. v. Unison World, Inc.*, 648 F. Supp. 1127, 1131-34 (N.D. Cal. 1986). The complaint alleges numerous examples. The TrueTracts heatmap page is pasted into the complaint. Compl. ¶ 25. An author has wide leeway in designing a heatmap, and True Footage made many creative choices in designing its own. It made the roads and sea dark gray and the land light gray; it put black dots on sold properties and represented the similarity of their neighborhoods with rectangles colored with gradients of blue, green, and red that correspond to arbitrary groupings of data that True Footage also chose; it put counts of comparable properties in a legend in the bottom right corner; it put a yellow border around the subject neighborhood; it put comparable properties on a gray bar graph to the right to illustrate the distribution of years in which each property was built; etc. *See id.* Each of these reflects creative expression. *See Feist*, 499 U.S. at 345. The heatmap is but one example;

FENWICK & WEST LLP

True Footage depicts several others, and alleges that still more exist throughout TrueTracts. *See* Compl. ¶¶ 54, 56, 59, 61, 64-66, 114. True Footage thus alleges protectable expression throughout the visual content in TrueTracts' front-end.

**Copying of protectable elements by defendants**. A plaintiff must allege that the defendant copied protected elements of its work. *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018). An unlawful copy can be a reproduction, a derivative work, or a public display, among other things. *See* 17 U.S.C. § 106. Here, True Footage alleged each of these infringements with respect to both the literal and nonliteral aspects of TrueTracts. Compl. ¶¶ 50-66.

As to the visual elements of TrueTracts, True Footage alleges the same litany of examples in the complaint just discussed, that show aspects of Copilot that are strikingly similar or near identical copies of TrueTracts, including their creative elements, and demonstrates the similarity with screenshots. *See id*. That is sufficient factual support to state a claim. *See Spry Fox LLC v. LOLApps Inc.*, No. 2:12-cv-147, 2012 WL 5290158, at *1, *7 (W.D. Wash. Sept. 18, 2012) (complaint plausibly alleged substantial similarity through side-by-side screenshots and descriptions of the defendant's game that showed similarities to protected expressive elements).

Moreover, True Footage does not need to specify every instance of defendants' infringements; alleging representative acts of infringement as True Footage has done here is sufficient. *See Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1175 (N.D. Cal. 2015). In *GMES, LLC v. Line of Sight Communications, Inc.*, for example, the plaintiff alleged that the defendants copied substantial portions of its website into defendants' own website. No. 2:16-cv-4085, 2016 WL 3566254, at *1-2 (W.D. Mo. June 27, 2016). The plaintiff alleged similarities including similar page layout, color scheme, banners, logos, search-bar language, drop-down menus, fonts, photo galleries, and other design features. *Id.* Rejecting the defendants' argument that the complaint failed to identify precisely which of these website elements were protectable and which were not, the court found that the plaintiff's identification of "numerous similarities" between the websites was sufficient to allege copyright infringement. *Id.* at *2. The court also ruled that the similarities identified in the complaint need not be exhaustive, because

FENWICK & WEST LLP

requiring the plaintiff "to parse through every word and link on its website" would impose more than Rule 8 requires at the pleading stage. *Id.*

As to TrueTracts' literal code, True Footage expressly alleges that defendants copied the computer code in the TrueTracts front-end software. Compl. ¶¶ 50-51. Placing direct evidence of copying computer code in the complaint is not required; a plaintiff may show copying with circumstantial evidence. *Nintendo of Am., Inc. v. Brown*, 94 F.3d 652, 1996 WL 468590, at *1 (9th Cir. 1996); *Data E. USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 206 (9th Cir. 1988). Here, because of the close relationship between the computer code and the visual representations that the code renders on the screen, defendants' copying of visual elements makes plausible that the code infringes, too. *See Laatz v. Zazzle, Inc.*, 682 F. Supp. 3d 791, 806-07 (N.D. Cal. 2023) (complaint sufficiently alleged copying of software based on allegations that defendant purchased license and downloaded files into its own design tool); *Gay v. Facebook, Inc.*, No. 16-cv-3013-NC, 2016 WL 10650825, at *2 (N.D. Cal. Oct. 19, 2016) (plaintiff's plausible allegations of substantial similarity in the features of the infringing work entitled him to discover defendant's source code); *Digital Dream Labs, Inc. v. Living Tech. (Shenzhen) Co.*, No. 2:22-cv-603, 2023 WL 121750, at *3-4 (W.D. Pa. Jan. 6, 2023) (finding substantial similarity with no requirement to "undertake and allege a code-to-code comparison" at the pleading stage).

That makes sense. True Footage does not have a Copilot account and its examples of copyright infringement come from the display of Copilot pages in a marketing webinar. *See* Compl. ¶ 72. True Footage does not need to parse out each piece of Copilot that came from TrueTracts at the pleading stage, especially when defendants alone possess the information about how they used TrueTracts code on their systems. Pleading an adequate factual basis to support an inference of copying is enough. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("[T]he *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant"); *see also Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, 672 F. Supp. 3d 1035, 1045–46 (S.D. Cal. 2023); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 891 n.3 (C.D. Cal. 2024).

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT                                  14                        CASE NO. 3:26-cv-03418-AGT

**B.    Defendants' arguments about the sufficiency of the complaint are meritless.**

Despite thirty pages of allegations describing how defendants used a fraudulent True Footage account to access and copy TrueTracts front-end software, Defendants argue that the complaint fails to state a claim.  They say:

> Plaintiff does not allege that Automax copied *any part* of the three registered works identified in the Complaint.  Nor does Plaintiff allege that Automax even had *access* to those registered works, which likewise is a threshold element of Plaintiffs' Copyright Claims here.

Br. at 1 (emphasis in original).  Given the foregoing discussion, it is difficult to understand that claim as anything other than a purposeful misreading of the complaint.  Defendants have two essential contentions.  As to TrueTracts' literal front-end code, they concede the allegations of protectability but contest that the complaint plausibly alleges their access to the work.  Br. at 10-13.  As to TrueTracts' nonliteral visual expression, defendants concede the allegations of copying, but contest that these aspects of TrueTracts are covered by the registration or that they contain anything in them protectable by copyright.  Br. at 13-19.  Both arguments fail.[6]

**1.    There is no defect in the complaint's allegations showing defendants' access to the registered work.**

Defendants contend that the complaint does not sufficiently allege access to the front-end code because the phrase "front-end" is purportedly ambiguous and can be used to refer both to code that users can access on their device, and code that they cannot access because it runs on a remote server.  Br. at 10.  This argument refutes itself.  The ordinary meaning of the phrase "front-end" is "visible to the user of a device or service."  *Front-end*, Merriam-Webster, https://www.merriam-webster.com/dictionary/front-end (last visited July 20, 2026).  In other words, by alleging "the front-end code" and "the computer code that presents the front-end user interface of TrueTracts" that defendants copied (Compl. ¶¶ 50, 114), True Footage expressly alleged code that is visible to

---

[6] Defendants also submitted five declarations and use them to argue about the sufficiency of the pleadings.  Br. at 9-18.  True Footage addresses this evidence in the summary adjudication sections that follow, because they are irrelevant and improper to consider on the motion to dismiss.  *See Khoja v. Orexigen Thera., Inc.*, 899 F.3d 988, 998-99 (9th Cir. 2018) (the district court must reject submissions that "present [a defendant's] own version of the facts at the pleading stage"); *see also Farr v. United States*, 990 F.2d 451, 454 (9th Cir. 1993).

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT                                    15                    CASE NO. 3:26-cv-03418-AGT

FENWICK & WEST LLP

FENWICK & WEST LLP

users. Moreover, TrueTracts' front-end user experience does not appear on the client-side device from thin air. True Footage necessarily must serve material to the user from the registered TrueTracts front-end code. *Id.* at ¶¶ 50, 114. Finally, even accepting defendants' assertion that "front-end code" can refer to either client-side or server-side code, that does not show a deficiency in the complaint. Huzaifa Decl. ¶ 8. That assertion *admits* that some front-end code can be accessed at the client's device. At the pleading stage, the Court must draw all reasonable inferences in True Footage's favor, *see Iqbal*, 556 U.S. at 678, and it is more than reasonable to infer that the complaint is discussing the client-side code.

Thus, defendants resort to asking the Court to take judicial notice of the Copyright Office's deposit copy of the TrueTracts front-end software, and offer *attorney argument* to the effect that users cannot access that code. Br. at 11. But the deposit copy is nothing more than a public, redacted excerpt of the TrueTracts front-end software that True Footage submitted when applying for a registration. A software author need not deposit a complete copy of its software to have a valid registration, and True Footage's rights in TrueTracts exceed the deposit copy. *See* 37 C.F.R. § 202.20(c)(2); 17 U.S.C. § 408(c)(1); 37 C.F.R. § 202.20(c)(2)(vii); 37 C.F.R. § 202.21. Indeed, when applying to register software, the applicant can deposit only the first and last 25 pages of the code. 37 C.F.R. § 202.20(c)(2)(vii)(A)(1); *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 779 (9th Cir. 2002). The copyright protects the entire work, including portions outside the deposit copy.[7] The deposit copy shows nothing relevant, let alone a deficiency in the complaint.

### 2. There is no defect in the complaint's allegations showing defendants' copying protectable elements of TrueTracts.

Defendants' other arguments are that True Footage has not alleged registration for the visual elements of TrueTracts and that those are not protectable in any event. Br. at 13-19. As to the registration, the complaint expressly alleges that the front-end registration covers the visual

---

[7] *Skidmore*, the only case defendants offer for their reliance on the deposit copy (Br. at 8), does not apply here. That case concerned an unpublished musical composition, and under the 1909 Copyright Act, an author could register that type of work only after "the deposit, with claim of copyright, of one complete copy of such work." *Skidmore*, 952 F.3d at 1062 (quoting 1909 Act § 11). That rule does not apply to present-day software registrations.

elements, as discussed above. As to protectable elements, the complaint specifically alleges such elements and supports those factual assertions with actual screenshots from the product. Those elements are not the "look and feel" of the website (Br. at 18), but specific creative design choices. *See* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* §§ 13D.31, 13D.35 n.19 (2026). And the screenshots plainly reflect the creative design choices that the complaint alleges, and are not mere outputs of raw data. These allegations more than make plausible that TrueTracts meets the "minimal" creative standard for protectability. *Feist*, 499 U.S. at 347. Given that, defendants can only win on this issue by showing that nothing alleged about TrueTracts in any of the screenshots or allegations identifies anything creative that defendants copied. They cannot.

Defendants first argue that the complaint alleges only the copying of ideas—namely, the idea of a heatmap, a generalized additive model, and appraisal reconciliation. Br. at 13, 16, 18. But defendants' copying goes far beyond that. Defendants conflate those ideas, which may not be protectable by copyright, with the original ways that True Footage expresses those functions in its software displays, which are protectable. For example, True Footage does not allege copyright infringement just because both products use a heatmap legend. True Footage alleges that defendants made a close copy of True Footage's legend. Compl. ¶¶ 56-57. Defendants chose the same four colors, the same four arbitrary market definitions, and placed them in the same order in the same vertical orientation, describing them with similar language in similar black sans-serif font. *Id.* Heatmap legends do not need to contain those colors, market definitions, or that arrangement. These are True Footage's creative choices, and even a modicum of creativity in them is protectable. *See Feist*, 499 U.S. at 347. Defendants infringed because they copied that kind of creative expression throughout Copilot's interface.

Admitting that some of the parties' visual elements are the same, defendants turn to arguing that those elements have no creative expression. But defendants concede that selection and arrangement of information can be creative. Br. at 15. In the seminal case describing when selection and arrangement of facts is not protectable, the Supreme Court found that a phone book organized alphabetically lacked a creative arrangement. *Feist*, 499 U.S. at 361. Alphabetizing data

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT                    17                    CASE NO. 3:26-cv-03418-AGT

FENWICK & WEST LLP

FENWICK & WEST LLP

did not meet the minimum threshold of creativity. *Id.* at 344, 361-63. Here, TrueTracts' colorful visual interface with diagrams, charts, and interactive tools is not just rote data output. Compl. ¶¶ 21-27. There are hundreds of factors an appraiser could consider; thousands of ways to represent those factors visually; millions of ways they could be combined and ordered. There is nothing systematic, obvious, or purely functional in the way that TrueTracts presents information to users.[8]

Second, defendants claim that some visual elements in TrueTracts are unprotectable *scènes à faire*. Br. at 15, 17. Under the *scènes à faire* doctrine, the defendant must show that "the expression embodied in the work necessarily flows from a commonplace idea." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000). This is a highly factual inquiry that can seldom be resolved on the pleadings, *see id.* at 1082; *Satava v. Lowry*, 323 F.3d 805, 810 n.3 (9th Cir. 2003), yet here defendants ask the Court to decide it. TrueTracts' user interface does not reflect only commonplace ideas. Defendants offer no reason why the heatmap legend must be broken out into specific categories based on properties that are less than 3%, 3% to 6%, or more than 6% different from the subject property as True Footage does. *See* Compl. ¶ 56. Defendants offer no reason why the heatmap input filters page must be gray and dark blue, shown in bar graphs. *See id.* ¶ 54. Defendants do not explain what commonplace idea is reflected in the nearly identical page-long description that walks through TrueTracts' data-driven approach to appraisal reconciliation. *See id.* ¶ 61. If this type of interface were rote across the appraisal industry, defendants would not have needed to use a fraudulent True Footage account to copy TrueTracts.

The Ninth Circuit has stated that a district court may not dismiss a copyright case based on a purported absence of copying protectable elements unless "[n]othing disclosed during discovery could alter the fact that the allegedly infringing works are as a matter of law not substantially similar to the original copyrighted work." *Gregorini v. Apple Inc.*, No. 20-55664, 2022 WL 522307, at *1

---

[8] Even in the cases that defendants rely on, the courts found creative selection and arrangement of information just as often as they did not. *See* Br. at 15, 18; *compare Experian Info. Sol., Inc. v. Nationwide Mktg. Servs., Inc.*, 893 F.3d 1176, 1186 (9th Cir. 2018) (finding protectable expression); *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 205 (9th Cir. 1989) (same), *with ABS Ent., Inc. v. CBS Corp.*, 908 F.3d 405, 418 (9th Cir. 2018) (finding no protectable expression); *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 573 (9th Cir. 1987) (same).

(9th Cir. Feb. 22, 2022) (quoting *Rentmeester*, 883 F.3d at 1123). Defendants come nowhere near this standard. The complaint states a claim by alleging that defendants' use of TrueTracts in developing, marketing, and operating Copilot reflects infringement of the copyright in the code and interface of the TrueTracts front-end software, and the Court should deny the motion.[9]

## II.    The Court should decline to convert defendants' motion to dismiss into a motion for summary judgment.

### A.    The Court should decline to convert the motion because it cannot grant summary judgment before fact discovery.

The Court should deny the motion for summary adjudication because it is premature to consider it before fact discovery. Even when filed at an *appropriate* time in the case, a district court may defer ruling if the nonmovant provides a declaration showing it needs discovery to oppose. Fed. R. Civ. P. 56(d). While denying such a discovery request is "generally disfavored," the court *must grant* it "freely" when a party moves for summary judgment before the nonmovant has had "any realistic opportunity to pursue discovery relating to its theory of the case." *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986); *Jacobson v. DHS*, 882 F.3d 878, 883 (9th Cir. 2018). And Rule 12(d) itself instructs that when a court converts a motion to dismiss to one for summary judgment, "All parties *must be given* a reasonable opportunity to present *all the material that is pertinent to the motion*." (Emphasis added).

Here, the parties have taken no discovery yet, and True Footage must receive that opportunity before the Court entertains summary adjudication. Cox-Parra Decl. ¶¶ 3, 14. True Footage has never had direct access to "Copilot" to examine it and catalog its infringements. *Id*. ¶ 7. True Footage has not had the opportunity to discover all the ways that defendants used TrueTracts code and display screens *on their own systems*, including confirming what defendants copied into generative AI and other development tools during the making of "Copilot." *Id*. And True Footage has had no opportunity to take discovery concerning defendants' specific evidentiary submission here, including receiving the documents and information in defendants' possession

---

[9] If the Court grants any aspect of the motion, it should do so without prejudice and allow amendment. It should also decline to decide issues of supplemental jurisdiction before evaluating an amended pleading. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025).

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT                                    19                    CASE NO. 3:26-cv-03418-AGT

(that may refute their contentions), and deposing each of defendants' witnesses, including their purported "expert witnesses" on their qualifications and the information they considered in forming opinions about web development, real estate appraisal tools, and copyright law. *Id.* ¶¶ 6-13. If the Court does not deny defendants' motion outright, it must deny it without prejudice and defer consideration until the parties have conducted fact discovery. [10]

**B.    The Court should also deny the motion because defendants have raised improper grounds for conversion under Rule 12(d).**

A court can convert a motion to dismiss into a motion for summary judgment when the movant presents evidence outside the pleadings and the court does not exclude them. Fed R. Civ. P. 12(d). The court *must* treat the filing as a motion for summary judgment if it relies on such evidence, in which case it must give the nonmovant "a reasonable opportunity to present all the material that is pertinent to the motion." *See id.*; *see also North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581-82 (9th Cir. 1983). The court retains discretion to simply exclude the evidence and refuse to convert the motion. *Swedberg v. Marotzke*, 339 F.3d 1139, 1142 (9th Cir. 2003); *Jackson v. S. Cal. Gas Co.*, 881 F.2d 638, 642 n.4 (9th Cir. 1989).

Here, the Court should exercise its discretion and simply deny the motion. To begin, defendants argue that the Court should convert the motion based on made-up criteria that have nothing to do with the rule. They argue that the Court should convert the motion because True Footage purportedly "admitted" an "improper motive" in bringing this case to stop defendants' copying, or that the Court should do so unless True Footage attaches to its response "the full, unredacted contents of the works it has registered." Br. at 19. These are not proper grounds for converting a motion to dismiss, and they provide no basis for the Court to do so. Nor should the

---

[10] None of defendants' authorities support their suggestion that the Court may grant immediate summary judgment on the pleadings. In two, the court *denied* summary judgment, permitting summary adjudication of specific issues only on an extensive record developed after discovery. *First Nat'l Ins. Co. v. F.D.I.C.*, 977 F. Supp. 1051, 1054-55, 1058-60 (S.D. Cal. 1997); *McIntosh v. N. Cal. Universal Enters. Co.*, 670 F. Supp. 2d 1069, 1081, 1105 (E.D. Cal. 2009). In the remaining case, the court discusses summary judgment only to contrast it with motions on the pleadings; its passing line that meritless claims "may be dealt with through summary judgment" is dicta. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 512-14 (2002).

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT                                    20                    CASE NO. 3:26-cv-03418-AGT

FENWICK & WEST LLP

Court convert based on defendants' evidentiary submission. As discussed more fully below, their evidence is inadmissible, irrelevant, and does not carry defendants' summary judgment burden. Because the Court need not and cannot rely on that evidence to rule on the motion, it cannot treat the motion as one for summary judgment. *See North Star*, 720 F.2d at 581-82.

**III.    The Court should deny summary judgment even if it considers defendants' evidence.**

A district court must deny summary judgment if the movant fails to show there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). The movant must meet its burden either by producing evidence negating an essential element of the nonmovant's case, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-58 (1970), or by making an affirmative showing that the nonmovant does not have evidence on an essential element to carry its burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). A movant does not meet this burden merely by alleging that the nonmovant has no evidence supporting an essential element. *See Nissan Fire*, 210 F.3d at 1105.

The Court should not entertain summary adjudication at this early stage of the case. But if it does, it should deny it because defendants failed to carry their burden. The "evidence" they submitted with the motion to dismiss is both (A) inadmissible and should be stricken; and (B) does not carry defendants' burden in any event.

**A.    The Court should deny the motion because it rests on expert opinion testimony from unqualified and biased lay witnesses.**

Defendants rely on two declarations purporting to provide opinions about computer software, real estate industry technology including user interfaces, and the *scènes à faire* doctrine. But an expert must be qualified by knowledge, skill, experience, training, or education, and neither witness here establishes such qualifications. Fed. R. Evid. 702. The testimony is inadmissible and the Court should thus strike the declarations.

**Huzaifa Ahmad** purports to opine about the industry meaning of "front-end" software. Huzaifa Decl. ¶¶ 5-8; *see* Compl. ¶¶ 29, 114-15.[11] The sum total of his testimony is that "modern

---

[11] True Footage uses Mr. Ahmad's first name to identify his declaration only to avoid confusion between him and Mr. Ahmed based on the close spellings of their surnames.

FENWICK & WEST LLP

web development heavily relies on server-side rendering (SSR)" in which some code that could be described as "front end source code" executes on a remote server, while other aspects of the front-end are delivered to the client device and accessible using the user's web browser. *Id.* Huzaifa does not establish his qualifications, nor does he establish personal knowledge to provide a lay opinion about the operation of TrueTracts. *See* Fed. R. Evid. 602, 701. Instead, Huzaifa testifies that he graduated from college a year ago and held one full-time job at a "voice AI" company for a few months before pivoting to attempt his own security startup. Huzaifa Decl. ¶ 3. Huzaifa testifies to his lack of expertise directly, stating that he is only "conversant" in technologies for web-based applications, and "conversant" with basic concepts and terms used by software engineers. *Id.* ¶ 4.

**Defendant Humza Ahmed** purports to testify about the use of heatmaps and the GAM statistical model in the real estate appraisal industry. Ahmed Decl. ¶¶ 9-12. He identifies no relevant education or work experience. The only qualifications Ahmed offers are his work on Automax and that his "family has been in the residential real estate appraisal business." *Id.* ¶¶ 1, 3-4. He repeatedly caveats his statements with the conclusory phrases, "based on my knowledge and investigation" and "based on my experience in the real-estate appraisal business," without stating any relevant experience or the facts on which he bases his opinions. *Id.* ¶¶ 9-12. Indeed, Ahmed's experience with the use of heatmaps and GAM in the real estate industry most likely comes from his copying those features from TrueTracts. *See* Compl. ¶¶ 52-62, 72.

Neither of these witnesses is qualified to offer expert testimony in federal court. *See SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 901 (N.D. Cal. 2022) (ruling that even a software engineer with 40 years of experience was not qualified to opine on a software program when he was only aware of its "capabilities"). Ahmed's attempt to serve as his own expert is especially problematic. When a purported expert has a direct stake in the case, "any semblance of independence or promise of intellectual rigor that normally adheres to an expert witness is fatally wounded." *Perfect 10, Inc. v. Giganews, Inc.*, No. 11-cv-7098, 2014 WL 10894452, at *4 (C.D. Cal. Oct. 31, 2014); *see also SEC v. Cornerstone Acquisition & Mgmt. Co.*, No. 22-cv-765, 2025 WL 276318, at *18 (S.D. Cal. Jan. 23, 2025); *Gately v. City of Port Hueneme*, No. 16-cv-4096,

FENWICK & WEST LLP

2017 WL 8236269, at *14 (C.D. Cal. Oct. 2, 2017).  Ahmed's conduct is directly at issue here, and his testimony lacks even a hint of impartiality.  To preserve the integrity of this proceeding, the Court should strike his testimony and make clear that he will not be serving as an expert witness.

### B.   The Court should deny the motion regardless because defendants have not carried their burden of production.

Even if the Court considers this testimony, it does not entitle defendants to summary judgment on any issue.  When reviewing the evidence offered by the movant, the court must view all facts in the light most favorable to the non-moving party.  *Ambrosetti v. Or. Catholic Press*, 151 F.4th 1211, 1218 (9th Cir. 2025).  A genuine issue of fact exists when a factfinder could draw a contradictory inference from the evidence that the movant offers.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see United States v. Perry*, 431 F.2d 1020, 1022 (9th Cir. 1970).

The Ninth Circuit explained this in *Nissan Fire*, 210 F.3d at 1101.  There, the plaintiff sued over damaged goods.  *Id.*  A necessary element of the plaintiff's claim was establishing that it "dispatched" a notice of claim within seven days of receiving the goods.  *Id.* at 1106.  In moving for summary judgment, the defendant provided an affidavit stating it had not "received" notice within seven days.  *Id.*  The Ninth Circuit affirmed the district court's denial of summary judgment.  The affidavit did not negate the notice element; it was consistent with the possibility that notice was timely *sent* (i.e. "dispatched").  *Id.* at 1106-07.  Thus, the movant failed its initial burden of production in moving for summary judgment.  *Id.* at 1107.  A nonmoving plaintiff has no obligation to produce *anything* until a moving defendant carries its initial burden of production.

That is the case here.  The one issue for which defendants request summary adjudication is that True Footage purportedly failed to show that its registered front-end code includes anything the defendants are alleged to have accessed or copied.  Br. at 19.  But, as discussed above, True Footage asserted a registration that includes both the literal computer code and the visual elements of TrueTracts that defendants are alleged to have copied.  True Footage identified that registration and has shown here that the Copyright Office *requires* a single registration covering all aspects of an individual software work.  Defendants have not carried their initial burden to show the absence of any genuine dispute of material fact on this issue.  The Huzaifa declaration instead expressly

FENWICK & WEST LLP

admits that "front-end" software can include code that is delivered to the user's local web browser and other material (like visual elements) that is presented to users. Huzaifa Decl. ¶¶ 6, 8. Far from establishing no triable issue, those admissions *support* True Footage's allegations that defendants had access to and copied the registered work. Compl. ¶¶ 51, 114-23.[12]

Defendants do not expressly ask the Court to grant summary judgment on any other basis, and it is equally clear that they have not carried their burden on any issue. With respect to protectable elements of TrueTracts' user interfaces, the complaint alleges numerous creative decisions across multiple display screens, expressly stating that these are only a representative sample of those at issue. Compl. ¶¶ 53-64. By contrast, Ahmed attempts to testify only about the use of heatmaps and the GAM statistical model generally, without reference to *the specific displays or their specific creative elements that he is alleged to have copied*. Ahmed Decl. ¶¶ 9-12. He attempts to testify that the colors used in the heatmap are in common use, pointing to two URLs whose associated websites are not even in evidence. *Id.* ¶ 10. But this testimony about a single element does nothing to address what Ahmed is alleged to have done, namely create identical copies of entire display screens that include multiple creative choices about the presentation and arrangement of elements. *E.g.*, Compl. ¶¶ 55-56; *see Fleener v. Trinity Broad. Network*, 203 F. Supp. 2d 1142, 1147, 1150 (C.D. Cal. 2001) (denying summary judgment where defendants' experts failed to establish elements were *scènes à faire*). With respect to access to TrueTracts, the complaint alleges detailed facts about Ahmed's creation of a True Footage account and use of TrueTracts. *Id.* ¶¶ 35-51, 114-115. Ahmed, by contrast, does not attempt to negate any of these facts. Instead, after reviewing only the identification of *registrations* in the complaint, he testifies to a bare conclusion that his current "knowledge and investigation" is that he and Automax lacked access and did not copy code from the works. Ahmed Decl. ¶ 8.

Defendants have conceded the inadequacy of their submission by asking for permission to conduct one-sided discovery of True Footage and then make a second attempt at the motion

---

[12] Defendants also ask for judicial notice of the deposit copy on file, but by the Copyright Office's rules that deposit is merely a redacted sample from the work—it shows *nothing* one way or the other about defendants' access or copying. *See* Plaintiff's Response to Request for Judicial Notice.

FENWICK & WEST LLP

afterwards. Dkt. 40 at 7-8, 10-11. The Court should deny the motion for failure to carry defendants' burden of production, and it should reject any other requests to rewrite the rules of civil procedure to allow them to continue to conceal the evidence of their unlawful conduct.

**IV.     The Court should deny defendants' request for a more definite statement.**

Motions for more definite statements are "viewed with disfavor and are rarely granted." *Adobe*, 153 F. Supp. 3d at 1147. A court may order a more definite statement only when the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). That is not the case here. That is because, in a copyright dispute, merely alleging the copyright registration at issue is sufficiently definite to put the defendant on notice of the asserted work that it is accused of infringing. *Adobe*, 153 F. Supp. 3d at 1148. After that, the "proper avenue for eliciting additional detail is discovery, not a Rule 12(e) motion." *Fed. Sav. & Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1060 (N.D. Cal. 1988).

Thus, defendants do not even discuss the governing legal standard. They also fail to disclose that the courts of this district have *never* required what defendants request here: ordering the plaintiff to allege with specificity every infringement or to identify specific "portions" or "components" of computer code copied from the asserted work. Br. at 10, 20.[13] Defendants' cynical game is to burden True Footage with an impossible obligation to plead with specificity what defendants did with certain lines of code on defendants' own systems. But the federal rules require notice pleading, not code pleading. True Footage detailed what defendants copied, how they took it, and how they used it, including showing how identical copies of TrueTracts' copyrighted interfaces ended up in defendants' knockoff product. The Court should direct defendants to answer the complaint.

**CONCLUSION**

For the foregoing reasons, the Court should deny the motion.

---

[13] Defendants' only "authority" is a minute order that does not concern copyright pleading. Instead, it addresses a tortious interference claim where the plaintiff failed to allege either the relationships at issue or the acts constituting interference with them. Br. at 20 (citing *Cascade Invs., Inc. v. Bank of Am., N.A.*, No. 99–cv-559, 2000 WL 1842945, at *3 (D. Nev. Sept. 29, 2000)).

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT                                    25                        CASE NO. 3:26-cv-03418-AGT

FENWICK & WEST LLP

July 29, 2026

Respectfully submitted,

FENWICK & WEST LLP

By: /s/ Todd R. Gregorian
Todd R. Gregorian
Garner Kropp
Gregory Adams
Samantha Cox-Parra

*Attorneys for Plaintiff*
*True Footage Inc.*

FENWICK & WEST LLP

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT                         26                    CASE NO. 3:26-cv-03418-AGT