FENWICK

One Front Street
33rd Floor
San Francisco, CA 94111

415.875.2300
Fenwick.com

Todd R. Gregorian
tgregorian@fenwick.com | 415.875.2402

September 4, 2026

VIA ECF FILING

Magistrate Judge Alex G. Tse
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom A – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**Re: True Footage Inc. v. Automax AI Inc., et al., No. 3:26-cv-03418-AGT (N.D. Cal.)**

Dear Judge Tse:

The parties submit this joint letter to resolve a dispute concerning defendants' duty to preserve evidence relevant to this litigation. The parties conferred on April 8, and during their July 16 Rule 26(f) conference, but have been unable to reach agreement.

**Plaintiff True Footage's Position**

***Introduction***. For over five months, True Footage has expressed serious concerns that defendants are destroying or failing to preserve critical evidence in this case. Beginning with True Footage's first pre-suit letter and through formal discovery, True Footage has requested confirmation that defendants are preserving relevant documents and electronically stored information including AI tool logs and prior versions of defendants' accused product.

Defendants have refused all requests, committing only that they would "follow the Federal Rules" and respond to discovery in the normal course. But that appears to be a false promise made to delay discovery into potential spoliation. The Federal Rules require the parties to "discuss any issues about preserving discoverable information" at the Rule 26(f) conference. Fed. R. Civ. P. 26(f)(2). Defendants refused. True Footage then served its written discovery on these topics. Defendants answered that they "will not respond to this Interrogatory at this time. Defendants will provide a response if the Court orders full discovery to proceed." Ex. 1. But fact discovery is open. No Court order is necessary to oblige a party to answer these requests. Defendants' ongoing misconduct suggests that they have spoliated evidence and are concealing the facts about it. To prevent additional prejudice, True Footage seeks a limited order directing defendants to preserve key evidence for trial.

***Background***. True Footage alleges that defendants misappropriated its intellectual property by using AI tools to "vibe code" copies of the TrueTracts software. Compl. ¶¶ 50–66. Defendant Ahmed recently moved to the Bay Area from Canada. After acceptance into the Y Combinator program, he misrepresented his identity to gain access to TrueTracts, shared his account credentials with a software developer in Norway, and together they copied every aspect of TrueTracts they could access into a knockoff product called "Copilot." *Id.* ¶¶ 5, 41. Copilot renders page after

page of identical displays and text descriptions copied from TrueTracts; examples that True Footage has been able to access to date are provided as side-by-side comparisons in the complaint. *Id.* ¶¶ 54–62.

True Footage sent a letter on March 27, 2026 that placed defendants on notice of their duty to preserve all documents and electronic data related to this dispute, including queries to and responses from AI tools. Gregorian Decl. ¶ 17. The letter warned that destruction or alteration of evidence could expose defendants to sanctions. *Id.* True Footage then attempted to discuss the dispute during a call with defendants' prior counsel on April 8. *Id.* ¶ 19. Defendants' counsel refused to discuss document preservation, including specifically refusing to state whether defendants had preserved the records of their use of AI tools. *Id.* ¶¶ 19, 21. Instead, counsel proposed that the dispute could be resolved through "cosmetic changes" to Copilot. *Id.* ¶ 10.

On April 16, True Footage sent a follow-up letter requesting specific assurances concerning document preservation and reminding counsel of their own ethical obligation to supervise preservation efforts. *Id.* ¶ 22. On April 18, after no fewer than six separate requests, defendants' former counsel committed to respond in detail by April 24, but then withdrew from the case. *Id.* ¶ 23. When True Footage asked defendants' new counsel to honor the prior commitment, they dismissed the spoliation concerns as "baseless." *Id.* ¶¶ 24–25. On May 4, defendants refused further response, committing only to follow "Federal Rules and case law." *Id.* ¶¶ 27–28.

But at the Rule 26(f) conference on July 16, defendants chose to violate the Federal Rules instead. True Footage asked whether defendants had forensically imaged any devices, preserved AI tool prompts and outputs, ensured overseas workers preserved data, and preserved any ephemeral messages. Gregorian Decl. ¶ 28 & Ex. G. Defendants refused to answer each of these questions, mischaracterizing these inquiries as an "ambush[]." *Id.* Now, after exchanging *two drafts* of this motion, defendants state that they will confer informally about preservation, but only after plaintiff proposes a full ESI order to govern the case going forward.

***Argument***. The Court has the inherent power to control discovery including ordering preservation of evidence. *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 135-38 (Fed. Cl. 2004). That power is also consistent with Federal Rule of Civil Procedure 37(e), which provides for sanctions when a party fails to "take reasonable steps to preserve" electronically stored information "in the anticipation or conduct of litigation." And defendants have an ongoing obligation to notify the court if they are unable to comply with preservation obligations. *Keithley v. Homestore.com, Inc.*, 629 F. Supp. 2d 972, 975 (N.D. Cal. 2008).

In considering a preservation order, courts look to: (1) the level of concern that evidence will be destroyed absent a court order; (2) any irreparable harm to the requesting party; and (3) the capability of the party to maintain the evidence. *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433–34 (W.D. Pa. 2004). Each consideration is met here. First, this case involves young people without litigation experience and key evidence is overseas. Gregorian Decl. ¶ 18. True Footage raised concerns about spoliation to the defendants repeatedly, and received evasive responses about "following the Federal Rules" that have turned out, in hindsight, to be falsehoods. Defendants' former counsel was replaced shortly after they were reminded of their ethical obligations concerning preservation, and shortly before they were to provide a detailed response about that subject. Even now, facing a motion, defendants provide the

Court with *no specific information* about what they preserved or failed to. Instead, Ahmed merely testifies he "took steps" to preserve including turning off auto-delete functions in at least some unidentified "devices, systems, and platforms." The red lights are flashing here.

Second, spoliation would irreparably harm True Footage. Defendants do not deny they are implementing "cosmetic changes" to Copilot, to attempt to continue reaping the benefits of their initial copying. Thus, preserving the prior versions of Copilot and all documents showing how it resulted from copying TrueTracts is necessary to ensure a fair trial.

Third, True Footage's requested relief imposes no burden on defendants beyond what they claim (superficially) to have done already, and what they should have undertaken when they received notice on March 27, 2026. Defendants argue that some Copilot code may be irrelevant, but the proposed order merely orders that defendants *preserve* that information. That imposes virtually no burden on defendants if they use any modern version control system (like Git or Subversion), since those already record a permanent history of the codebase. Defendants shirked their duty to confer at the Rule 26(f) conference and made baseless objections to written discovery. True Footage asks the Court to enter the attached proposed order directing defendants to preserve evidence.

**<u>Defendants' Position</u>**

***Introduction.*** Plaintiff's motion is baseless and a wasteful distraction. Shortly after receiving Plaintiff's March 27, 2026, cease-and-desist letter (the "C&D Letter"), Defendants retained counsel and took steps to preserve evidence that may be relevant to the matter. Defendants informed Plaintiff as much just a week after receiving that letter and have continued to assure Plaintiff every time it has asked whether Defendants are preserving evidence.

Plaintiff nonetheless has spent the last five months engaged in an effort to run Defendants out of business by incurring needless litigation costs (*see* Dkt. Nos. 24-25, 48), including now defending against Plaintiff's baseless "concerns" that Defendants have failed to abide by their discovery obligations. The only explanation Plaintiff has ever given for its "concerns" regarding preservation is that "the likelihood that [Humza Ahmed] has [] spoliated evidence of his [alleged] misconduct is high" because he is a young "foreign citizen and college dropout" who Plaintiff has "no reason to believe has any familiarity with U.S. litigation or what is required to preserve evidence." Gregorian Decl. (Dkt. No. 42) ¶ 18(b); *id.*, Ex. D (Dkt. No. 42-4) at 3. If Plaintiff were truly interested in engaging with Defendants on the issue of preservation—as opposed to multiplying Defendants' litigation costs—Plaintiff would have sent Defendants a proposed ESI protocol and entered negotiations with Defendants regarding specific preservation measures. Despite promising in mid-July to do so, Plaintiff still has not sent Defendants a proposed ESI protocol.

***Background.*** Defendants promptly engaged counsel at Coblentz Patch Duffy & Bass LLP ("Coblentz") following receipt of Plaintiff's C&D Letter, at which time Defendants also took steps to preserve all potentially relevant information, including turning off any auto-delete features in devices, systems, and platforms containing relevant electronically stored information. Declaration of Humza Ahmed Regarding Preservation ("Ahmed Decl.") ¶ 3.

A week after Defendants received the C&D Letter, Coblentz informed Plaintiff's counsel that "Automax.ai is preserving documents that may be relevant to this dispute, and we trust True

Footage is doing the same." Ex. 2. Plaintiff demanded additional assurances, stating that it was concerned that Defendants are incapable of understanding their preservation obligations given Mr. Ahmed's age and status as an immigrant. Dkt. No. 42-4 at 3. Coblentz *again* represented that Defendants would comply with their preservation obligations. Dkt. No. 42-5.[1]

Shortly thereafter, Plaintiff filed its complaint, and Defendants engaged Lex Lumina LLP and Harris St. Laurent LLP. Ahmed Decl. ¶ 4. Again, Defendants reviewed their preservation obligations and took steps to ensure that all information potentially relevant to the claims and defenses in this case were preserved. *Id*. Plaintiff continued to harass Defendants concerning their preservation efforts; on April 27, 2026, Defendants again assured Plaintiff that "all counsel for Automax AI are well aware of the duty to preserve documents, and our clients are doing so." Dkt. No. 42-6 at 7. Defendants further stated that they would address any legitimate spoliation concerns—not baseless allegations manufactured to disparage Defendants—as appropriate. *Id*.

On May 4, 2026, in response to yet another baseless, unilateral demand for "specific assurances" and a prophylactic accounting of steps that counsel and Defendants had taken to preserve documents, Defendants once again reiterated that they were, and had been, complying with their obligations regarding document preservation. *Id*. at 2. Defendants invited Plaintiff to provide (1) a case indicating that Defendants have an obligation to provide specific assurances of preservation on the bases (or lack thereof) that Plaintiff had articulated or (2) evidence substantiating a genuine spoliation concern. *Id*. To date, Plaintiff has provided neither. Nor has Plaintiff provided its proposed ESI protocol as promised, which is the way that parties usually begin good-faith negotiations regarding specific preservation measures. Defendants have advised Plaintiff that if it chooses to burden the Court with this frivolous, manufactured issue, Defendants will seek their attorneys' fees and costs in defending the motion. *Id*.

Finally, during the parties' Rule 26(f) conference on July 16, Plaintiff opened the conversation by attempting to depose counsel about specific steps Defendants and their counsel have taken to preserve evidence. Plaintiff, yet again, was unable to articulate a basis for any concerns about potential spoliation. While Defendants' counsel refused to engage in deposition by ambush, they did reiterate that Defendants are abiding by their preservation obligations and explained that the purpose of the Rule 26(f) conference was for the parties to discuss and try to come to agreement regarding issues related to preservation such as the scope of *mutual* preservation requirements and any concerns about preservation of particular ESI formats. Defendants invited Plaintiff to provide a proposed ESI protocol for that purpose. Plaintiff promised to do so but has not sent a proposed ESI protocol to date—instead choosing to file this motion. Plaintiff has served discovery requests regarding Defendants' preservation efforts, and Defendants agreed to provide Plaintiff with responsive, non-privileged materials in response to six of the seven requests for production concerning preservation and stated that they would provide responses to the related interrogatories at an appropriate time, after the Court has ruled on the parties' competing discovery proposals set forth in the joint case management statement. Ex. 1.

Defendants have consistently represented that they have abided by their preservation obligations, and to date Plaintiff has not once articulated a legitimate basis for why it believes otherwise.

---

[1] The "commit[ment] to respond in detail by April 24" Plaintiff references above was a commitment by Coblentz to respond to the merits of Plaintiff's claims, not preservation efforts.

***Argument.*** Preservation orders are appropriate only under certain circumstances, none of which are present here. The determination of whether such an order is appropriate is a fact-specific inquiry, and the Court must consider (1) the level of concern the Court has for the continuing existence and maintenance of the evidence, (2) whether irreparable harm is likely to result in the absence of such order, and (3) whether the party against whom the order is being issued has the capability to preserve the evidence and the associated burden in doing so. *Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 416 (S.D. Cal. 2018) (citation omitted).

To meet the first prong, Plaintiff must show that there is a "significant risk that relevant evidence will be lost or destroyed" absent a preservation order. *Al Otro Lado*, 328 F.R.D. at 416 (quoting *Pueblo of Laguna v. U.S.*, 60 Fed. Cl. 133, 138 (2004)). Plaintiff cannot show such a risk. The only rationale Plaintiff has given for believing there is such a risk is that Mr. Ahmed is young, an immigrant, a college dropout, and has no litigation experience. Putting aside the apparent discrimination, Defendants are being counseled by two qualified law firms that are well-versed in discovery preservation requirements. Defendants have studied their preservation obligations and have taken steps to preserve all relevant information. Ahmed Decl. ¶¶ 3-5. Plaintiff is not entitled to assurances beyond those given and certainly is not entitled to intrude upon the attorney-client privilege under the guise of receiving assurances not contemplated by governing law.

As for the second prong, mere speculation that spoliation may take place is insufficient to warrant a finding of irreparable harm. *See, e.g., Reinsdorf v. Skechers USA Inc.*, 296 F.R.D. 604, 631 (C.D. Cal. 2013) (mere speculation that deleted documents may exist insufficient to show spoliation); *Ryan v. Editions Ltd. West, Inc.*, 786 F.3d 754, 766 (9th Cir. 2015) (same); *Capricorn Power*, 220 F.R.D. at 435 ("where the need expressed by the moving party for a preservation order is based upon an indefinite or unspecified possibility of the loss of destruction of evidence, rather than a specific, significant, imminent threat of loss, a preservation order usually will not be justified."). Speculation that Defendants "may" be making changes to their Copilot software and "may" be spoliating evidence because Mr. Ahmed is an immigrant does not warrant a preservation order.

Finally, the order Plaintiff seeks is unduly burdensome as it would require Defendants to preserve information that has no relevance to the claims or defenses in this matter—as only a limited, discrete part of Defendants' Copilot software allegedly overlaps with the features of Plaintiff's TrueTracts—and seeking *every* iteration of source code and *every* prompt or query submitted to an AI system is disproportionate to the needs of this case, and would serve no other purpose than to grant Plaintiff unfettered access to Defendants' competitive information. *See Al Otro Lado*, 328 F.R.D. at 422 (denying order where plaintiff failed to explain relevance of information to be preserved, and preservation would require substantial burden); *Capricorn Power*, 220 F.R.D. at 435 (denying order where it was sought for tactical reasons, not necessity). In any event, the order is unnecessary. *See*, *e.g., Dawe v. Corrections USA*, 263 F.R.D. 613, 617 (E.D. Cal. 2009) (spoliation concerns mooted by defendants' resolution to preserve subject recordings, and defendants' representations that no evidence had been or would be destroyed during the litigation).

Defendants will address any concerns Plaintiff has about preservation or spoliation with a legitimate basis beyond age, nationality, or litigation inexperience. Defendants also will engage in good-faith negotiations regarding preservation obligations in an appropriate ESI protocol promptly after Plaintiff sends its proposal, as previously promised. Defendants respectfully request that the Court deny Plaintiff's requested preservation order and award Defendants' costs and attorneys' fees in responding to this baseless motion under Fed. R. Civ. P. 11 and/or 37.

Respectfully submitted,

Dated: September 4, 2026

FENWICK & WEST LLP

By: *Todd R. Gregorian*
Todd R. Gregorian
Garner Kropp
Gregory Adams
Samantha Cox-Parra

*Attorneys for Plaintiff*
*True Footage Inc.*

Dated: September 4, 2026

LEX LUMINA LLP

By: *Rhett O. Millsaps II*
Rhett O. Millsaps II
Christopher J. Sprigman

HARRIS ST. LAURENT LLP
Jonathan Harris
Ashley Robinson

*Attorneys for Defendants*
*AUTOMAX AI INC.; AUTOMAX AI (US) INC.; and HUMZA AHMED*

**ECF ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I attest that all signatories have concurred in this filing.

*/s/ Todd R. Gregorian*
Todd R. Gregorian