TODD R. GREGORIAN (CSB No. 236096)
*tgregorian@fenwick.com*
GARNER KROPP (CSB No. 312585)
*gkropp@fenwick.com*
GREGORY ADAMS (CSB No. 292391)
*gadams@fenwick.com*
SAMANTHA COX-PARRA (CSB No. 351914)
*scox-parra@fenwick.com*
FENWICK & WEST LLP
One Front Street, 33rd Floor
San Francisco, CA 94111
Telephone: 415.875.2300
Facsimile: 415.281.1350

*Counsel for Plaintiff*
TRUE FOOTAGE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

TRUE FOOTAGE INC.

Plaintiff,

v.

AUTOMAX AI INC.; AUTOMAX AI (US) INC.; and HUMZA AHMED,

Defendants.

Case No. 3:26-cv-03418-AGT

**DECLARATION OF TODD R. GREGORIAN IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND TO DISMISS**

Date: September 4, 2026
Time: 10:00 a.m.
Dept: Courtroom A, 15th Floor
Judge: Hon. Alex G. Tse



FENWICK & WEST LLP

I, Todd R. Gregorian, declare:

1. I am a partner at the law firm of Fenwick & West LLP, counsel for Plaintiff True Footage Inc. in the above captioned action. I make this declaration of my own personal knowledge.

**True Footage filed suit only after exhausting other means to resolve this dispute.**

2. Defendants Automax AI Inc., Automax AI (US) Inc., and Humza Ahmed assert that True Footage intends to use this litigation to stop them from competing in the market. That assertion is false.

3. As the complaint details (¶¶ 31-66), True Footage discovered that defendant Ahmed misrepresented his identity to gain access to the TrueTracts product, then worked with an overseas software developer and at least two real estate appraisers to create rote copies of its features, apparently "vibe coding" them using AI tools. The copying was so extensive that the features in the knockoff, "Copilot,"[1] rendered page after page of identical displays, including True Footage's creative design choices concerning the selection and arrangement of visual elements such as colors, locations on the page, means for display of data, and text descriptions of features and methods. Ahmed then began making sales presentations that made prominent use of these infringements, even telling his audiences that they may be familiar with some features if they had previously used TrueTracts.

4. If True Footage wanted to impose expense to hamper a competing startup, it could have filed suit immediately and sought preliminary relief. Indeed, based on review of public information about Automax's fundraising and resources, merely forcing Automax to defend a temporary restraining order and preliminary injunction proceeding could potentially put it out of business.

5. But True Footage did not do that. Instead, on March 27, 2026, it sent Ahmed a letter advising him that True Footage was aware of his misconduct and he should stop it voluntarily.

[1] There is no apparent connection between Automax's "Copilot" and the Microsoft software product of the same name. Microsoft Corporation holds trademark registrations for the use of "Copilot" in connection with computer software. COPILOT, Registration Nos. 6,256,123; 7,147,270; and 7,147,063 (all available at: https://tsdr.uspto.gov/ ).



FENWICK & WEST LLP

The letter demanded that Ahmed and Automax cease offering infringing appraisal products. But it also made clear that defendants were free to compete in the real estate appraisal market, so long as they did so fairly. Thus, the letter expressly stated that defendants could develop a competing offering so long as this was done "under appropriate clean room protocols and without infringing any rights of True Footage or accessing TrueTracts." Indeed, Ahmed and Automax could create directly competitive software features so long as it was "without any information you took from your fraudulent True Footage account and without any proprietary products from True Footage." A copy of that letter is attached as **Exhibit A.**

6. Ahmed ignored the demand and persisted in his misconduct. He did not respond at all until five days later, on April 1, 2026, when he stated: "We trust that True Footage will refrain from taking any action…" until he provided a "comprehensive response." Yet, as the complaint alleges, at the same time as he was attempting to stall discussion of the dispute, Ahmed continued to demonstrate the knockoff product to the public, including displaying the same infringements in a webinar the *very next day*, April 2, 2026. *See* Compl. ¶ 74. A copy of an email string containing Ahmed's response is attached as **Exhibit B.**

7. Ahmed did not provide a comprehensive response and to date *has never denied* "vibe-coding" a copy of True Footage's product using AI tools. Faced with this inaction, True Footage filed suit. But it then continued to seek the same efficient resolution that would allow Automax freedom to operate, provided only that it does not continue to benefit from the fraud and copying that it engaged in at True Footage's expense.

8. I have reviewed the declarations that defendants submitted from their former litigation counsel. *See* Declaration of Christopher J. Wiener ("Wiener Decl.") (Dkt. 24); Declaration of Katelyn A. Berens ("Berens Decl.") (Dkt. 25). These counsel purport to report on a confidential settlement discussion between the parties. The actual details of that discussion were all known to these witnesses when they signed their declarations, yet selectively presented in their testimony.

9. On April 8, 2026, I conferred with defendants' counsel Christopher Wiener and Katelyn Berens to discuss defendants' improper access to and copying of True Footage's TrueTracts. Also

FENWICK & WEST LLP

present was Garner Kropp from Fenwick.

10. Mr. Wiener opened the call by offering that what was "needed" to resolve this dispute were "cosmetic changes" to Automax's Copilot. I explained that mere "cosmetic changes" would be unreasonable because defendants defrauded True Footage to access its product and then copy it, obtaining an unfair developmental head start that would not be addressed by such changes.

11. I also explained that defendants are free to create their own features that compete with TrueTracts, including those that use the same statistics principles. But defendants needed to be an "honest competitor" and that meant that they must excise and could not in any way use the versions of such features that they copied from TrueTracts.

12. I then explained why such a settlement should be an easy choice for defendants: the cost of litigation would eventually exhaust defendants' present funding. I stated that defendants would be better served if their entire seed investment was not spent fighting a litigation over conduct that was clearly unlawful and wrong, when it could use those funds as the investors intended—to develop a real estate appraisal software solution through honest and lawful means.

13. I also made clear that True Footage was willing and able to pursue this matter to defend its rights and reputation in the market. Thus, defendants' decision to potentially go out of business over this issue would make absolutely no sense when there is a $0, no-money-exchanged, resolution on the table that allows them freedom to operate.

14. Moreover, although we did not discuss this expressly on the call itself, based on the early stage at which True Footage made its demand, excising the copies and deleting the information that defendants copied through Ahmed's True Footage account should have required only a modest amount of work. Under True Footage's offer, it is true that defendants would have been required to develop product features for Copilot independently, but this would have been a just outcome.

15. Defendants describe other features of "Copilot," such as its claimed use of LiDAR to analyze property features. *See, e.g.*, Br. at 3. Defendants suggest that True Footage's offer would have somehow impeded their development and use of these features. That suggestion is

FENWICK & WEST LLP

unsubstantiated and inaccurate. Indeed, Defendants' counsel never even identified the LiDAR feature to True Footage during settlement discussions. True Footage's concern, from its initial letter (Exhibit A) through the settlement discussion with defendants' former counsel, and continuing to the present, has *always* been expressed to defendants as a demand that defendants stop accessing TrueTracts by fraudulent means, stop copying True Footage's products, and disavow any continued benefit from such copying. That demand has nothing whatsoever to do with products or features that defendants develop honestly and independently.

16. Given all the above, the testimony offered by defendants' former counsel is selective and inaccurate in what it asserts. Mr. Wiener's testimony that True Footage demanded a "*complete redesign*" of Copilot, and Ms. Berens' testimony that True Footage demanded that Automax AI must "*stop operating*," misstate the facts. Wiener Decl. ¶ 5; Berens Decl. ¶ 5. And it has *never* been True Footage's goal to waste resources in litigation, either its own or a competitor's. The thrust of the discussion on April 8 was that True Footage was not bluffing about protecting its own rights, and thus it was unfathomable that defendants would not work with True Footage to *avoid* a litigation.[2]

**True Footage has serious unresolved concerns about potential destruction of evidence.**

17. True Footage's March 27, 2026 letter to defendants placed them on notice of their legal duty to preserve all documents and electronic data (such as computer code, video recordings, and queries to and responses from artificial intelligence products) related to this dispute. Exhibit A at 12-13. The letter also explained that "[d]estroying or altering potentially relevant evidence could expose [defendants] to serious sanctions and penalties, due to the lawful duty to retain such information upon awareness of a potential legal claim or dispute." *Id.* at 13.

18. True Footage's concerns about spoliation are serious and substantiated:

a. Defendants may be making the "cosmetic changes" to Copilot that their original

[2] Ms. Berens states also that I "utilized profanity" during the call. Berens Decl. ¶ 6. Neither witness testifies that I directed such language at them or their client. And they could not, as I did no such thing. Had anyone registered offense at the time, I would have refrained from using colorful language.



FENWICK & WEST LLP

counsel proposed. With these changes, defendants would still reap the benefits of their fraud, breach of contract, tortious interference, and infringing acts from their initial copying of True Footage's work. What the changes would accomplish is that Copilot's interfaces would no longer render identically to True Footage's, such that they may not create *additional* infringements of the statutory reproduction and display rights. With the current product changed in that manner, preserving the prior versions of Copilot and all the documents, communications, and other information showing how it resulted from copying TrueTracts becomes an absolute baseline requirement for ensuring that True Footage receives a fair trial in this case.

b. Defendant Ahmed is young and inexperienced and recently moved to the Bay Area from Canada. There is no reason to believe he had any prior familiarity with U.S. litigation at all, let alone with his specific obligation to preserve evidence once a claim had been asserted against him. His initial reaction to True Footage's demand—asking for a delay then continuing the very same misconduct addressed in the letter—was cavalier and dismissive.[3]

c. Defendant Automax employed Sindri Mørch Tomasson, a developer working overseas in Trondheim, Norway, to assist with accessing the fraudulent TrueTracts account and copying TrueTracts elements into Copilot. There is similarly no reason to believe that this individual has any prior familiarity with U.S. litigation, let alone with the specific obligation to preserve evidence in the possession, custody, or control of his employer Automax once a claim had been asserted. That some of this information may exist only in Norway raises additional concerns.

[3] Ahmed has also used this lawsuit as a PR opportunity for Automax, stating publicly: "True Footage is trying to sue their way out of having to actually innovate or compete[.]" Attached as **Exhibit C** is a copy of the article, William Hicks, *Home appraisal company sues Y Combinator startup, alleging founder stole its tech*, San Francisco Business Times, Apr. 24, 2026, at https://www.bizjournals.com/sanfrancisco/news/2026/04/24/home-appraisal-startup-y-combinator.html.

FENWICK & WEST LLP

d. Any counsel acting reasonably with an understanding of their ethical duties as officers of the Court would understand based on these facts that Ahmed and Tomasson required active supervision by counsel to preserve documents. Yet, as discussed below, the behavior of litigation counsel to date indicates that there were lapses in this supervision. True Footage made numerous requests that defendants confirm facts about their document preservation efforts, but their counsel has refused to engage in any discussion beyond committing to follow the "Federal Rules of Civil Procedure" in discovery. Notably, when former counsel were advised of their ethical duty to supervise preservation, they relented and promised a specific response, but then either withdrew from the representation or were terminated shortly before they provided that response.

19. During the April 8, 2026 call I attempted unsuccessfully to address defendants' conduct and document preservation. Counsel for defendants refused to discuss document preservation, including specifically refusing to state whether defendants had preserved the records of Ahmed and others' use of artificial intelligence tools to copy from Ahmed's True Footage account.

20. Indeed, Mr. Wiener was not candid concerning the conduct at issue. He deflected multiple times throughout the call asserting that he did not understand what the demand letter (Exhibit A) accused defendants of copying and that it should be explained to him to "help me understand," despite that letter spelling out detailed examples of the improper access and copying across multiple pages including side by side screenshots.

21. Mr. Wiener also attempted to claim, again contrary to the detailed evidence that he had already been provided, that defendants' conduct amounted to mere "competitive intelligence." As just one example, the letter described detailed information showing that defendants had contacted multiple True Footage users and induced them to collaborate on specific projects in TrueTracts, unlocking defendants' access to additional features that they then copied into Copilot. Exhibit A at 3. Mr. Wiener attempted to describe this conduct as Automax having "talked" to an appraiser who used True Footage and he had done nothing more than report that its heatmaps and GAM were "useful" features.

22. On April 16, 2026, we sent defendants a follow up letter requesting specific assurances concerning defendants' document preservation and potential spoliation. The letter also reminded counsel of their ethical obligation to supervise the client's preservation, and again shared a genuine concern that, given defendants' history of misconduct in this case, there was a high likelihood they also spoliated evidence of such misconduct. A copy of that letter is attached as **Exhibit D**.

23. On April 18, 2026, after making no fewer than six separate requests to defendants to preserve documents and confirm with specific details that defendants had not destroyed, altered, or failed to otherwise preserve evidence, counsel finally committed to "respond to your letter on the (non-) merits of True Footage's allegations this week"—i.e., by Friday, April 24, 2026. No such response arrived by the promised date. A copy of that letter is attached as **Exhibit E**.

24. On April 23, 2026, I was informed via email that defendants had retained new counsel at two different law firms: Christopher Sprigman of Lex Lumina LLP and Jonathan Harris of Harris St. Laurent LLP. That same day, I asked them to accept service of True Footage's complaint, and asked them to confirm that they would honor former counsel's commitment to provide a specific response to True Footage's document preservation concerns. Mr. Sprigman replied only to ask that I send him forms to waive service, and was silent on document preservation. Attached as **Exhibit F** is an email chain that includes this email.

25. On April 27, 2026, yet another new counsel, Rhett Millsaps II of Lex Lumina LLP responded via email that True Footage's spoliation concerns were a "baseless issue manufactured by True Footage to attempt to disparage our clients," and committed only to address True Footage's spoliation concerns during discovery. Exhibit F.

26. On April 29, 2026, I responded, stating that True Footage remained troubled by defendants' approach to document preservation and I requested to confer about the issue and proposed solutions. Exhibit F. Later that day, Mr. Millsaps requested that I convey True Footage's spoliation concerns in writing or forward communications with former counsel regarding the issue. *Id.* He also agreed to address True Footage's concerns or schedule a call after reviewing the correspondence. *Id.* I again provided Mr. Millsaps with all correspondence concerning document



FENWICK & WEST LLP

preservation, which had already been provided to defendants' new counsel the week prior. *Id.*

27. On May 4, 2026, Mr. Millsaps responded via email that he had reviewed the correspondence and communicated with former counsel. Exhibit F. He refused to provide any further response to True Footage's spoliation concerns and reverted to defendants' earlier position, committing only to follow the "Federal Rules and case law" regarding document preservation. *Id.*

28. Defendants have time, and time again, refused all efforts to confer about document preservation issues in this case, including at the Rule 26(f) conference that requires counsel to confer in good faith about anticipated discovery issues. Attached as **Exhibit G** is an email dated July 20, 2026, confirming defendants' latest refusals during such conference.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 29, 2026.

*/s/ Todd R. Gregorian*

Todd R. Gregorian

# EXHIBIT D

FENWICK

One Front Street
33rd Floor
San Francisco, CA 94111

415.875.2300
Fenwick.com

Todd R. Gregorian
tgregorian@fenwick.com | 415.875.2402

April 16, 2026

VIA EMAIL (CWIENER@COBLENTZLAW.COM)

Christopher J. Wiener
Partner
Coblentz Patch Duffy & Bass LLP
1 Montgomery St, Suite 3000
San Francisco CA 94104

Re: **Request for specific assurances concerning Automax AI's document preservation and potential spoliation**

Chris:

I write to follow up on our conversation of April 8, 2026. True Footage was disappointed with the content of that call, specifically that Automax AI was not willing to engage in a candid conversation about the specifics of Mr. Ahmed's misconduct, and that counsel throughout the call appeared to feign ignorance of the content of the demand letter sent to Mr. Ahmed. As the matter proceeds, I hope that we will be able to have more productive discussions.

That aside, True Footage was also alarmed by Automax's dismissive statements about document preservation, and thus this letter will focus on addressing those concerns or at the very least establishing a clear record to preserve True Footage's rights and support any future claims for relief from the court. In short, we demand specific confirmation from counsel—i.e., attorneys who are officers of the court and bound by the rules of professional ethics—that your clients have complied with all preservation duties and have not spoliated any evidence.

My March 27 letter explained in detail the categories of documents, data, and electronically stored information that Mr. Ahmed and Automax AI must preserve concerning this dispute and their improper access and copying of True Footage materials. Those records include but are not limited to:

- all communications of any kind, including ephemeral electronic communications using platforms such as Signal
- queries or prompts sent to, and responses received from, artificial intelligence products
- paper documents
- video recordings
- computer code
- digital files, whether stored locally or in the cloud

- all hardware devices including computers, cell phones, and other mobile devices
- and all other forms of data relevant to True Footage's claims.

The reason that this follow up is necessary is because, in *addition* to the letter, I have now requested *three times* (emails on April 3 and April 6, and during our April 8 call) that you provide confirmation that Mr. Ahmed and Automax AI have preserved and have not altered or deleted any of these relevant records or communications, and you have failed to provide any such confirmation beyond an oblique representation that Automax would comply with the Federal Rules of Civil Procedure.

Mr. Ahmed is a foreign citizen and college dropout—scarcely more than a teenager—who was caught red handed misrepresenting his identity to True Footage to copy its industry leading software. His response to being caught was to ask True Footage to hold any legal actions in abeyance and then, the very next day, deliver a sales presentation brazenly continuing to market his infringing product. Given his unfamiliarity with the U.S. legal system, his youth, and the emotional pressure of having amassed millions of dollars in investment behind a misappropriated and infringing product, the likelihood that he has also spoliated evidence of his misconduct is high.

That is why True Footage is calling on the Coblentz firm as counsel to step in and perform its ethical obligations. You have an affirmative ongoing duty to supervise your client's document preservation efforts. *See, e.g.*, *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216–21 (S.D.N.Y. 2003) (describing client's duty to preserve documents); *Optronic Technologies, Inc. v. Ningbo Sunny Electronic Co.*, , No. 16-cv-6370, 2020 WL 2838806, at *5–8 (N.D. Cal. June 1, 2020) (holding that counsel violates Rule 26(g) by affirming discovery responses without proper supervision of searches and preservation). You may not delegate preservation to the client, particularly one who is a bad actor like Mr. Ahmed. You may not issue a legal hold without specifically monitoring compliance. And you may not run cover for the client by offering platitudes about "following the Federal Rules" while knowing, or remaining willfully blind to, the client's spoliation.

Indeed, doing so exposes not just the client, but the firm itself, to sanctions. *See, e.g.*, *Pable v. Chicago Transit Auth.*, 145 F.4th 712, 718–26 (7th Cir. 2025) (affirming monetary and case-ending sanctions against client who spoliated Signal messages and attorney sanctions under Rule 37(e) and 28 U.S.C. § 1927); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 435–40 (S.D.N.Y. 2004) (granting adverse inference instruction and awarding costs); *Hyundai Motor Am. Corp. v. N. Am. Auto. Servs., Inc.*, No. 19-cv-23947, 2021 WL 3111191, at *12–14 (S.D. Fla. July 22, 2021) (granting adverse inference instruction; finding counsel insufficiently supervised preservation notice); *EEOC v. Formel D USA, Inc.*, No. 23-cv-11479, 2024 WL 4172527, at *5 (E.D. Mich. Sept. 12, 2024) (ordering production of litigation hold notices).

Mr. Ahmed's and Automax's ongoing disregard for True Footage's contracts and intellectual property, combined with your repeated refusal to confirm Mr. Ahmed's and Automax's document preservation, gives reasonable grounds to believe that your clients have destroyed, altered, or failed to preserve relevant evidence.

True Footage demands written confirmation no later than April 19 that:

1. Automax AI and Mr. Ahmed have preserved each category of material enumerated above;

2. Automax AI and Mr. Ahmed that they have not deleted, altered, or modified any such material;

3. Counsel has taken custody of relevant electronic files and forensic images of the relevant machines and devices;

4. If you are aware or become aware of any circumstances concerning deletion, alteration, or modification of any relevant record, you will disclose those facts to us now (or as they become known) and will not aid or abet the client's spoliation by hiding behind formal discovery objections.

We look forward to your response and reserve all rights.

Sincerely,

FENWICK & WEST LLP

s/ Todd R. Gregorian

Todd R. Gregorian

TRG:slg/dws

# EXHIBIT E

Coblentz
Patch Duffy
& Bass LLP

One Montgomery Street, Suite 3000
San Francisco, CA 94104-5500
T 415 391 4800
coblentzlaw.com

Christopher J. Wiener
D (415) 293-6472
cwiener@coblentzlaw.com

April 18, 2026

**VIA ELECTRONIC MAIL ONLY**

Todd R. Gregorian
Fenwick & West LLP
One Front Street, 33rd Floor
San Francisco, CA 94111
tgregorian@fenwick.com

**Re: Response to True Footage Inc.'s Letter Dated April 16, 2026**

Dear Mr. Gregorian:

I write to briefly respond to your letter dated April 16, 2026, regarding the "specific assurances" you demand from me, my firm, and my client.

As I have said – repeatedly – Automax.ai will comply with its document preservation obligations in light of the threatened (though meritless) litigation by your client. You have not cited, and I am aware of no authority, indicating that Automax.ai is under some additional obligation to give you and your client "assurances" on any subject.

You have baselessly threatened me and my firm with discovery sanctions. And you impugned my client in troubling terms, outright stating that his status as "a foreign citizen and college dropout – scarcely more than a teenager" renders him a criminal-in-waiting who you are certain has, or will, spoliate evidence.

I am disappointed that you would resort to such an accusation. It violates the spirit, if not the letter, of Rule 8.4.1 of the California Rules of Professional Conduct. *See* Rule 8.4.1(c) ("For purposes of this rule . . . 'protected characteristic' means . . . national origin . . . [and] age").

Zealous advocacy does not require such behavior.

I will respond to your letter on the (non-) merits of True Footage's allegations this week.

Sincerely,

Christopher J. Wiener

# EXHIBIT F

| | |
|---|---|
| **From:** | Rhett O. Millsaps II |
| **To:** | Todd Gregorian; Garner Kropp; Gregory Adams |
| **Cc:** | Christopher J. Sprigman; Jonathan Harris; Ashley Robinson |
| **Subject:** | Re: True Footage v. Ahmed |
| **Date:** | Monday, May 4, 2026 10:21:59 PM |
| **Attachments:** | image001.png |

**** EXTERNAL EMAIL ****

Todd — We have carefully reviewed all your prior correspondence with Coblentz regarding your document preservation assertions, and we have spoken with Coblentz about it. We're also very familiar with lawyers' and their clients' obligations regarding document preservation under the Federal Rules and case law, including the cases you have cited, and we (like Coblentz) take those obligations seriously. It is apparent from your prior communications with Coblentz that you have no factual or legal basis for raising this "issue" concerning document preservation and spoliation. The only basis you have articulated is Mr. Ahmed's age and nationality, which is not a basis under any case law we have seen for your hyperbolic demands that counsel provide you with "specific assurances" and a prophylactic accounting of steps that counsel and our clients have taken to preserve documents. If you have a case that says otherwise, please provide it promptly so that we can consider it and discuss with you.

At this point, it seems clear that you are manufacturing this "issue" as a bullying tactic to harass our clients, to invade the attorney-client relationship, and to try to put our clients out of business with litigation costs regardless of the lack of merits of your client's claims. Indeed, we understand that you expressly stated to Coblentz counsel that you and your client intend to use the litigation process and your client's financial resources to destroy Automax AI regardless of the merits of your client's claims. We are well versed in the kind of scorched-earth litigation you've threatened, and we hope you've apprised your clients that they will be on the hook for our clients' attorneys' fees and costs at the end of the day under the Copyright Act.

There is no basis for you to "pursue preliminary relief in connection with potential spoliation" because, as counsel at Coblentz advised you repeatedly, they and our clients have complied with their obligations regarding document preservation. We are doing the same. If you choose to burden the Court with this frivolous, manufactured issue, our clients will seek their attorneys' fees and costs in defending the motion under Rules 11 and 37, as well as any sanctions the Court deems appropriate. Additionally, any such action will only provide more evidence of your client's abuse of process and unlawful anticompetitive conduct.

We will not waste more time and our clients' money further discussing or responding to your questions regarding document preservation if you do not provide either (1) a case clearly indicating that we have an obligation to do so on the bases you have articulated or (2) evidence substantiating a genuine spoliation concern. If you provide either of these, we will of course promptly review and respond.

We are available to discuss service and a schedule for our clients' response to the complaint; let us know a few times that work for you in the next couple days.

Best,
Rhett

P.S. The substantive response that Coblentz promised you—before your client filed its lawsuit—was not in regard to your ginned up document preservation issue, but rather in regard to the merits of the case. We are happy to discuss with you the merits of the case with you.

Rhett Millsaps
LEX LUMINA | Managing Partner | 646.535.1137

---

**From:** Todd Gregorian <TGregorian@fenwick.com>
**Date:** Thursday, April 30, 2026 at 4:01 PM
**To:** Rhett O. Millsaps II <rhett@lex-lumina.com>, Garner Kropp <GKropp@fenwick.com>, Gregory Adams <GAdams@fenwick.com>
**Cc:** Christopher J. Sprigman <chris@lex-lumina.com>, Jonathan Harris <jon@hs-law.com>, Ashley Robinson <arobinson@hs-law.com>
**Subject:** RE: True Footage v. Ahmed

Rhett,

We will work with you on timing of response. I have a trial that we need to work around on our end and we may pursue preliminary relief in connection with potential spoliation so we should address all that in a single discussion. Please propose times for that call.

Todd Gregorian
Fenwick | Partner | +1 415-875-2402 | tgregorian@fenwick.com

---

**From:** Rhett O. Millsaps II <rhett@lex-lumina.com>
**Sent:** Wednesday, April 29, 2026 7:16 PM
**To:** Todd Gregorian <TGregorian@fenwick.com>; Garner Kropp <GKropp@fenwick.com>; Gregory Adams <GAdams@fenwick.com>
**Cc:** Christopher J. Sprigman <chris@lex-lumina.com>; Jonathan Harris <jon@hs-law.com>; Ashley Robinson <arobinson@hs-law.com>
**Subject:** Re: True Footage v. Ahmed

**** EXTERNAL EMAIL ****

Todd — I'll take a look at the correspondence concerning document preservation and get back to you soon.

Regarding service, we assumed you would send over a waiver form for all defendants when we notified you that we'll be representing them. Not responding to us about this and instead apparently going ahead with attempted service on our clients is an unfortunate way to start our working relationship in this case. Regardless of what the status of service is, we are going to need additional time to respond given that we were just retained in this matter and have other deadlines coming up. We think the easiest path is for you to send us the waiver form for all defendants, which will obviate any disputes over service. In any event, we request that you give us the common courtesy of 60 days to respond to the complaint. Surely you don't want to make us burden the Court with a motion over this right out of the gate.

Thanks,
Rhett

Rhett Millsaps
LEX LUMINA | Managing Partner | 646.535.1137

---

**From:** Todd Gregorian <TGregorian@fenwick.com>
**Date:** Wednesday, April 29, 2026 at 2:57 PM
**To:** Rhett O. Millsaps II <rhett@lex-lumina.com>, Garner Kropp <GKropp@fenwick.com>, Gregory Adams <GAdams@fenwick.com>
**Cc:** Christopher J. Sprigman <chris@lex-lumina.com>, Jonathan Harris <jon@hs-law.com>, Ashley Robinson <arobinson@hs-law.com>
**Subject:** RE: True Footage v. Ahmed

Rhett,

All the correspondence concerning document preservation was provided to your firm last week. Here it is again. Let me know when you are available to discuss.

We will follow up separately to clarify the status of service on the defendants.

Thanks,

Todd Gregorian
Fenwick | Partner | +1 415-875-2402 | tgregorian@fenwick.com

---

**From:** Rhett O. Millsaps II <rhett@lex-lumina.com>
**Sent:** Wednesday, April 29, 2026 1:48 PM
**To:** Todd Gregorian <TGregorian@fenwick.com>; Garner Kropp <GKropp@fenwick.com>; Gregory

Adams <GAdams@fenwick.com>
**Cc:** Christopher J. Sprigman <chris@lex-lumina.com>; Jonathan Harris <jon@hs-law.com>; Ashley Robinson <arobinson@hs-law.com>
**Subject:** Re: True Footage v. Ahmed

**** EXTERNAL EMAIL ****

Todd - It simply is not true that my email today was the first regarding our representation and service of the complaint in this matter. Chris emailed you last Friday advising that we will represent the defendants in any litigation, and that we would return a summons waiver promptly if you sent it over. You did not respond to that email and instead apparently proceeded to serve one of the defendants via registered agent.

We will execute a service waiver form for all defendants if you send it over and agree that the response by all defendants will be due at the same time (60 days from the date of the waiver).

As for your stated concerns about spoliation, please put the bases for your concerns in writing, or forward your previous written communications with Coblentz setting them out. We will review and respond or set up a call to discuss.

Best,
Rhett

Rhett Millsaps
LEX LUMINA | Managing Partner | 646.535.113

---

**From:** Todd Gregorian <TGregorian@fenwick.com>
**Sent:** Wednesday, April 29, 2026 11:50:42 AM
**To:** Rhett O. Millsaps II <rhett@lex-lumina.com>; Garner Kropp <GKropp@fenwick.com>; Gregory Adams <GAdams@fenwick.com>
**Cc:** Christopher J. Sprigman <chris@lex-lumina.com>; Jonathan Harris <jon@hs-law.com>; Ashley Robinson <arobinson@hs-law.com>
**Subject:** RE: True Footage v. Ahmed

Rhett,

We are not in communication with any Canadian counsel for Automax AI. And below is the first message in which you have represented that you will accept service on behalf of your clients. We will serve you with the initiating documents given that representation,

and we will include a waiver of service form for the Canadian entity. Thank you for your cooperation on this issue.

True Footage continues to be troubled by defendants' cavalier approach to document preservation issues that we have raised. We had finally reached a point where prior counsel promised us a substantive response on those issues, only for that counsel to be fired by the client shortly thereafter (or perhaps counsel fired the client) with that response still outstanding. Now it looks like we are back to square one with generic objections about FRCP requirements. Could we set a call to confer about these issues and proposed solutions?

Thank you,

Todd Gregorian
Fenwick | Partner | +1 415-875-2402 | tgregorian@fenwick.com

---

**From:** Rhett O. Millsaps II <rhett@lex-lumina.com>
**Sent:** Wednesday, April 29, 2026 11:32 AM
**To:** Todd Gregorian <TGregorian@fenwick.com>; Garner Kropp <GKropp@fenwick.com>; Gregory Adams <GAdams@fenwick.com>
**Cc:** Christopher J. Sprigman <chris@lex-lumina.com>; Jonathan Harris <jon@hs-law.com>; Ashley Robinson <arobinson@hs-law.com>
**Subject:** Re: True Footage v. Ahmed

**** EXTERNAL EMAIL ****

Todd — We just learned that you filed a complaint and sent it to Automax AI's Canadian counsel but not us on Monday, even though Chris emailed you last week to let you know that we will be representing defendants in this case, and we have repeatedly told you that we will accept service if you send us the filed documents and waiver form. What kind of game is this?

**Please direct all communications regarding this matter to us and Harris St. Laurent.** Please send us the initiating documents and waiver form, and we will execute it and return it promptly.

Best,
Rhett

Rhett Millsaps
LEX LUMINA | Managing Partner | 646.535.1137

---

**From:** Rhett O. Millsaps II <rhett@lex-lumina.com>

**Date:** Monday, April 27, 2026 at 12:37 PM
**To:** Todd Gregorian <TGregorian@fenwick.com>, Garner Kropp <GKropp@fenwick.com>, Gregory Adams <GAdams@fenwick.com>
**Cc:** Christopher J. Sprigman <chris@lex-lumina.com>, Jonathan Harris <jon@hs-law.com>, Ashley Robinson <arobinson@hs-law.com>
**Subject:** Re: True Footage v. Ahmed
Hi Todd — I am Chris's partner and will be handling most communications on this matter going forward. Looking forward to working with you on this.

Regarding document preservation, all counsel for Automax AI are well aware of the duty to preserve documents, and our clients are doing so. This appears to be a baseless issue manufactured by True Footage to attempt to disparage our clients. If True Footage moves forward with litigation and has spoliation concerns in the course of discovery, we'll of course address them as appropriate.

Should we understand from your prior email to Chris that True Footage intends to move forward with litigation at this point? If so, please send us the initiating documents as filed and the waiver of service form so that we can discuss with our clients and get back to you promptly. Otherwise, let us know if you will give us a week, as Chris requested, to get up to speed so that we can respond to your last letter.

Best,
Rhett

Rhett Millsaps
LEX LUMINA | Managing Partner | 646.535.1137

---

**From:** Todd Gregorian <TGregorian@fenwick.com>
**Date:** Monday, April 27, 2026 at 2:48 PM
**To:** Christopher J. Sprigman <chris@lex-lumina.com>; Jonathan Harris <jon@hs-law.com>
**Cc:** Garner Kropp <GKropp@fenwick.com>; Gregory Adams <GAdams@fenwick.com>
**Subject:** RE: True Footage v. Ahmed
Chris,

Noting your partial response below and that we still have not had a response on document preservation. What is your availability for a call?

Todd Gregorian
Fenwick | Partner | +1 415-875-2402 | tgregorian@fenwick.com

---

**From:** Christopher J. Sprigman <chris@lex-lumina.com>
**Sent:** Thursday, April 23, 2026 2:49 PM
**To:** Todd Gregorian <TGregorian@fenwick.com>; Jonathan Harris <jon@hs-law.com>
**Cc:** Garner Kropp <GKropp@fenwick.com>; Gregory Adams <GAdams@fenwick.com>
**Subject:** Re: True Footage v. Ahmed

**** EXTERNAL EMAIL ****

Todd,

We'll be representing the defendants in the lawsuit and that if you send us the AO 399 waiver form plus the as-filed complaint and any other papers we'll get it back to you asap.

Thanks. Chris

---

**From:** Todd Gregorian <TGregorian@fenwick.com>
**Date:** Thursday, April 23, 2026 at 1:03 PM
**To:** Christopher J. Sprigman <chris@lex-lumina.com>; Jonathan Harris <jon@hs-law.com>
**Cc:** Garner Kropp <GKropp@fenwick.com>; Gregory Adams <GAdams@fenwick.com>
**Subject:** RE: True Footage v. Ahmed

Chris,

Nice to meet you and I look forward to working with you and Jonathan on this. A couple of questions as you get up to speed:

1. Are you authorized to accept service of the complaint?

2. We have had an extensive back and forth with prior counsel about document preservation concerns. After multiple requests, they had finally represented that defendants would provide a substantive response this week. Do defendants plan to honor that commitment? This is a serious concern for True Footage, and it is becoming more urgent for them with the obfuscation and run around that we are getting. I am hoping to close this issue out (or at least get a sense of what spoliation issues the parties will have to address going forward), so we can refocus on resolving the underlying dispute. I am optimistic that the change in representation brings more candor to both discussions.

Todd Gregorian

Fenwick | Partner | +1 415-875-2402 | tgregorian@fenwick.com

---

**From:** Christopher J. Sprigman <chris@lex-lumina.com>
**Sent:** Thursday, April 23, 2026 7:45 AM
**To:** Todd Gregorian <TGregorian@fenwick.com>; Jonathan Harris <jon@hs-law.com>; cwiener@coblentzlaw.com
**Subject:** True Footage v. Ahmed

**** EXTERNAL EMAIL ****

Dear Mr. Gregorian:

Jon Harris (copied here) and I have been retained by Automax. We have received your draft complaint.

We'll need a week to get up to speed and will respond to you then.

Thank you, and all the best.
Chris Sprigman

—
Christopher Jon Sprigman
Partner
LEX LUMINA LLP
745 Fifth Avenue, Suite 500
New York, NY 10151

Tel: 434.249.4345 | chris@lex-lumina.com

---

CONFIDENTIALITY NOTICE: This email and its attachments contain information that may be confidential and/or privileged. If you are not the intended recipient you may not copy, disclose or use the contents of this email. If you believe that you have received this email in error, notify the sender or contact Fenwick & West LLP at (650) 988-8500 and then delete or destroy any copy of this email and its attachments.

# EXHIBIT G

**From:** Ashley Robinson
**To:** Garner Kropp; Rhett O. Millsaps II; Christopher J. Sprigman; Jonathan Harris
**Cc:** Todd Gregorian; Gregory Adams; Samantha Cox-Parra; Julian Sarabia
**Subject:** Re: True Footage/Automax: Rule 26(f) Conference
**Date:** Monday, July 20, 2026 11:31:10 AM

** EXTERNAL EMAIL **

Garner,

Please see below for our responses to the points raised in your email, in red.

Thanks,

**Ashley Robinson**
Counsel
Harris St. Laurent LLP
40 Wall Street, 53rd Floor
New York, NY 10005
Direct: 917-512-9471
arobinson@hs-law.com | www.hs-law.com

---

**From:** Garner Kropp <GKropp@fenwick.com>
**Date:** Thursday, July 16, 2026 at 11:33 PM
**To:** Ashley Robinson <arobinson@hs-law.com>, Rhett O. Millsaps II <rhett@lex-lumina.com>, Christopher J. Sprigman <chris@lex-lumina.com>, Jonathan Harris <jon@hs-law.com>
**Cc:** Todd Gregorian <TGregorian@fenwick.com>, Gregory Adams <GAdams@fenwick.com>, Samantha Cox-Parra <SCox-Parra@fenwick.com>, Julian Sarabia <JSarabia@fenwick.com>
**Subject:** RE: True Footage/Automax: Rule 26(f) Conference

**[External Email]**

Ashley,

Thanks for the chat. Here are a few comments on the conference.

*Draft statements and protocols*
We'll send you the draft of the joint case management statement, ESI protocol, and protective order, as discussed. We disagree that either party should send the draft statement before the conference; the statement is due after the conference to reflect what the parties discussed. And Rule 26(f)(2) makes the parties "jointly responsible" for preparing, participating in, and documenting the conference, not just the plaintiff. Nevertheless, we'll take the pen on the first

drafts.

Let us know when we can expect the drafts. We will need sufficient time to review.

*Number of depositions*
As to the depositions, we proposed that each side can take 10 depositions of another party, but that depositions of third-party witnesses don't count toward that cap. We cannot agree to limit the number of third-party depositions. We already found multiple third-party appraisers who Defendants induced to breach their contracts with True Footage (Compl. 46-49), and we don't know how many there are in total. Plus, Defendants already identified another third-party witness, Huzaifa Ahmad, in their responsive brief.

We are not asking you to agree to limit the number of third-party depositions. Rule 30 expressly states that "A party must obtain leave of court" to take a deposition "if the parties have not stipulated to the deposition and: the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs, or by the defendants, or by the third-party defendants..." If Plaintiff reaches the 10 deposition limit and wishes to take more than that, then Plaintiff either will need to convince Defendants to stipulate to the additional depositions or obtain leave of court to take them.

*Discovery phases*
We cannot agree to an initial phase of discovery only on "what, if any, registered, copyright-protectable material" is at issue. That's the basis of Defendants' responsive brief, and we'll present our position on that in our opposition brief. For the discovery plan, we propose one year of not-phased fact and expert discovery, putting the close of discovery around August 2027.

As we discussed, we did not expect Plaintiff to agree to the proposal, but Defendants will request that the Court limit discovery in the first instance to what, if any, registered copyright-protectable material provides a basis for Plaintiff's copyright claim, as that is a jurisdictional threshold issue. So the parties will need to present their respective positions on this issue to the Court. Regarding discovery after that, we do not see why it should not proceed in the normal course here, with fact discovery followed by expert discovery. If you can articulate a good reason for it, we're willing to consider it, but at this point Defendants will not agree to mixed fact and expert discovery and will propose a discovery schedule with fact discovery first, followed by expert discovery.

*Discovery limits*
As discussed, we'll request written discovery limits per side, not per party. Courts commonly grant this limit when the parties on one side are "only nominally separate," like Ahmed and his two companies. *See Gaby's Bags, LLC v. Mercari, Inc.*, No. 20CV00734WHATSH, 2021 WL 857695, at *1-2 (N.D. Cal. Mar. 8, 2021) (collecting cases).

As the case law collected in *Mercari* says, courts sometimes limit discovery when the parties are only nominally separate—as when one is the alter ego of another. Humza Ahmed is not an alter ego of either of the Automax companies. Defendants will oppose Plaintiff's request to group Mr. Ahmed with the companies for purposes of a discovery limitation.

*Document preservation*
In the conference, we asked Defendants questions about preserving discoverable information, just at Rule 26(f)(2) requires. We've raised these several times in the last four months, and Defendants never answer. Today, we asked:

1. Have Defendants forensically imaged any device?
2. Have Defendants preserved prompts and outputs of generative AI tools used to develop Copilot?
3. Do Defendants use any contractors, and how have Defendants preserved ESI sources from them?
4. Have Defendants ensured that any overseas workers have preserved data?
5. Has Ahmed, any Automax employee, or any Automax contractor used ephemeral messaging applications, and if so, have Defendants preserved those?
6. Is Defendants' third-party witness Huzaifa Ahmed on a preservation order?
7. Have Defendants deleted or failed to preserve any relevant document since March 27, 2026?

Today, Defendants did not answer again. Defendants claimed, as you do below, that the only preservation issues the parties can discuss are those "about specific discovery issues that have arisen at this point." That position can't be right because discovery doesn't open until this conference takes place. FRCP 26(d)(1). We want to work this out among the parties without having the Court referee it.
If you want to have a substantive discussion about document preservation, let us know a time before Tuesday. If not, we'll state these positions in the joint statement.

Rule 26(f)(2) requires the parties to preserve discoverable information; it does not give either side a right to interrogate the other about their preservation efforts. You continue to ask questions about Defendants' preservation efforts, despite the fact that you have failed to identify a single instance where Defendants have purportedly failed to adhere to their obligations or a rule that requires us to respond to your questions at this time. Again, the purpose of the Rule 26(f) conference is to establish a protocol concerning preservation and the scope of that protocol—not to demand Defendants' compliance with Plaintiff's unilaterally imposed requirements. If you want to serve discovery demands about Defendants' preservation efforts, you are welcome to do so at an appropriate time. Ambushing counsel is neither appropriate nor permitted under the rules.

We also discussed ADR, privilege logging, and timing for initial disclosures in the conference, and we understand the sides are aligned on those issues.

Best,
Garner

Garner Kropp
Fenwick | Associate | +1 415-875-2028 | GKropp@fenwick.com

---

**From:** Ashley Robinson <arobinson@hs-law.com>
**Sent:** Thursday, July 16, 2026 6:45 PM
**To:** Garner Kropp <GKropp@fenwick.com>; Rhett O. Millsaps II <rhett@lex-lumina.com>; Christopher J. Sprigman <chris@lex-lumina.com>; Jonathan Harris <jon@hs-law.com>
**Cc:** Todd Gregorian <TGregorian@fenwick.com>; Gregory Adams <GAdams@fenwick.com>; Samantha Cox-Parra <SCox-Parra@fenwick.com>
**Subject:** Re: True Footage/Automax: Rule 26(f) Conference

**** EXTERNAL EMAIL ****

Garner,

Thanks for your time today. We write to memorialize our discussion and follow up on a few points.

First, please send us Plaintiff's draft Joint Case Management Statement, proposed ESI protocol, and proposed protective order at your earliest convenience so that we may review. While we would have preferred to review in advance of the meeting today—and believe our meeting would have been much more productive if we could have—we are happy to consider your proposals and schedule another meeting if necessary.

Second, we affirm our position on the allowed number of depositions. Rule 30 permits Plaintiff to take no more than ten depositions of any person, including parties and non-parties. While we do not believe at this point that ten depositions by either side should be necessary in this case, that is what the rules permit. We will not agree to rewrite the rules to expand the number of depositions permitted so that Plaintiff can harass countless third parties with deposition subpoenas and impose on our clients needless and unduly burdensome costs. If Plaintiff wishes to take more than ten depositions, it may seek appropriate relief from the Court.

Third, we briefly touched upon the parties' positions concerning phases and limitations of discovery. Please present your proposals to us, in writing, and we will consider them. As we discussed, Defendants will propose that discovery be limited in an initial phase to discovery regarding what, if any, registered, copyright-protectable material is the basis for Plaintiff's copyright claim. Additionally, we will not agree to limit our clients' ability to

seek discovery from Plaintiff solely on the basis that "each side" should get the same amount of discovery. We have two corporate clients and an individual client with differing interests, all of whom are entitled to information necessary to defend themselves in this litigation. Being on the same "side" is not a basis to limit that right.

Finally, we want to reiterate that while we are always willing to confer with you in good faith, we are not willing to engage in deposition of counsel by ambush. Your attempt at the outset of today's call to question us about specific steps we have taken to preserve our clients' materials was an abuse of the rules and process. As we explained during the call—and you should know from your years of practice in NDCA—the rules require the parties to meet and confer about specific discovery issues that have arisen at this point. Yet again, you were not able to articulate a basis for any concerns that our clients have not met their preservation obligations, so your questioning was another improper fishing expedition that is not sanctioned by the rules. Again, if you or your client have good faith, specific concerns about preservation or related topics that are not addressed by our forthcoming initial disclosures and are founded in articulable fact, we will endeavor to address those concerns. Until then, we will not entertain further discussion on this subject.

Thanks,

**Ashley Robinson**
Counsel
Harris St. Laurent LLP
40 Wall Street, 53rd Floor
New York, NY 10005
Direct: 917-512-9471
arobinson@hs-law.com | www.hs-law.com

---

**From:** Garner Kropp <GKropp@fenwick.com>
**Date:** Wednesday, July 15, 2026 at 6:21 PM
**To:** Rhett O. Millsaps II <rhett@lex-lumina.com>, Christopher J. Sprigman <chris@lex-lumina.com>, Jonathan Harris <jon@hs-law.com>, Ashley Robinson <arobinson@hs-law.com>
**Cc:** Todd Gregorian <TGregorian@fenwick.com>, Gregory Adams <GAdams@fenwick.com>, Samantha Cox-Parra <SCox-Parra@fenwick.com>
**Subject:** RE: True Footage/Automax: Rule 26(f) Conference

**[External Email]**

Yes, I'll circulate that.

Garner Kropp
Fenwick | Associate | +1 415-875-2028 | GKropp@fenwick.com

---

**From:** Rhett O. Millsaps II <rhett@lex-lumina.com>
**Sent:** Wednesday, July 15, 2026 3:05 PM
**To:** Garner Kropp <GKropp@fenwick.com>; Christopher J. Sprigman <chris@lex-lumina.com>; Jon Harris <jon@hs-law.com>; Ashley Robinson <arobinson@hs-law.com>
**Cc:** Todd Gregorian <TGregorian@fenwick.com>; Gregory Adams <GAdams@fenwick.com>; Samantha Cox-Parra <SCox-Parra@fenwick.com>
**Subject:** Re: True Footage/Automax: Rule 26(f) Conference

**** EXTERNAL EMAIL ****

Garner — We can do tomorrow (Thursday) at 3pm PT. Will you send a calendar invite with meeting info?

Rhett Millsaps
LEX LUMINA | Managing Partner | 646.535.1137

---

**From:** Garner Kropp <GKropp@fenwick.com>
**Date:** Tuesday, July 14, 2026 at 4:28 PM
**To:** Rhett O. Millsaps II <rhett@lex-lumina.com>; Christopher J. Sprigman <chris@lex-lumina.com>; Jon Harris <jon@hs-law.com>; Ashley Robinson <arobinson@hs-law.com>
**Cc:** Todd Gregorian <TGregorian@fenwick.com>; Gregory Adams <GAdams@fenwick.com>; Samantha Cox-Parra <SCox-Parra@fenwick.com>
**Subject:** True Footage/Automax: Rule 26(f) Conference

Counsel,

The parties must submit a joint case management report by July 22. We're available for the 26(f) conference in any of the following blocks:

- Wednesday, July 15, 1:30pm – 5:00pm PT
- Thursday, July 16, 12:00pm – 1:00pm PT
- Thursday, July 16, 3:00pm – 4:30pm PT

What time in there works for your side?

Best,
Garner

Garner Kropp
Fenwick | Associate | +1 415-875-2028 | GKropp@fenwick.com

---

CONFIDENTIALITY NOTICE: This email and its attachments contain information that may be confidential and/or privileged. If you are not the intended recipient you may not copy, disclose or use the contents of this email. If you believe that you have received this email in error, notify the sender or contact Fenwick & West LLP at (650) 988-8500 and then delete or destroy any copy of this email and its attachments.